**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

FILED

NOV 28 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

Christopher J. Niekamp, and
Randall D. Hebrink, individually,
and on behalf of all others
similarly situated,

3:23 CV 2289
Case No. _____

Plaintiffs,

**JUDGE ZOUHARY**

v.

**MAG JUDGE CLAY**

Watts Guerra LLP, Bassford Remele
PA, Gustafson Gluek PLLC, Schwebel
Goetz & Sieben PA, Stueve Siegel Hanson
LLP, Hare Wynn Newell & Newton
LLP, Gray, Ritter & Graham PC,
Reed & McGraw PC, Lockridge Grindal
Nauen PLLP, Paul McInnes LLP, Mikal
C. Watts, and Francisco Guerra,

Defendants.

**CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES**

**DEMAND FOR JURY TRIAL**

Dated: November 27, 2023

# TABLE OF CONTENTS

SUMMARY OF CLAIM. ......................................................…..… 1

PARTIES ...................................................................…..…....... 25

    A.    Plaintiffs are corn growers in Ohio and Minnesota ..........................… 25

    B.    Plaintiff class is comprised of 60,000 corn growers across the United States who signed 40 percent contingent fee contracts with Watts Guerra LLP and conspirators to pursue individual lawsuits in Minnesota state courts. ...............................................................................….... 32

    C.    Defendants are law firms and lawyers who are signatories on joint prosecution agreements that excluded 60,000 corn growers from class litigation without the corn growers' knowledge and informed consent ... 33

JURISDICTION AND VENUE ...............................................…..… 34

CHOICE OF LAW ............................................................…....… 36

FACTUAL ALLEGATIONS ...................................................…..… 38

    A.    Class actions with common damages like the Syngenta litigation ......… 38

    B.    Defendants exploit the "mass tort ... individual suit" model for product liability litigation with individualized injuries and damages …..... 41

    C.    Litigation race was on: federal MDL in Kansas ...............…..……… 42

    D.    Town hall meetings, direct mail solicitations, websites, media interviews, joint venture relationships ......................................… 43

    E.    60,000 individual lawsuits filed in Minnesota state courts .................. 74

    F.    Joint prosecution agreements to exclude 60,000 Farmers from class actions in federal MDL in Kansas and Minnesota without the Farmers' knowledge and informed consent ...............................................… 77

        1.    Joint Prosecution Agreement ..........................................… 78

        2.    Minnesota Participation Agreement ...................................…..… 80

ii

3. A breach of fiduciary obligations and a fraud of omission ......... 82

G. Settlement Term Sheet .................................................…..... 92

H. National Class Action Settlement Agreement ...........................…... 94

I. Defendants in this lawsuit were awarded $394 million in fees and expenses by the Syngenta MDL court in settlement proceedings …........ 96

VIOLATIONS OF MINNESOTA RULES OF PROFESSIONAL CONDUCT ….…... 98

A. False Advertising ....................................….…................…....... 98

B. Failure to communicate honestly with clients about litigation options .... 99

C. Breach of fiduciary duties ....................................................... 100

D. Unreasonable fees .................................................…......….. 102

E. Undisclosed fee agreements .................................................... 102

F. Misconduct ...................................................................….. 103

G. Misappropriation of disputed funds ......................................…... 103

H. Conflicts of interest with current and former clients ....................... 105

MAIL AND WIRE FRAUD, 18 U.S.C. §§ 1341, 1343 .........................…...... 106

OBSTRUCTION OF JUSTICE, 18 U.S.C. §§ 1503, 1512(c)(2) .........................…... 110

CLASS ALLEGATIONS ..................................................................... 111

EXPERT OPINIONS ....................................................................... 114

A. Watts Guerra LLP, et al. liability ............................................... 115

B. Syngenta MDL and Minnesota class counsel liability ....................…..... 115

C. Defendants breached fiduciary obligations through deceit ................ 117

D.      The Supreme Court and Fed. R. Civ. P. 23 do not allow lawyers to privately contract clients and absent class members out of a Fed. R. Civ. P. 23 class action ........................................................ 121

CAUSES OF ACTION ........................................................................ 122

Count I: Declaratory Judgment, 28 U.S.C. §§ 2201, 2202 ......................... 122

Count II: Uniform Declaratory Judgments, Minn. Stat. §§ 555.01 *et seq.* ......... 124

Count III: Civil RICO, 18 U.S. C. § 1962(c) (Against Mikal C. Watts, Francisco Guerra, Watts Guerra, LLP, and/or Bassford Remele PA, Gustafson Glueck PLLC, Schwebel Goetz & Sieben PA, Stueve Siegel Hanson LLP, Hare Wynn Newell & Newton LLP, Gray, Ritter & Graham PC, Gray Reed & McGraw PC, Lockridge Grindal Nauen PLLP, and Paul McInnes LLP) ......... 125

    A.      Defendants/Enterprises ................................................. 126

        1.      Watts Guerra LLP Enterprise ................................. 126

        2.      Individual Enterprise ........................................... 126

        3.      Signatories Enterprise ......................................... 127

        4.      Class Counsel Enterprise ...................................... 128

    B.      Pattern of racketeering activity ....................................... 130

    C.      Causation and injury .................................................... 131

Count IV: Civil RICO Conspiracy, 18 U.S. C. § 1962(d) (Against All Defendants) ......................................................... 132

Count V: Prevention Of Consumer Fraud, Minn. Stat. §§ 325F.68-70 ........... 134

Count VI: Breach Of Fiduciary Duty ................................................. 137

Count VII: Fraudulent Misrepresentation ........................................... 139

Count VIII: Negligent Misrepresentation ............................................ 141

Count IX: Unjust Enrichment ......................................................... 142

Count X: Civil Conspiracy ........................................................... 143

REMEDIES ....................................................................................... 144

    A.     Declaratory and injunctive relief ............................................. 144

    B.     Monetary damages ................................................................... 145

JURY TRIAL DEMAND ................................................................... 146

REQUESTS FOR RELIEF ............................................................... 146

Plaintiffs Christopher J. Niekamp and Randall D. Hebrink, individually, and on behalf of all others similarly situated, bring this Class Action Complaint For Declaratory And Injunctive Relief And Damages ("Class Action Complaint") against Defendants Watts Guerra LLP, Bassford Remele PA, Gustafson Gluek PLLC, Schwebel Goetz & Sieben PA, Stueve Siegel Hanson LLP, Hare Wynn Newell & Newton LLP, Gray, Ritter & Graham PC, Gray Reed & McGraw PC, Lockridge Grindal Nauen PLLP, Paul McInnes LLP, Mikal C. Watts, and Francisco Guerra.

## SUMMARY OF CLAIM

1.      This class action addresses an attorney fee fraud scheme perpetrated by Watts Guerra LLP, a Texas law firm, and its joint venture partners and conspirators, lawyers and law firms in multiple states, against 60,000 corn growers across the United States in connection with GMO corn lawsuits against Syngenta AG ("Syngenta"), a global agricultural business, filed in federal and state courts in 2014-17.

2.      The named and putative class Plaintiffs ("Farmers") were deceptively solicited by Watts Guerra LLP, et al. to sign 40 percent contingent fee retainer contracts to pursue individual lawsuits. Farmers were excluded, without their knowledge and informed consent, from participating in class actions against Syngenta in federal court multidistrict litigation ("MDL") in Kansas and the Fourth Judicial District Court in Minnesota, where attorneys' fees are determined by the presiding courts as fiduciaries for the members of the class. Farmers were deprived of the opportunity to make an informed

1

decision as to whether to pursue an individual claim or a class action claim without representation by Defendants, thereby subjecting Farmers to Watts Guerra LLP's fraudulent scheme to collect unreasonable fees.[1]

3.    Syngenta is the world's largest seed supplier. At the start of the litigation there were four United States entities in the Syngenta group: Syngenta Corporation, a Delaware corporation; Syngenta Crop Protection, LLC, a Delaware corporation with its principal place of business in North Carolina; Syngenta Seeds, Inc., a Delaware corporation with its principal place of business in Minnesota; and Syngenta Biotechnology, Inc., a Delaware corporation with its principal place of business in North Carolina. In December, 2015 Syngenta Seeds, Inc., converted to Syngenta Seeds, LLC under Delaware law. In May, 2017 Syngenta AG was purchased by a Chinese corporation, ChemChina, for $43 billion.

4.    Lawsuits were filed in multiple federal and state courts arising from Syngenta's commercialization of genetically-modified ("GMO") corn seed products known as Viptera and Duracade (containing the trait MIR 162) without approval of such

---

[1]  The Defendants in this lawsuit are the law firms and lawyers who are signatories on joint prosecution agreements that excluded 60,000 Farmers from the Syngenta MDL and Minnesota class litigation without Farmers' knowledge and informed consent. The agreements were a breach of the Defendants' fiduciary obligations to Farmers and a fraud of omission as a matter of law, and that is the focus of this lawsuit. However, "Defendants" is broadly used within this Class Action Complaint as a nomenclature to refer to all of the participants in the attorney fee fraud scheme – racketeering and a breach of fiduciary obligations through deceit – initiated by Defendant Watts Guerra LLP, et al., and addressed herein.

corn by China, an export market. The plaintiff corn growers alleged that Syngenta's commercialization of its products caused the genetically-modified corn to be commingled throughout the corn supply in the United States; that China rejected all imports of corn from the United States because of the presence of MIR 162; that such rejection caused corn prices to drop in the United States; and that growers were harmed by that market effect. The federal and state court lawsuits include:

- *In Re: Syngenta AG MIR162 Corn Litigation*, the MDL proceeding in the United States District Court for the District of Kansas, MDL No. 2591, Case No. 14-md-2591, before U.S. District Judge John W. Lungstrum and U.S. Magistrate Judge James P. O'Hara;

- *Tweet et al v. Syngenta AG et al*, No. 3:16-cv-00255, and *Poletti et al v. Syngenta AG et al*, No. 3:15-cv-01221, in the United States District Court for the Southern District of Illinois before U.S. District Judge David R. Herndon; and

- *In re Syngenta Litigation*, No. 27-cv-15-3785 (60,000 consolidated individual claims by corn growers across the United States including 9,000 Minnesota growers) and No. 27-cv-15-12625 (class claims on behalf of 23,000 Minnesota growers) in the Minnesota Fourth Judicial (Hennepin County) District Court before Judge Laurie J. Miller.

5.     On June 23, 2017, the federal MDL court entered a judgment following a $217.7 million Kansas class jury verdict (the first bellwether trial) in favor of the plaintiffs. On September 11, 2017, a Minnesota class trial began in Hennepin County District Court. On September 25, 2017 a "global settlement was reached" with a common fund of $1.51 billion created in settlement of plaintiff corn growers' claims in all the pending lawsuits in the United States.

6.     There are over 600,000 corn growers in the United States. Over 83 million

3

acres of corn were harvested in the United States in 2014, with an average yield of 174.2 bushels per acre, for a total 2014 corn harvest of almost 14.5 billion bushels. The damage to United States' corn growers caused by the price drop was estimated to be as much as $1.90 per bushel with a claimed damage of about $6-7 billion – and as high as $13 billion according to an April 24, 2017 tweet by defendant Mikal C. Watts through his firm twitter account.

7.      After China rejected U.S. shipments of corn and the corn futures price and delivery price of corn across the United States dropped, Farmers were deceptively solicited by Watts Guerra LLP, et al. to sign retainer contracts authorizing individual lawsuits against Syngenta with a 40 percent contingent attorney fee from any recovery. Farmers were dishonestly told through a barrage of television and internet advertising, direct-mail campaigns, and hundreds of in person "town hall" community meetings from as early as December 4, 2014 and throughout 2015 and 2016 and into 2017 that a *"mass tort ... individual suit"* is better than a class action.  Farmers were dishonestly told that *"only those who sign up (with Watts Guerra LLP, et al.) are eligible to pursue claims."*

8.      Farmers were dishonestly told that a "mass tort ... individual suit" is better than a class action, because class actions only recover coupons for plaintiffs. Said Watts at a meeting of corn growers in Storm Lake, IA on February 2, 2015, as quoted in the Storm Lake Pilot Tribune (emphasis added): "Some of the farmers asked about the difference between his mass suit and a class action.  With a class action, Watts told them,

"lawyers will get all the money and the farmers may get a gift certificate."

9.      Similarly, Bill Enyart, a member of the Watts Guerra law firm, told a

meeting of farmers in Champaign, Ill. on September 23, 2015:

> [Watts Guerra] is filing suits in Minnesota, where Syngenta Seeds is located, as
> opposed to filing in a federal court. .... Enyart said the advantage to this was that
> instead of getting a discount for seed corn in the future, as in a class-action case,
> there would be a gross settlement fee and the firm would simply send the farmer a
> check.

10.      Farmers were never told that they were putative class members in class

actions filed in federal district courts in different states and consolidated by a panel of

federal judges, a multidistrict litigation panel, into a single proceeding in U.S. District

Court in Kansas, the federal MDL, on December 11, 2014. Farmers were never told that

the class actions consolidated in the MDL in Kansas brought claims on behalf of corn

growers across the United States. Farmers were never informed that in a class action, the

presiding judge is a fiduciary for the class members, and required to invite and consider

objections from class members and award a reasonable attorney fee as a percentage of the

common fund of monetary damages for the class.

11.      Attorney fee awards in class actions, with a common fund damage award,

are typically about 10-12 percent of the fund for funds of $200-900 million or larger.

With the class action model, each corn grower may effectively pay 10-12 percent of

claim proceeds as an attorney fee and share of the costs of the litigation. With Watts

Guerra LLP's "mass tort ...individual suit" model, each grower would pay 40 percent of

the claim proceeds for the same result.

12.     Watts Guerra LLP, et al., thereupon filed some 60,000 individual lawsuits in Minnesota state district courts because Syngenta Seeds, Inc. then had its United States headquarters in Minnesota. Watts Guerra LLP, et al. pled only Minnesota state claims to avoid removal to the federal court in Minnesota by Syngenta and transfer to the consolidated MDL class action proceedings in Kansas. Watts Guerra LLP, et al., successfully had their individual lawsuits remanded back to Minnesota when Syngenta attempted to remove the cases to federal court and the MDL.

13.     And then, knowing that the 60,000 Farmers would nevertheless remain a part of the federal MDL class action and a tag-along class action in Hennepin County District Court for Minnesota growers, as putative class members in this lawsuits, Watts Guerra LLP, et al., entered into joint prosecution agreements with the lead class counsel in the MDL in Kansas and the Minnesota class action, with an explicit agreement to exclude the 60,000 Farmers from class certification proceedings in the MDL and Minnesota. The driving intent of the agreements, filed under seal, was to ensure the continuation of Watts Guerra LLP, et al.'s 40 percent contingent attorney fee scheme, rather than allowing the Farmers to fall as a matter of law into the class actions where fee awards would be determined by the presiding judge.

14.     Defendants never advised Farmers of the class action proceedings in federal and state court covering the Farmers and their claims. Defendants never advised Farmers

6

of the merits of those proceedings and what is in the best interest of the Farmers. Defendants never informed Farmers that they entered into joint prosecution agreements with lead counsel in class action lawsuits in the MDL and Minnesota to exclude Farmers from the respective classes. Defendants effectively opted Farmers out of the class proceedings without informing them of their options and rights. There is no legal authority allowing lawyers to privately contract clients and putative class members out of class litigation proceedings and Fed. R. Civ. P. 23 protections. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[W]e hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) ("[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (citing Newberg & Conte, *Newberg on Class Actions* § 16.16 (3d ed. 1992) ("The decision to exercise the right of exclusion in a Rule 23(b)(3) action is an individual decision of each class member and may not be usurped by the class representative or class counsel."). The *Hanlon* court stated:

> There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights *en masse*, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class. Indeed, to do so would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members.

7

*Id.* at 1024 (emphasis added) (citing *Eisen*, 417 U.S. at 173-177); *see also also Bennett v. Boyd Biloxi*, Civ. No. 14-0330, slip op. at p. 6 (S.D. Ala. July 8, 2016) (the lawyers who seek to intentionally exclude absent class members from class certification notice "identify no authority empowering the Court to exclude particular class members from the class simply by saying they are excluded … ."

15.     Defendants' exclusion of their 60,000 corn grower clients from class action proceedings through unlawful and concealed agreements, never disclosed to Farmers, and never explaining why Farmers were automatically excluded from the federal MDL and Minnesota classes, is an epic fraud of omission and violates Defendants' fiduciary obligations to the Farmers and professional responsibility rules requiring that clients be reasonably informed of litigation options and consent to the selected option. At the same time, Defendants misled the MDL and Minnesota courts through misrepresentations and omissions to believe that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the class certification proceedings and notice and opt-out procedures.

16.     Although Defendants never disclosed the September 25, 2017 settlement term sheet to Farmers, the term sheet was attached to MDL motion pleadings on March 26, 2018. The term sheet envisioned a two-prong settlement: a nationwide class action and a separate parallel inventory settlement for Defendants' 60,000 cases filed in Minnesota. The term sheet established jurisdiction with the MDL court to administer the

8

national class action settlement, and jurisdiction with the 23rd District Court of Brazoria County, Texas, to administer the settlement of Defendants' 60,000 individual lawsuits.

17. It is no surprise that Defendants never disclosed the term sheet to Farmers. After three years of Watts Guerra LLP, et al.'s misuse of the Minnesota judicial system to perpetrate their "mass tort … individual suit" attorney fee fraud scheme, Watts Guerra LLP, et al., unashamedly negotiated the transfer of Farmers' lawsuits to a Texas court in Watts Guerra's backyard, with no previous connection to the Syngenta litigation, to address Watts Guerra LLP's 40 percent contingent fee contracts.

18. The Hennepin County District Court judge did not appreciate Defendants' odious jurisdiction transfer, and the parties revised the term sheet as a National Class Action Settlement Agreement ("Settlement Agreement") filed with the MDL court on February 26, 2018, with claim administration under the jurisdiction of the MDL court.

19. At the end of the day, Farmers, the deceived and exploited corn growers, were allowed back into the Syngenta MDL settlement class. Although Defendants' two-prong settlement gambit failed, and Farmers were allowed back into the Syngenta MDL settlement class, the adage of "no harm, no foul" is not acceptable for litigation in the American justice system. In 247 years of American jurisprudence, the ends have never excused the means. This is particularly true when it is lawyers, tasked with the administration of justice through their law license, running the scam. *In re Tornow*, 835 N.W.2d 912, 923 (S.D. 2013) ("A practitioner of the legal profession does not have the

9

liberty to flirt with the idea that the end justifies the means … Certainly our Rules of Professional Conduct allow no such flirtation.") (quoting *In re Discipline of Mines*, 523 N.W.2d 424, 427 (S.D. 1994); *In re Hager*, 812 A.2d 904, 914 (D.C. 2002) ("Obtaining the best possible outcome for one's clients is never a viable defense to charges of ethical misconduct; the ends do not justify the means.").

20.     Defendants' "mass-tort … individual suit" contingent fee fraud scheme violates multiple rules of the Minnesota Rules of Professional Conduct. For example, Minn. R. Prof. Conduct 7.1 states that "[a] lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services." Rule 1.4 requires lawyers to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent" is required. Rule 1.5(a) requires lawyers to charge a reasonable fee; Rule 1.5(e)(2) requires disclosure of fee share agreements and the client's consent). Rule 1.7 states that lawyers "shall not" proceed with representation directly adverse to current and former clients. Rule 1.8 states that lawyers "shall not … acquire an ownership, possessory, security, or other pecuniary interest adverse to a client." Rule 1.9 states that lawyers "shall not" proceed with representation materially adverse to a former client unless the former client gives consent in writing. Rule 4.1 states that in the course of representing a client, "a lawyer shall not knowingly make a false statement of fact or law." Rule 8.4 states that lawyers shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

21.     Farmers assert federal statutory claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, Minnesota statutory claims under the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01, et al., and Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and civil conspiracy.

22.     Farmers are injured by Defendants' deceit and breach of fiduciary duties as a matter of law. *Gilchrist v. Perl*, 387 N.W.2d 412, 417 (Minn. 1986) (*Perl III*) ("[W]e reaffirm that cases of actual fraud or bad faith result in total fee forfeiture."); *Perl v St. Paul Fire and Marine Ins. Co.*, 345 N.W.2d 209, 212 (Minn. 1984) (*Perl II*) ("the client is deemed injured even if no actual loss results"); *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982) (*Perl I*) ("an attorney … who breaches his duty to his client forfeits his right to compensation").

23.     Farmers ask the Court to declare that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.

24.     Farmers request monetary damages to the extent that Defendants claim and capture any attorney fee and expense awards in the Syngenta MDL, as occurred with

11

January 7, 2021, and June 4, 2021 distributions of fee and expense awards by the MDL

district court to the Defendants, all available prejudgment and post-judgment interest, and

treble the forfeited compensation and monetary damage, jointly and severally, under 18

U.S.C. § 1964(c) and Minn. Stat. §§ 481.071 and 481.07 (Misconduct by Attorneys and

Penalties for Deceit or Collusion).

25.　　The Syngenta MDL court awarded $503.33 million in attorney fees in the

MDL settlement proceedings and created four pools: the Kansas pool ($246.6 million);

Minnesota pool ($118.30 million); Illinois pool ($78.0 million); and the pool for

individually retained private attorneys with contingent fee contracts ("IRPA pool")

($60.40 million). D. Kan. No. 2:14-MD-02591-JWL-JPO, ECF No. 3850, Dec. 7, 2018;

ECF No. 3882, Dec. 31, 2018.

26.　　Of the $503.33 million, the fee and expense awards to the Defendants in the

*Kellogg* lawsuit, during the MDL settlement proceedings, upon information and belief,

total at least $393,604,569.90. Farmers thus request monetary damages from the

Defendants, jointly and severally, in excess of $393.6 million, and treble damages in

excess of $1.18 billion.

27.　　Defendants' misconduct stains the administration of justice. Defendants

solicited Farmers as clients through deceit and secretly traded their legal rights for money

and favors. Defendants never disclosed to Farmers the money they agreed to pay MDL

and Minnesota class counsel through the joint prosecution agreements – a share of

12

Farmers' recovery from Syngenta (Farmers' money) – in exchange for (1) the exclusion of Farmers from the class proceedings, and (2) agreements that class counsel would not contest Defendants' 40 percent contingent fee contracts with individual farmers. At all times since the inception of Defendants' "mass tort ... individual suit" attorney fee fraud scheme, Defendants placed their self-dealing financial interests above Farmers' interests.

28.     On March 20, 2023, the Supreme Court of the United States dismissed a petition for a writ of certiorari by the *Kellogg* plaintiffs in *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246 (10th Cir. 2022), *cert. denied*, 2023 WL 2563324 (U.S. Mar. 20, 2023) (No. 22-651), Tenth Circuit Nos. 20-3172 and 20-3257, D. Kan. No. 2:18-CV-02408-JWL-JPO, D. Minn. No. 18-CV-01082-DWF-BRT (April 24, 2018), a putative class action alleging racketeering and a breach of fiduciary obligations through deceit. The *Kellogg* lawsuit presented claims by the plaintiff corn growers that Watts Guerra LLP, and joint venture partners and conspirators in multiple states, perpetrated a "mass tort ... individual suit" attorney fee fraud scheme against 60,000 American corn growers. The lawsuit alleged, as in this case, that the defendants pursued their scheme through concealed joint prosecution agreements automatically opting the corn growers out of class litigation in the Syngenta MDL and Minnesota without their knowledge and informed consent, and a fraud upon the Syngenta MDL and Minnesota class action courts to persuade the courts to allow the automatic opt-outs. Amended Class Action Complaint For Declaratory And Injunctive Relief And Damages ("Amended Complaint"), D. Kan.

13

No. 2:18-CV-02408-JWL-JPO, ECF No. 121, ¶¶ 1-464; Fourth Declaration of Douglas J. Nill, Exs. 1-60, ECF No. 153(1)-(4); *Expert Report of Richard Painter*, ECF No. 279-2; *Supplemental Report of Richard W. Painter*, ECF No. 331-1; Affidavit Identifying Expert (Richard W. Painter), ECF No. 322.[2]

29.     The *Kellogg, et al.* lawsuit was not certified as a class action before the lawsuit claims were dismissed against the six named plaintiffs under Fed. R. Civ. P. 12, and is not res judicata or collateral estoppel to the claims in this lawsuit. The essential reason is that this lawsuit asserts claims by Niekamp and Hebrink, who were not named plaintiffs in the *Kellogg* lawsuit. *See, e.g., Smith v. Bayer Corp.*, 564 U.S. 299, 131 S. Ct. 2368, 2379-80 (2011) (unnamed member of putative class is not bound by any judgment in that litigation); *Shutts*, 472 U.S. at 811-812 (absent class members are not bound by merits judgment against named class plaintiffs without class certification notice and opportunity to opt-out).

---

[2] The issues in the *Kellogg, et al.* petition to the Supreme Court are: (1) whether the transfer of the *Kellogg* lawsuit from the District of Minnesota to the Syngenta MDL was a categorical violation of the MDL transfer statute, 28 U.S.C. § 1407(a); (2) whether lawyers can privately contract clients and absent class members out of a Fed. R. Civ. P. 23 class action, and thereby deprive the clients and absent class members of the individual notice and opt-out procedures and due process safeguards enshrined in Rule 23; (3) whether the district court judge in the Syngenta MDL had a conflict of interest that required his recusal or disqualification under the 28 U.S.C. §§ 455(b) and (e) recusal mandates of the United States Congress and the Fifth Amendment Due Process Clause's guarantee of an impartial adjudicator; and (4) whether the MDL district court judge could dismiss the *Kellogg* lawsuit, an independent legal malpractice lawsuit, based on his fee award decisions in the MDL settlement proceedings. The Supreme Court declined to address the issues by denying the petition – a decision to not decide.

30. Defendants' misconduct through the unlawful and concealed joint prosecution agreements will be addressed by motions for declaratory and summary judgment. Farmers will request a declaratory judgment under 28 U.S.C. § 2201 which authorizes a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." And Farmers will request a declaratory judgment under the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01 *et seq.*, the Minnesota statute authorizing a court "to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

31. There is an actual case and controversy regarding Farmers' rights in respect to Defendants' actions in negotiating and signing joint prosecution agreements that automatically removed 60,000 Farmers from the Syngenta MDL and Minnesota class litigation without the Farmers' knowledge and informed consent. Farmers will ask the Court to declare that Defendants' unlawful and concealed joint prosecution agreements were a breach of fiduciary obligations and deceit as a matter of law.

32. The Defendants have never disclosed the joint prosecution agreements and the terms of those agreements to Farmers. Because Farmers were never apprised that they were putative class plaintiffs in the Syngenta MDL class proceedings, and excluded from those proceedings without their knowledge and informed consent, Defendants' scheme of racketeering and a breach of fiduciary obligations and a fraud of omission is active and

15

ongoing. And the Defendants were actively engaged in efforts to enforce their contingent fee contracts in the Tenth Circuit in appeals of the Syngenta MDL fee award decisions. *See* Tenth Circuit File Nos. 19-3008, 19-3021, et al.; *see also* Tenth Circuit File Nos. 21-3020, 21-3021, 21-3022, 21-3106, 21-3110, 21-3111, 21-3121.

33.     The fee and expense awards to the Defendants in the MDL settlement proceedings on January 7, 2021, and June 4, 2021, are a monetary damage to Farmers as a result of the Defendants' racketeering and a breach of fiduciary obligations through deceit. *Perl II*, 345 N.W.2d at 212-213 (attorneys' fees claimed by lawyers who breach fiduciary obligations through deceit are "money damages" to clients).

34.     In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), the U.S. Supreme Court recognized that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." In *China Agritech, Inc. v. Resh*, 584 U.S. ___, ___, 138 S. Ct. 1800, 1804 (2018), the Supreme Court held that "a plaintiff may not bring a 'follow-on class action past expiration of the statute of limitations' after the denial of class certification in an earlier class action." *China Agritech* stands for the proposition that *American Pipe* tolling does not save a subsequently filed class action when class certification previously had been denied. *China Agritech* did not involve and did not address application of *American Pipe* to a case like this one, where a prior class action, the *Kellogg* lawsuit, had been filed but dismissed for reasons separate and apart from the propriety of class certification. *See In*

16

*re Vertrue Inc. Marketing and Sales Practices Litigation*, 719 F.3d 474, 479-80 (6th Cir. 2013) ("Because no court ever denied the motion for class certification in the [ ] action, we affirm the district court's conclusion that the plaintiffs' claims were timely filed."); *Catholic Social Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1149 (9th Cir. 2000) (finding where *American Pipe* tolling applied to individual plaintiffs after a dismissal, those plaintiffs could "aggregate" their timely actions into a subsequently filed class action).

35.     In any event, the class action tolling doctrine in *American Pipe* and *China Agritech* does not impede a follow-on class action lawsuit by putative class plaintiffs in the *Kellogg* lawsuit in federal or state court. The *American Pipe* tolling doctrine as addressed in *American Pipe*, and the limit on follow-on class action lawsuits imposed by *China Agritech*, only apply to federal claims with an applicable statute of limitations.

36.     There is no statute of limitations for the disgorgement of legal fees procured through racketeering. *See In re Nat'l Prescription Opiate Litig.*, MDL 2804, No. 1:17-MD-2804, ECF No. 2568, slip op. at 11 (N.D. Ohio, Sept. 4, 2019) (Polster, J.) ("Plaintiffs' RICO claims for equitable relief, like those brought under the Clayton Act and like public nuisance claims, are exempt from the operation of a limitations period."); *see generally Bennett v. Berg*, 710 F.2d 1361, 1366 (8th Cir. 1983) (McMillan, J., concurring) (equitable relief is available to private parties under RICO); *Josephs v. Marzan*, 21-CV-00749-JRT-DTS (D. Minn. Jan. 5, 2022) (equitable relief is available under 28 U.S.C. § 1964(a)). And limitation statutes do not apply to a federal or state

17

declaratory judgment action. *See Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) ("Declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated."); *State v. Joseph*, 622 N.W.2d 358 (Minn. Ct. App. 2001) (there is no statute of limitations for declaratory judgment actions).

37.     For state claims, Minnesota recognizes equitable tolling where the factual predicate for the cause of action is concealed through a fraud of omission. Thus, a follow-up class complaint targeting the unlawful and concealed joint prosecution agreements through a breach of fiduciary obligations and a fraud of omission and the Minnesota consumer fraud act, are governed by equitable tolling under Minnesota law.

38.     Minnesota also recognizes the continuing violations doctrine. In certain situations, a cause of action which otherwise would be barred by a statute of limitation will be tolled because the wrongful act is a continuing violation of the plaintiff's rights. Although "[t]he continuing violation doctrine is most commonly applied in [employment] discrimination cases involving wrongful acts that manifest over a period of time, rather than a series of discrete acts," *Davies v. W. Pub. Co.*, 622 N.W.2d 836, 841 (Minn. Ct. App. 2001), *rev. denied* (Minn. May 29, 2001), it has been applied to trespass, *N. States Power Co. v. Franklin*, 122 N.W.2d 26, 30-31 (Minn. 1963), and required disclosures on political campaign signs. *Lewison v. Hutchinson*, 929 N.W.2d 444, 450-51 (Minn. App. 2019). The continuing violations doctrine applies to lawyers who breach fiduciary obligations through deceit with continuous violations during the representation when

18

lawyers are fiduciaries to clients and officers of the court. *Rucker v. Schmidt*, 794 N.W.2d 114, 120 (Minn. 2011) (a lawyer "has a duty not only to the client, but also to 'the public as an officer of the court in the administration of justice.'").

39.     In this case, the Watts Guerra LLP racketeering scheme, with Syngenta MDL and Minnesota Class Counsel as participants through the unlawful and concealed joint prosecution agreements, *see, e.g.*, *Expert Report of Richard Painter*, D. Kan. No. 2:18-CV-02408-JWL-JPO, ECF No. 279-2, at ¶¶ 23-33, and *Affidavit Identifying Expert* (Richard W. Painter), ECF No. 322, at ¶¶ 30-35, presents continuing misconduct since the *Kellogg* complaint was filed on April 24, 2018, and the amended complaint was filed on November 13, 2018, such as the Defendants' concealment of evidence, a breach of the fiduciary relationship during the settlement proceedings, and the misappropriation of disputed funds that occurred after disbursements of fees and expenses by the MDL district court on January 12, 2021, and June 4, 2021. *See Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 71 (Minn. 2020) ("The critical question is 'whether any present *violation* exists' within the statute of limitations period.") (citing *Sigurdson v. Isanti County*, 448 N.W.2d 62, 67 (Minn. 1989). (Emphasis in original); *see generally Frederick v. Wallerich*, 907 N.W.2d 167 (Minn. 2018) (multiple acts of legal malpractice can give rise to independent causes of action, each having a separate accrual date under an applicable statute of limitations).

40.     A continuing violation, a violation today, is Defendant Daniel E.

Gustafson's (Gustafson Gluek PLLC) disregard of Farmers' July 10, 2019 and August
19, 2019 letter requests for "an unredacted copy" of a July 30, 2015 letter by a Minnesota
attorney ethics expert, David L. Sasseville, concluding that the joint prosecution
agreements that excluded 60,000 Farmers from the MDL class proceedings without
Farmers' knowledge and informed consent – a private pay-for-exclusion deal between the
lawyers – violated attorney fiduciary obligations to clients and Rule 1.7 of the Rules of
Professional Responsibility. Upon information and belief, the redacted language in
Sasseville's letter fully addresses his conclusions that the joint prosecution agreements
violated attorney fiduciary obligations and ethical norms.

41.     Gustafson responded in a July 16, 2019 email and an October 1, 2019 letter
to Farmers' counsel that he "did not recall" the Sasseville letter, even though he was a
recipient of the letter and a redacted copy of the letter was filed in the *Kellogg* litigation,
D. Kan. No. 2:18-cv-02408-JWL-JPO, ECF No. 153-1, Ex. 60, and he copied his letter to
Minnesota co-lead counsel and Syngenta MDL settlement co-lead counsel. Thus, all
signatories to the unlawful and concealed joint prosecution agreements were apprised of
Gustafson's evasive and unprofessional response. *See* Minnesota Lawyers Board Opinion
No. 21 (2009) (lawyers have an ethical duty to their clients to disclose errors that may
provide a reasonable basis for non-frivolous malpractice claims).

42.     Gustafson's October 1 letter was an effort to conceal a breach of fiduciary
obligations engendered through the unlawful joint prosecution agreements that were

20

never disclosed to the 60,000 corn growers that are the plaintiffs in this complaint. *See* August 19, 2019 letter by Farmers' counsel to Gustafson: "You may cure your disregard for your ethical and fiduciary obligations to 60,000 corn growers by promptly providing an unredacted copy of the Sasseville letter … [unless] you are hiding evidence of a breach of your ethical and fiduciary obligations to 60,000 corn growers … you would readily produce an unredacted copy of the letter."

43.     As the Minnesota courts recognize equitable tolling for individual claims and the continuing violations doctrine, the Minnesota courts also recognize class action tolling. In *Bartlett v. Miller & Schroder Muns., Inc.*, 355 N.W.2d 435, 439 (Minn. Ct. App. 1984), the lower Minnesota appellate court adopted the *American Pipe*-style holding to assert as a matter of state law that "[t]he filing of a class action tolls the running of the statute of limitations as to all asserted members of the class who would have been parties had the action been certified as a class action." *See Ivan Villa Lara v. LG Electronics U.S.A., Inc.*, Civ. No. 17-5222-JRT-KMM, slip op. p. 12  (D. Minn. Aug. 7, 2018) ("*American Pipe* tolling applies to federal claims, not state ones, and so the Court 'must look to any state analogue to *American Pipe* tolling rather than *American Pipe* itself.'") (citing *Thomas v. U.S. Bank NA DS*, 789 F.3d 900, 903 (8th Cir. 2015) (quoting *Vincent v. Money Store*, 915 F. Supp. 2d 553, 561 (S.D.N.Y. 2013).

44.     In regard to Farmers' fee forfeiture claims through this lawsuit, at least $100,675,529.61 ("$101 million") in attorney fee funds are held in in the Syngenta MDL

21

common fund bank account that have not been distributed. *See Joint Motion For Disbursement Of Funds To Pay Attorneys' Fee Awards And Memorandum In Support Thereof*, D. Kan. No. 2:14-MD-02591-JWL, Nov. 9, 2023, at p. 10. This $101 million includes $30 million allocated to the Kansas, Minnesota, and Illinois pools; the entire $60,200,000 allocated to the IRPA pool, and at least $10,475,529.61 in net interest earned on the escrowed attorney fees since the settlement was funded by Syngenta.

45.     The 60,000 Farmers who are named and putative class Plaintiffs in this lawsuit have due process rights and property interests in the causes of action in this lawsuit that commenced when this suit was filed. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985) (*named and "absent class-action plaintiffs"* have a "constitutionally recognized property interest" in "a chose in action"). Thus, the entire portion of this $101 million held in the Syngenta MDL common fund that is claimed by the Defendants as their attorney fee award in the Syngenta litigation – and thus subject to forfeiture in this racketeering and legal malpractice lawsuit – are "disputed … funds" under Minn. R. Prof. Conduct 1.15(b) (lawyers "shall" hold "disputed … funds" in an escrow bank account until the dispute is "finally resolved"), the equivalent American Bar Association (ABA) Model Rule 1.15(e), and Kan. R. Prof. Conduct 1.15(c). Because a lawyer has a fiduciary duty of loyalty to clients and former clients, the named and putative class Plaintiffs' mere assertion of a claim in this lawsuit, through this Class Action Complaint, is enough to prevent the Defendants from collecting the disputed attorney fees). *See In re Haar*, 667

22

A.2d 1350, 1353 (D.C. 1995) ("There is no requirement that the dispute be genuine, serious, or bona fide, … The lawyer may not take possession of property the ownership of which is disputed by the client until it is absolutely clear that the dispute with the client has been finally resolved."); *see also Affidavit Of Expert Review*, Ex. 3, filed with this Class Action Complaint, at ¶ 36 (emphasis added): "Defendants have ethical obligations … and fiduciary and other obligations that extend to all *named and putative class plaintiffs* [in this lawsuit] to hold their attorney fee and expense awards in escrow as disputed funds pending a final resolution, through trial and any possible appeals, of Plaintiffs' claims in this lawsuit."). This necessarily includes, for example, the entire $37 million claimed by Defendant Watts Guerra LLP from the IRPA pool. *See* Watts Guerra IRPA fund application on January 18, 2019, Syngenta MDL 2591, ECF No. 4035, at p. 2, ¶ 4 (emphasis added): "The Court should calculate and make a single award to Watts Guerra itself – with Watts Guerra responsible for dividing that award among itself and its associate counsel consistent with fee-sharing provisions in the underlying fee agreements."

46.     If the Defendants do not timely provide an accounting to Plaintiffs' counsel of their share of the $101 million during the pendency of this lawsuit, retain their share in a trust account, identify to Plaintiffs' counsel the trust account holding those funds, and meet all of the requirements of Minn. R. Prof. Conduct 1.15(a), (b) and (c) ("disputed … funds … shall be deposited in more or more identifiable trust accounts" and the lawyer

23

"shall ... promptly notify [the] client" and provide "an accounting" of the funds), they will further evidence their ongoing racketeering scheme, and ongoing, continuing and independent violations of their fiduciary obligations to the 60,000 Farmers who are Plaintiffs in this lawsuit. *See* Minn. R. Prof. Conduct 1.15(b); *see also* Minn. R. Prof. Conduct 1.7 (lawyer "shall not" proceed with representation "directly adverse" to current and former clients); Rule 1.8 (lawyer "shall not ... acquire an ownership, possessory, security, or other pecuniary interest adverse to a client"); Rule 1.9 (lawyer "shall not" proceed with representation directly adverse to former client unless former client gives consent in writing). In addition, the Defendants will establish, as a matter of law, the misappropriation of the disputed funds and professional misconduct. *In re Copeland*, 505 N.W.2d 606, 608-09 (Minn. 1993). ("'[M]isappropriation occurs whenever funds belonging to a client are not kept in trust and are used for any purpose other than that specified by the client,' ... even where the attorney did not intend to embezzle the funds.") (quoting *In re Isaacs*, 451 N.W.2d 209, 211 (Minn. 1990); *In re Strid*, 439 N.W.2d 721 (Minn. 1989) (the misappropriation of client funds "is of the most serious degree in attorney discipline matters and almost always results in either disbarment or substantial suspension from the practice of law").[3]

---

[3] Several of the Defendants in this lawsuit, Watts Guerra LLP through counsel, Daniel E. Gustafson for Gustafson Gluek PLLC, and Bassford Remele PA through counsel, wrote May 31, 2023 letters to Farmers' counsel presenting threats to file motions for sanctions if Farmers' counsel filed this lawsuit. The coordinated letters overlook that Farmers' counsel represents the Defendants' clients in this legal malpractice class action

47.     The Rules of Professional Conduct and the "shall" mandates within those

Rules, such as Minn. R. Prof. Conduct 1.15(b) ("disputed … funds … shall" be held in

trust for the protection of the client "until the dispute is resolved"), are substantive law,

*Rich v. Simoni*, 772 S.E.2d 327, 334 (W.Va. 2015) ("shall" is a mandate which elevates

an ethics rule into a clear expression of public policy and state substantive law), and do

not contemplate that injured clients like the 60,000 Farmers in this lawsuit should have to

pursue independent "clawback" lawsuits to recover "disputed … funds." Minn. R. Prof.

Conduct 1.15(b); ABA Model Rule 1.15(e); Kan. R. Prof. Conduct 1.15(c).

## PARTIES

**A.      Plaintiffs are corn growers in Ohio and Minnesota.**

**1.      Christopher J. Niekamp**

48.     Christopher J. Niekamp and his wife Jennifer are Ohio farmers engaged in

---

requesting a forfeiture of the Defendants' attorney fee and expense awards in the
Syngenta MDL settlement proceedings in the District of Kansas. *See, e.g.,* Tenth Circuit
File Nos. 21-3020, 21-3021, 21-3022, 21-3106, 21-3110, 21-3111, 21-3121. In the
Defendants' zeal to threaten Farmers' counsel, an agent for their clients, they threaten
their clients to attempt to stop them from proceeding with a fee-dispute lawsuit. The
coordinated letter threats highlight an obvious conflict of interest and are unprofessional.
*See, e.g.,* Minn. R. Prof. Conduct 1.7(a)(1); *In re Szymialist*, 557 N.W.2d 554, 556 (Minn.
1997) (fee collection suit against a current client is a conflict of interest); *In the Matter of
Disciplinary Proceedings Against Strasburg*, 452 N.W.2d 152, 155 (Wis. 1990) (abusive
communications and threatening legal action against a client in a fee dispute during the
representation is a conflict of interest); Timothy M. Burke, *Don't Sue a Current Client
for Fees*, MINN. LAW. Aug. 6, 2007, at 11. Relevant to this lawsuit, their letters show an
ongoing racketeering scheme and constitute a continuing breach of their fiduciary
obligations to the 60,000 corn growers who were victimized by their misconduct.

25

the business of planting, growing, harvesting, and selling corn in Ohio. Niekamp signed a retainer contract with Watts Guerra, LLP on July 9, 2015, assigning 40 percent of any gross recovery from Syngenta to Watts Guerra LLP.

49.     The Niekamp lawsuit against Syngenta, et al. in Hennepin County District Court is dated September 26, 2015, File No. 27-CV-15-17036. The lawsuit was filed by Markus C. Yira on behalf of Daniel M. Homolka PA and Watts Guerra LLP. As Homolka is not on the retainer contract, the complaint indicates an undisclosed fee share agreement with Homolka. The case was then transferred to Hennepin County District Court on September 30, 2015, File No. 27-CV-15-3785.

50.     A Joint Prosecution Agreement ("JPA") to automatically exclude the Niekamp claims from the MDL class action was signed by Defendants in April, 2015 with an amended JPA signed on June 18, 2015. Niekamp was never informed by Defendants when the retainer agreements were signed that he was a putative member of class proceedings in the Syngenta MDL in Kansas. Niekamp was never informed of the existence and terms of the JPA, a fee-share agreement, and his automatic exclusion from the MDL class action proceedings. To this day, the signatories on the joint prosecution agreements have never disclosed the agreements and the terms of the agreements to Niekamp who was excluded from the class proceedings without his knowledge and informed consent.

51.     Defendants never disclosed the terms of the September 25, 2017 settlement

26

term sheet to Niekamp, who was unaware of the terms until this lawsuit against Defendants. Niekamp was never informed that Watts Guerra LLP, et al. had negotiated a transfer of their lawsuits against Syngenta from Minnesota state court, to a Texas county court with no previous connection to the Syngenta litigation, so that Watts Guerra LLP, et al. could attempt to apply their 40 percent contingent fee contracts. Watts Guerra LLP, et al. concealed this attempted transfer from Niekamp and all 60,000 of their clients. Watts Guerra LLP also concealed this attempted transfer from their referral firms.

52.     Niekamp relied to his detriment on written materials provided by Watts Guerra LLP, et al., such as direct mailings and newsletters, the same newsletters sent by Watts Guerra LLP, et al., to all of their clients. The newsletters did not inform the clients at any time that they were putative members of class action proceedings in the Syngenta MDL in Kansas. The newsletters did not inform the clients of the existence of the JPA and MPA and the terms of those agreements, including the material fact that the agreements automatically excluded Niekamp and all of Defendants' clients from the Syngenta MDL and Minnesota class certification proceedings and notice and opt-out procedures. The newsletters did not provide any information about the reasons for the exclusion and the risks and benefits of individual lawsuits versus class participation.

53.     In addition, reliance by Niekamp and all of the Watts Guerra LLP, et al. clients is presumed. Defendants pursued an intentional fraud upon the individuals who were in the market for honest and ethical legal services. Niekamp and all of the Watts

27

Guerra LLP, et al. clients reasonably presumed that Watts Guerra LLP, et al. and all lawyers honestly and ethically market their legal services, through letter solicitations, advertisements, town hall meetings, website materials and newsletters.

54. Niekamp and all of Defendants' clients were deprived by Defendants of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Defendants, thereby subjecting Niekamp and all 60,000 clients to Watts Guerra LLP's fraudulent scheme to extract unreasonable attorney fees. Neikamp and all 60,000 clients lost the opportunity to make an intelligent decision as to whether they needed Defendants' legal services.

55. The reaction by Niekamp, when he learned the truth, was to participate in this lawsuit against Defendants, individually, and on behalf of a class of similarly situated corn growers across the United States, a class comprised of Watts Guerra LLP's 60,000 individual clients.

56. Through the Syngenta MDL settlement proceedings, Niekamp received claim payments on March 30, 2020, and December 30, 2020, totaling $3,522.08. With 1/3 of each claim assigned to attorney fees, Niekamp thus had a total claim of $5,283.12, with $1,761.04 of that claim assigned to attorney fees. About 76 percent of the fee and expense awards were assigned to the Defendants in this lawsuit. Niekamp, thus seeks a forfeiture of at least $1,338.39, which sum is then trebled under applicable law in this complaint.

28

57.     Niekamp, individually and on behalf of all others similarly situated, ask the Court to declare that Defendants have forfeited their claim to any compensation, and that Defendants have waived any quantum meruit claim against Niekamp and all of Defendants' clients through their dishonest representations and omissions and conduct.

### 2.     Randall D. Hebrink

58.     Randall D. Hebrink is a Minnesota farmer engaged in the business of planting, growing, harvesting, and selling corn in Minnesota. Hebrink signed a retainer contract with Watts Guerra LLP in 2015, assigning 40 percent of any gross recovery from Syngenta to Watts Guerra LLP.

59.     The Hebrink lawsuit against Syngenta, et al. in Renville County District Court is dated January 23, 2015, File No. 65-CV-15-61. The lawsuit was filed by Markus C. Yira on behalf of Watts Guerra, LLP. The case was then transferred to Hennepin County District Court on July 20, 2015, File No. 27-CV-15-3785.

60.     A Joint Prosecution Agreement ("JPA") to automatically exclude the Hebrink claims from the MDL class action was signed by Defendants in April, 2015 with an amended JPA signed on June 18, 2015. Hebrink was never informed by Defendants when the retainer agreements were signed that he was a putative member of class proceedings in the Syngenta MDL in Kansas. Hebrink was never informed of the existence and terms of the JPA, a fee-share agreement, and his automatic exclusion from the MDL class action proceedings. To this day, the signatories on the joint prosecution

agreements have never disclosed the agreements and the terms of the agreements to
Hebrink who was excluded from the class proceedings without his knowledge and
informed consent.

61.     Defendants never disclosed the terms of the September 25, 2017 settlement
term sheet to Hebrink, who was unaware of the terms until this lawsuit against
Defendants. Hebrink was never informed that Watts Guerra LLP, et al. had negotiated a
transfer of their lawsuits against Syngenta from Minnesota state court, to a Texas county
court with no previous connection to the Syngenta litigation, so that Watts Guerra LLP, et
al. could attempt to apply their 40 percent contingent fee contracts. Watts Guerra LLP, et
al. concealed this attempted transfer from Hebrink and all 60,000 of their clients. Watts
Guerra LLP also concealed this attempted transfer from their referral firms.

62.     Hebrink relied to his detriment on written materials provided by Watts
Guerra LLP, et al., such as direct mailings and newsletters, the same newsletters sent by
Watts Guerra LLP to all of their clients. The newsletters did not inform the clients at any
time that they were putative members of class action proceedings in the Syngenta MDL
in Kansas. The newsletters did not inform the clients of the existence of the JPA and
MPA and the terms of those agreements, including the material fact that the agreements
automatically excluded Hebrink and all of Defendants' clients from the Syngenta MDL
and Minnesota class certification proceedings and notice and opt-out procedures. The
newsletters did not provide any information about the reasons for the exclusion and the

30

risks and benefits of individual lawsuits versus class participation.

63.     In addition, reliance by Hebrink and all of the Watts Guerra LLP, et al. clients is presumed. Defendants pursued an intentional fraud upon the individuals who were in the market for honest and ethical legal services. Hebrink and all of the Watts Guerra LLP, et al. clients reasonably presumed that Watts Guerra LLP, et al. and all lawyers honestly and ethically market their legal services, through letter solicitations, advertisements, town hall meetings, website materials and newsletters.

64.     Hebrink and all of Defendants' clients were deprived by Defendants of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Defendants, thereby subjecting Hebrink and all 60,000 clients to Defendants' fraudulent scheme to extract unreasonable attorney fees. Hebrink and all 60,000 clients lost the opportunity to make an intelligent decision as to whether they needed Defendants' legal services.

65.     The reaction by Hebrink, when he learned the truth, was to participate in this lawsuit against Defendants, individually, and on behalf of a class of similarly situated corn growers across the United States, a class comprised of Defendants' 60,000 individual clients.

66.     Through the Syngenta MDL settlement proceedings, Hebrink received claim payments on April 6, 2020, and December 30, 2020, totaling $7,456.71. With 1/3 of each claim assigned to attorney fees, Hebrink thus had a total claim of $11,185.07,

with $3,728.36 of that claim assigned to attorney fees. About 76 percent of the fee and

expense awards were assigned to the Defendants in this lawsuit. Niekamp, thus seeks a

forfeiture of at least $2,833.55, which sum is then trebled under applicable law in this

complaint.

67.     Hebrink, individually and on behalf of all others similarly situated, ask the

Court to declare that Defendants have forfeited their claim to any compensation, and that

Defendants have waived any quantum meruit claim against Hebrink and all of

Defendants' clients through their dishonest representations and omissions and conduct.

**B.     Plaintiff class is comprised of 60,000 corn growers across the United States who signed 40 percent contingent fee contracts with Watts Guerra LLP and conspirators to pursue individual lawsuits in Minnesota state courts.**

68.     Plaintiffs represent a proposed Class of all corn growers who signed

attorney retainer contracts with Watts Guerra LLP for representation in claims, suits or

other matters arising out of and resulting from economic damages sustained from the use

of Syngenta GMO products or those products' adverse effect on the U.S. corn market.[4]

The Class may be expanded to include others who conspired with Defendants to pursue

their attorney fee fraud scheme for financial benefit.

---

[4] Plaintiffs and the proposed Class of 60,000 corn growers who signed retainer contracts with Watts Guerra LLP are referenced as "Farmers" in this complaint. The 643,000 corn growers across the United States are referenced as corn growers or growers and on a few occasions as farmers or producers.

C. **Defendants are law firms and lawyers who are signatories on joint prosecution agreements that excluded 60,000 corn growers from class litigation without the corn growers' knowledge and informed consent.**

69. Watts Guerra LLP, is a Limited Liability Partnership with its headquarters at 875 East Ashby Place, Suite 1200, San Antonio, TX 78212.

70. Bassford Remele PA, is a Professional Association with its headquarters at Fifth Street Towers, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402-1254.

71. Gustafson Gluek PLLC, is a Professional Limited Liability Corporation with its headquarters at 2600 Canadian Pacific Plaza, 120 South Sixth Street, Minneapolis, MN 55402.

72. Schwebel Goetz & Sieben PA, is a Professional Association with its headquarters at 5120 IDS Center, 80 S. 8th St., Minneapolis, MN 55402-2246.

73. Stueve Siegel Hanson LLP, is a Limited Liability Partnership with its headquarters at 460 Nichols Road, Suite 200, Kansas City, MO 64112.

74. Hare Wynn Newell & Newton LLP, is a Limited Liability Partnership with its headquarters at 800 Shades Creek Pkwy, Suite 800, Birmingham, AL 35209.

75. Gray, Ritter & Graham PC, is a Professional Corporation with its headquarters at 701 Market Street, Unit 800, St. Louis, MO 63101.

76. Gray Reed & McGraw PC, is a Professional Corporation with its headquarters at 1300 Post Oak Blvd., # 2000, Houston, TX 77056.

77. Lockridge Grindal Nauen PLLP, is a Professional Limited Liability

33

Partnership with its headquarters at 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401-2159.

78.     Paul McInnes LLP, is a Limited Liability Partnership with its headquarters at 601 Walnut Street, Suite 300, Kansas City, MO 64106.

79.     Mikal C. Watts is a partner with Watts Guerra LLP, with its headquarters at 875 East Ashby Place, Suite 1200, San Antonio, TX 78212.

80.     Francisco Guerra is a partner with Watts Guerra LLP, with its headquarters at 875 East Ashby Place, Suite 1200, San Antonio, TX 78212.

## JURISDICTION AND VENUE

81.     Farmers are the approximate 60,000 individual corn growers across the United States who are represented by the Defendants and removed from the MDL and Minnesota class proceedings through private contracts between the Defendants. Most of those 60,000 corn growers had cases filed against Syngenta in Minnesota state district courts and consolidated in Hennepin County District Court, File No. 27-cv-15-3785, by Order of the Minnesota Supreme Court.[5]

---

[5] The Minnesota Supreme Court in a May 22, 2015 Order assigned all cases filed in Minnesota state courts against Syngenta to a single judge, the Honorable Thomas M. Sipkins of the Fourth Judicial District, under Minn. R. Gen. P. 113.03. Judge Sipkins consolidated the Syngenta cases into two lead files: *In re: Syngenta Class Action Litigation: Class Action*, No. 27-cv-15-12625; and *In re: Syngenta Class Action Litigation: Individual Claims*, No. 27-cv-15-3785. Upon information and belief, there are about 23,000 Minnesota corn growers who are members of the Minnesota class action, and about 60,000 growers across the United States, including 9000 Minnesota growers, who filed individual claims. Judge Sipkins announced that he was retiring and by July 7,

34

82.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and 18 U.S.C. § 1964(c), because this action alleges violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

83.     The Court also has subject-matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are some 60,000 proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount of $5,000,000.00; and Defendants are citizens of States different from that of named Plaintiffs and members of the Class. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

84.     Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because one of the plaintiffs resides in Mercer County, and a substantial number of the 60,000 proposed Class members are Ohio corn growers who were victimized by the Defendants' scheme of racketeering and a breach of fiduciary obligations through deceit. Thus, the Northern District of Ohio has a substantial

---

2017 Order the Minnesota Supreme Court assigned the Syngenta cases to the Honorable Laurie J. Miller of the Fourth Judicial District.

connection to the Defendants' unlawful conduct addressed in this Class Action Complaint.

## CHOICE OF LAW

85.     Farmers address Defendants' misconduct through federal and Minnesota laws that apply to all Farmers. Defendants misused the Minnesota courts to file their 60,000 individual lawsuits against Syngenta in furtherance of their "mass tort … individual suit" attorney fee fraud scheme. The secret Joint Prosecution Agreements excluding Defendants' 60,000 individual clients from class action proceedings in the federal MDL and Minnesota were employed by Defendants in the MDL and Minnesota courts in furtherance of that scheme. Defendants misled the MDL and Minnesota courts to believe that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the MDL and Minnesota class certification proceedings and notice and opt-out procedures. Accordingly, Minnesota has a connection to the claims of each Farmer and Class Member, and no state has a greater interest than Minnesota in having its law apply to this case. The state of Minnesota has a "significant contact or significant aggregation of contacts" to the claims of each class member such that application of Minnesota law is "not arbitrary or unfair." *Shutts*, 472 U.S. at 821-22.

86.     Defendant Watts Guerra LLP's early contracts with Farmers did not contain a choice of law and forum provision. *See Kellogg, et al.*, D. Kan. No. 2:18-CV-02408-

JWL-JPO, ECF No. 153-2, Ex. 1 (Bromley) and Ex. 2 (www.lostcornincome.com 4/5/18: "NO CASES WILL BE ACCEPTED EFFECTIVE 9/1/17). Although some later contracts assert that Texas law and a Texas forum apply to contract disputes, Ex. 3 (*Kellogg:* May 11 and May 24, 2015), there was no consideration for Farmers to sign the later contracts. The Texas law and forum language would not apply, in any event, to Farmers' claims of attorney misconduct presented in this case.

87.     The American Bar Association (ABA) Model Rules of Professional Conduct Rule 8.5(a) and (b) (2007) provide (emphasis added):

> (a)  Disciplinary Authority.  A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction regardless of where the lawyer's conduct occurs.  A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction.  A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.
> (b) Choice of Law.  In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:
> (1)  for *conduct in connection with a matter pending before a tribunal*, the *rules of the jurisdiction in which the tribunal sits*, unless the rules of the tribunal provide otherwise; * * *

88.     Because Defendants used the Minnesota courts to litigate their 60,000 individual lawsuits against Syngenta in furtherance of their "mass tort … individual suit" attorney fee fraud scheme, Defendants' misconduct is governed by the Minnesota Rules of Professional Conduct.

89. Likewise, Minnesota has a strong public policy interest in enforcing its laws addressing attorney misconduct by lawyers practicing law in Minnesota, which include criminal penalties under Minn. Stat. §§ 481.071 and 481.07 and Minn. Stat. § 325F.67.

90. Defendants' misconduct therefore falls under the governance of Minnesota statutory laws such as the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01, et al., Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, and Misconduct by Attorneys/Penalties for Deceit or Collusion, Minn. Stat. §§ 481.071 and 481.07, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and civil conspiracy.

## FACTUAL ALLEGATIONS

### A. Class actions with common damages like the Syngenta litigation.

91. In multi-state and national class actions with common facts and a common damage, the earlier a case is filed, the larger and more experienced the law firm doing the filing, and the more potential class members held by that firm, the more likely that law firm will be assigned a role on the lead counsel committee in consolidated litigation. It is the lead counsel committee in a class action who conduct documentary discovery, establish document depositories, take depositions, brief and argue motions, conduct bellwether trials, and in general, carry out the court's pretrial orders, including appearances at periodic conferences or hearings. Lawyers with clients who are not

selected for a leadership role are basically left to assist their clients in filing claims in the event of a resolution of the litigation. If the clients choose to opt-out of the class action proceedings or settlement, the lawyers for those clients are required to pay the lead counsel of the class, or MDL lead counsel for consolidated mass tort cases, a so-called common benefit fee as determined by the Judge handling the consolidated litigation.

92.     A class action with common facts and a common damage is the most efficient way to handle hundreds or thousands of claims. *See* Fed. R. Civ. P. 23; Minn. R. Civ. P. 23; *The Federal Class Action Practice Manual*; *MDL Standards And Best Practices*, Duke Law Center For Judicial Studies, Sept. 11, 2014. The work is handled by the assigned lead counsel and committee, with those lawyers getting a percentage of the common fund upon successful resolution of the case. The assigned judge for the class action is a fiduciary for the class, determining an appropriate fee award after motion practice, with input from all parties, plaintiff and defendant, as a percentage of the common fund.

93.     The Syngenta GMO litigation is a classic example of a case suited for class action treatment. The facts and issues are common to the class; that is, the alleged improper marketing by Syngenta, pushing its GMO seed into the United States market for growers when Syngenta reasonably should have anticipated that China might not grant approval for seed with the GMO MIR162 trait to enter the country.

94.     Defendants' own advertising solicitations to corn growers throughout the

39

Midwest announced a common price drop, a common cent-per-bushel damage, for every grower selling corn into the market throughout the United States. [6] As disclosed in Watts Guerra LLP's advertisements and solicitations and class certification pleadings in the MDL and Minnesota litigation, plaintiff experts opined that China's rejection of the Syngenta seed caused an estimated .22 cents to over $1 per bushel" price drop in the elevator price for corn, in 2015, in every market across the United States. Two experts opined in the MDL bellwether trial for Kansas corn growers that Syngenta's conduct, taking into account modest transportation and delivery variables, caused a damage of 48.69 cents a bushel and 40.90 cents a bushel for growers across the United States over a five year period from 2013-18. Using the lower calculation for this discussion, a corn grower who sold his corn in North Dakota suffered an alleged 40.90 cents per bushel price drop. A grower who sold his corn in Arkansas had the same essential 40.90 cents per bushel price drop. A grower in Kansas faced a 40.90 cents drop and a grower in Illinois faced the same 40.90 cents per bushel price drop.

---

[6] Again, the Defendants in this lawsuit are the law firms and lawyers who are signatories on joint prosecution agreements that excluded 60,000 Farmers from the Syngenta MDL and Minnesota class litigation without Farmers' knowledge and informed consent. However, "Defendants" is broadly used within this Class Action Complaint as a nomenclature to refer to all of the participants in the attorney fee fraud scheme initiated by Watts Guerra LLP, et al. through deceptive solicitations to Farmers to sign 40 percent contingent fee retainer contracts to pursue individual lawsuits.

**B.**   **Defendants exploit the "mass tort … individual suit" model for product liability litigation with individualized injuries and damages.**

95.   The "mass-tort … individual suit" model was exploited by Defendants to lure corn growers into their 40 percent contingent attorney fee scheme. A "mass-tort …individual suit" model is the type of litigation applied to drug and medical product device claims – pharmaceuticals and dangerous medical devices – where there is an individualized injury. A recipient of a defective weight loss drug, or a defective artificial hip implant, may suffer an individualized injury that differs significantly from someone else who purchased the same product.  Individualized injuries, individualized damages.

96.   An August 19, 2016 solicitation by the National Trial Lawyer to attend a mass tort conference highlights the types of defective drug and product claims that earn the mass tort moniker with individualized physical injuries:

- New Pradaxa docket in Connecticut
- IVC Filter Latest Developments
- Xareito MDL and Philadelphia Court of Common Please Update
- Fluoroquinolone antibiotics emerging litigation information
- Emerging Roundup litigation

97.   The National Trial Lawyer mass tort conference did not discuss the Syngenta litigation for a reason understood by all mass tort lawyers. Simply stated, the Syngenta case is not a "mass tort … individual suit" case. Watts Guerra LLP, et al. exploited the "mass-tort … individual suit" model as a means of justifying their attempts to lure uninformed corn growers to file individual suits, and thereby avoid the class action common fund model, with attorney fees subject to the fiduciary control of the

41

court as a percentage of the common fund.

**C.    Litigation race was on: federal MDL in Kansas.**

98.    On September 12, 2014, Cargill filed the first lawsuit against Syngenta for improper marketing of its GMO corn seeds. Corn exporter Transcostal Supply Company filed suit four days after Cargill. By October 2nd, five statewide class actions had been filed against Syngenta; by October 18, eleven statewide class actions had been filed. Archer Daniels Midland Company ("ADM") filed suit on November 19, 2014. By December 1, 2014, hundreds of corn growers had filed suit against Syngenta.

99.    The plaintiffs in an action filed in the Northern District of Illinois brought a motion under 28 U.S.C. § 1407 to centralize all pretrial proceedings in the Northern District of Illinois. Although no party opposed centralization, Syngenta suggested that the litigation be centralized in the District of Minnesota.

100.    The MDL Panel held a hearing in Charleston, South Carolina on December 4th. In a December 11, 2014 Order, MDL No. 2591, the Panel issued a Transfer Order centralizing the federal court litigation by corn growers against Syngenta in the District of Kansas, ruling that the numerous claims filed in federal court shared common issues of law and fact and should be consolidated for pretrial and discovery purposes, and assigning the Honorable Judge John W. Lungstrom to handle the proceedings. The MDL noted that one action and three tag-along actions were already pending in the District of Kansas. The MDL also noted that a total of 168 potentially related "tag-along" actions by

42

corn growers against Syngenta had been filed in various federal district courts after the initial motion for consolidation by the plaintiffs in the Northern District of Illinois.

101.    Defendant Watts Guerra LLP, et al. avoided the federal courts, knowing that any lawsuits filed in federal court would be consolidated into the MDL. Defendants employed the Minnesota state courts for their scheme, because one of the four Syngenta entities in the United States, Syngenta Seeds, Inc., had its headquarters in Minnesota. And Defendants never told Farmers, a fraud of omission, that the consolidated proceedings in federal court in Kansas included complaints filed as putative class actions, covering corn growers in states across the United States, including Iowa, Illinois, Nebraska, Minnesota, Indiana, South Dakota, Kansas, Wisconsin, Missouri, Ohio, and North Dakota, and etc.

102.    Instead, Defendants commenced and implemented their scheme through false advertising to persuade corn growers throughout the United States to sign retainer agreements authorizing individual lawsuits against Syngenta with a 40 percent contingent attorney fee from any recovery.  Farmers were dishonestly told in a barrage of advertisements and community meetings that a *"mass tort ... individual suit"* is better than a class action. Farmers were dishonestly told that *"only those who sign up (with Defendants) are eligible to pursue claims."*

**D.    Town hall meetings, direct mail solicitations, websites, media interviews, joint venture relationships.**

103.    On December 4, 2014, the same day that the federal MDL panel met in

43

Charleston, South Carolina to consider transferring all federal cases to a single district court, and just a week before the December 11, 2014 MDL Order transferring all federal cases to the District Court in Kansas, Defendants began town hall meetings across the Corn Belt to solicit corn growers to pursue their "mass tort …individual suit" scheme with a 40 percent contingent attorney fee.

104.    Defendants also initiated a barrage of websites such as 3DollarCorn.com, CornFarmerLawsuit.com, CornSuits.com, IndianaCornLawsuits.com, IowaCornLawsuit.com, KansasLostCorn.com, LostCornIncome.com, MidwestCornLawsuit.com, NebraskaLostCorn.com, NorthDakotaLostCorn.com and others, touting their "mass tort … individual suit" scheme.

105.    Defendants used farm media advertisements in weekly agricultural industry newspapers and Facebook posts to drive farmers to websites and town hall meetings: *"Sign Up On-Line in 3 Minutes!"*; *"Sign Up before Spring Plant!"*; *"Last chance before Spring Plant!"*; *"Over 13,000 Farmers Strong & Growing*!"; *"We represent over 20,000 Farmers in 44 States in America with local lawyers to serve you! … This is time sensitive – Statute of Limitations vary by state."*.

106.    Defendants engaged select lawyers and law firms as "joint venture partners" to assist in conducting the town hall meetings and soliciting corn growers as clients, with the joint venture partners sharing in the 40 percent contingent fee.

107.    Defendants falsely represented to corn growers through direct mail and

advertisements and town hall meetings that if they did not sign with Defendants, the growers would lose their right to file a claim. Defendants also gave numerous press interviews.

108. The goal was to deceptively tout Defendants' "mass tort … individual suit" scheme as superior to class actions where "lawyers get all the money" and corn growers only get a gift certificate and discounts for seed corn, and thereby mislead growers into signing Defendants' 40 percent contingent fee retainer contract.

109. For example, through LostCornIncome.com and community meetings and direct mailings, Watts Guerra, LLP and joint venture partners, Daniel M. Homolka, P.A., and Hovland and Rasmus, PLLC, aggressively solicited corn growers in Minnesota, North Dakota and South Dakota and other states.

110. In December, 2014 meetings with corn growers throughout Minnesota, Watts was quoted by local media as saying that the "40 percent … fee structure is standard for this type of litigation." This is a statement intended to deceive growers and a fraud by omission. A forty percent fee is an unreasonable fee for a class action or any case of aggregate claims with a huge common fund like Syngenta.

111. In a January 16, 2015 meeting with corn growers, quoted in Agweek, a farm publication disseminated in Minnesota, North Dakota, South Dakota and Montana, and placed on LostCornIncome.com, Defendant James B. Hovland, under the direction and control of the Watts Guerra group, was quoted as saying:

45

Hovland and his colleagues prefer a mass tort case because it would involve more individual firms and corn farmer clients would be handled more individually. He says class action suits can end in getting a 'free bag of seed or some (sale) credit,' while a mass tort can provide 'better recovery for the farmers.'

112.    In a January 17, 2015 meeting, quoted in the Mankato Free Press with the article placed on the LostCornIncome.com website for wide dissemination by Defendants: "[Daniel] Homolka said that if farmers don't file a suit, which costs them nothing, they will most likely *not be included in any eventual settlement.*" (Emphasis added). The statement by Homolka, on behalf of Watts Guerra, is dishonest. Putative class actions were already consolidated in the federal MDL in Kansas, covering essentially all 600,000 corn growers in the United States. Corn growers who listened to Homolka already had effective representation, counsel leading the consolidated class actions, and did not need to do anything at all. Growers certainly did not need to sign Defendants' 40 percent attorney fee retainer agreements.

113.    During a February 2, 2015 meeting of corn growers in Storm Lake, IA, defendant Watts was quoted in the Storm Lake Pilot Tribune as telling the assembled growers (emphasis added):

> He told the growers that they need to sign up for his lawsuit quickly, repeating several times that the statute of limitations would run out. "There is only so much time to file suit," he said.
>
> Some of the farmers asked about the difference between his mass suit and class action. Under class action, Watts told them, *lawyers get all the money* and the *farmers may get a gift certificate.*
>
> He said that those who sign on as plaintiffs in his lawsuit can *choose to opt out* if

46

they do not like whatever may occur, and go ahead suing individually instead.

114.     The statements by Watts are dishonest and a fraud by omission.  Watts never told the assembled group that putative class actions covering essentially all 600,000 corn growers in the United States were consolidated by a federal MDL panel in U.S. District Court in Kansas on December 11, 2014.

115.     Watts dishonestly said that in class actions lawyers get all the money and farmers get gift certificates. In fact, what Watts did not tell the corn growers, was that in class actions with a large common fund, the typical attorney fee and costs assessed from the fund, covering each claim, with the presiding Judge as a fiduciary for the class, are about 10-12 percent. Defendants' "mass tort … individual suit" scheme was intended, from the very beginning, to extract 40 percent of the claim from each grower.

116.     Finally, Watts tells the corn growers that if they sign his 40 percent attorney fee retainer, they will be informed and presented the option to opt-out of a settlement. In fact, through secret Joint Prosecution Agreements with the MDL and Minnesota class counsel, Defendants excluded the growers from the MDL and Minnesota class action proceedings with no notice to the growers and explanation for the exclusion from class action treatment.

117.     In a February 9, 2015 town hall-styled meeting at the Fergus Falls, MN AmericInn, Homolka talked about the Watts Guerra legal actions against Syngenta. Homolka told corn growers that the advantage to filing individual lawsuits in county

courts in Minnesota, where the growers resided, was "a significant advantage" over participating in the class action process in the federal MDL in Kansas. Homolka never explained that the true motivation by Defendants was to sign growers to 40 percent contingent attorney fee agreements, and avoid losing control of the litigation to lead counsel in the Kansas MDL, while collecting an unreasonable 40 percent of each claim in the event of an ultimate settlement.

118.    A flyer mailed to growers in early March, 2015, stated: "Join us next week for a Town Hall Meeting in your area to find out how to recover your loss. *Only those who sign up are eligible to pursue claims.*" (Emphasis added). The flyer does not say, a fraud of omission, that the federal MDL had consolidated putative class actions in the District of Kansas in December, 2014, three months earlier, with claims specifically asserting Minnesota, North Dakota and South Dakota law and covering corn growers in those states.

119.    The 3DollarCorn.com website had a question-and-answer section where Watts Guerra LLP, et al., state:

> We are MDL (Multi-District Litigation) Mass Tort lawyers vs. Class Action lawyers that represent you (as part of the class) without you knowing it. They simply file paper work on behalf of the farmer "Class." Class Action cases are often settled without the knowledge of the clients under terms that seem to work best for the lawyers who bill the case by the hour. Many of these settlements result in clients being offered coupons or pre-paid debit cards in the case of Star-link Settlement. We feel there is a better way.

120.    The statement is misleading. It implies that class actions are unfair to the

clients and only result in coupon settlements. It purports to compare a different case, with different facts, to the Syngenta litigation. It does not inform the consumer that in class actions, attorney fees as a percentage of the common fund, must be approved by the presiding Judge, as a fiduciary for the class. It does not inform corn growers that with individual lawsuits, there is no Judge approving fees or looking out for the best interest of the client.

121.    In another section of the website, a purported news section, Defendants proclaim:

> The lawsuit would not be a class action. Rather, farmers would file individual suits and these cases would then be consolidated into a single civil action, known as a mass tort. A small number of individual cases, considered to be representative of the larger pool of plaintiffs would be selected to potentially go to trial, but odds are slim that any single farmer would be deposed to participate, lawyers said."

122.    The statement is misleading. Defendants misrepresent the nature of consolidated individual claims as opposed to a class action. The statement misrepresents the risk to individual corn growers, who may incur time answering written discovery requests and costs and be required to testify by deposition and at trial. It does not say that with a putative class action underway in federal court in Kansas, growers need not do anything, and need only wait to submit claims if there is a settlement or judgment in the federal class action. With a class action, there is no risk that any growers, other than class representatives, will be deposed or incur costs or be required to testify at a deposition or trial. In fact, Defendants dismissed individual growers who were selected for bell weather

49

trials and did not want to participate.

123. The 3DollarCorn.com website states:

Farmers participating in the lawsuit would pay a contingent fee equal to 40 percent of any judgment awarded, according to Watts. That 40 percent would get divided among the lawyers involved, including local lawyers. Farmers would take the 60 percent and would pay nothing in fees if their lawsuit is unsuccessful, according to Watts. He said the fee structure was standard for this type of litigation."

124. The statement is misleading and a fraud of omission. Defendants do not inform corn growers that putative class actions on behalf of the solicited growers had already been filed and consolidated in the federal MDL in Kansas. The claim that the "40 percent ... fee structure was standard for this type of litigation" is misleading and an effort to extract an unreasonable fee. The standard fee for class action litigation is determined by the Court, as a fiduciary for the class members, and a typical common fund fee assessment with huge common funds, like this Syngenta litigation, may likely be around 10-12 percent.

125. The website states:

This lawsuit is not a class-action case but rather a "mass tort" in which farmers file individual suits. But the cases are consolidated into a single civil action. Mass torts attempt to reduce the number of court cases by taking to court a small number of cases considered to be representative of a larger pool of plaintiffs. ... In this case most of the cases are being consolidated in the federal court in Kansas with one judge overseeing it. ... But Homolka's group is fighting to keep the Minnesota cases consolidated in Minnesota. He (Homolka) argues that because Syngenta's North American headquarters is based in Minnesota, his clients have a legal right to have their cases handled in Minnesota courts. .... *Homolka said that if farmers don't file suit, which costs them nothing, they will most likely not be included in any eventual settlement.* He and his team have been holding town hall meetings

50

around the state to tell farmers about the case."

126.     The statements are misleading. The statements imply that the Syngenta claims are a mass tort and not appropriate for class action treatment, which is false. The statements imply that a "mass tort" is superior to a class action, which is false. The statements imply that a "mass tort" is in the best interest of the corn growers, which is false. The claim that if growers don't sign up with Homolka and Watts, they will lose their claims, when putative class actions are consolidated in the federal MDL covering all of the growers in corn growing states, is false.

127.     The website states: "Our contingency fee arrangement calls for a 60-40 split in the event of a settlement, a standard fee in major litigation." This is a misleading statement and an effort to extract an unreasonable fee from uninformed clients.

128.     The website suggests that the Watts Guerra group is doing corn growers a favor by agreeing to pay for costs out of the 40 percent contingent fee. This is disingenuous, a fraud of omission. The website does not inform growers that a 40 percent contingent fee is an unreasonable fee in huge common fund cases.

129.     In a question-and-answer section of the website is the following (emphasis added):

> Q.     How much does it cost?
>
> A.     The agreement between parties is a contingency fee agreement. It means YOU PAY NOTHING unless we secure a recovery for you. When we do, it is split 60% (farmer) – 40% (lawyer) … you know exactly what you are getting. … We do not believe that enticing

> clients with low percentage deals (25-33% fees) than (sic) charging after the fact for fees out of their control is the right way to do things. The law allows firms to charge *up to 49.9%* once expenses are included. Often in the end a 66% -- 33% deal becomes a 51-49% deal.

130.    The statement is intended to deceive corn growers, through misrepresentations and omissions. The statement says nothing about the fact that in class actions, cases with common facts and law and a common per bushel damage like Syngenta litigation, the fees are determined by the presiding Judge as fiduciary for the class. The statement implies that lawyers who charge 1/3 or less are somehow unethical and not providing full disclosure. The statement implies that corn growers could be charged as much as 49.9 percent of a claim recovery, and this is clearly unreasonable and inconceivable for litigation like Syngenta with common facts and law and huge common fund claim.

131.    Through 3DollarCorn.com and NorthDakotaLostCorn.com and other coordinated websites, and community meetings and direct mailings, Watts Guerra and joint venture partners aggressively solicited corn growers in 2014 and 2015 and into 2017, in North Dakota, South Dakota, Nebraska and other states.

132.    In an August 17, 2015 advertisement in Agweek, the Watts Guerra group boasted, like all its websites, that it had been appointed lead counsel for its Minnesota lawsuits (emphasis in original and added):

> As of Friday, we represent *22,500 farmers* and filed *92% of ALL CASES in the U.S.* We thank (sic) for joining our team.

52

.....
In order to collect damages, Corn Growers, Elevators & Grain Traders need to ... sign up.

133.  Defendants do not explain that there is a pending class action in the federal MDL in Kansas covering essentially all 600,000 corn growers. The 22,500 individual cases filed by the Watts group, the 40 percent contingent fee "mass tort ... individual suit" scheme, are less than four percent of United States corn growers.

134.  Also, Defendants use the advertisement to scare corn growers that "*to collect damages*" they must sign Defendants' retainer agreement and pursue individual lawsuits.  This statement, alone, is false and a fraud of omission.  Corn growers are never informed that they are members of the putative class action in the federal MDL proceeding in Kansas.

135.  In similar October 5, October 19, October 26, November 2 and November 9 media advertisements in Agweek, Defendants state: "There is No Cost & No Risk to you but *you must sign up to file your claim!*" (Emphasis added). The statements are dishonest and a fraud of omission because, of course, all 600,000 corn growers are members of the putative class action underway in the federal MDL proceeding in Kansas.  There is no requirement that any grower sign up with the Watts Guerra group to pursue a claim. Class members can simply wait until there is a settlement and submit a claim to the Claim Administration Firm approved by the presiding court, as a fiduciary for the class.

136.  In a direct mail solicitation letter sent to corn growers throughout the

Midwest in the summer of 2016, Defendant Dewald Deaver stated (emphasis added).

> We are filing individual claims for farmers (referred to as mass tort actions) rather than class action lawsuits.  We anticipate that the attorneys filing the class action lawsuits will request the Court to certify their class by this Fall. If the class action lawsuits are certified by the Court, the Court may bar the filing of additional individual mass tort claims. *The only way to ensure that you will be able to file an individual mass tort claim is to sign up before the class action lawsuits become certified.* We would encourage you to review these materials, call us with any questions, and sign up before it is too late."

137.    The statement acknowledges that all individual lawsuits will become part of the federal MDL and Minnesota class in the event of class certification, and thereby overseen by the presiding courts as fiduciaries for the class members. What the statement does not disclose, a fraud of omission, is that Watts Guerra and its joint venture partners have entered into secret Joint Prosecution Agreements with the class counsel that *exclude all the individual lawsuits* filed by the Watts Guerra group and its joint venture partners, with 40 percent contingent free retainer agreements, from class membership.

138.    In other words, the Watts group throughout 2015 and 2016 deceptively solicited corn growers for individual lawsuits, knowing that they had already excluded growers who replied to their solicitations and signed 40 percent contingent fee retainer contracts, from the federal MDL and Minnesota class actions with judicial oversight over fee awards.

139.    The letter solicitation also states that there is no risk to corn growers who sign up for a 40 percent retainer:  "We will **NOT** take any costs out of your 60% share. This is far different from the class action route and far different than other contracts that

54

charge the farmer all or most of the costs of the lawsuit." This statement is a fraud by

omission because it does not disclose that for corn growers in a class action, with perhaps

600,000 class members like the Syngenta case, the costs assessed as part of the common

fund for class counsel are minimal. The statement is misleading because it suggests

growers are getting a great deal with a 40 percent contingent fee, when in fact they are

being scammed, with attorney fees in the class action likely to be assessed at no more

than 10-12 percent of the common fund; that is, 10-12 percent of each grower's claim.

140.    The 3DollarCorn.com website has an article, authored by Watts, stating:

> Mass Action vs. Class Action Lawsuits …. Currently, many law firms are seeking
> class action lawsuits against Syngenta. Unfortunately, class action cases usually
> result in outrageous fees for the attorneys pursuing them, while farmers and those
> directly impacted by Syngenta's actions will only receive a nominal award. Unlike
> a class action suit, a mass action lawsuit can give farmers the representation and
> compensation they deserve, ensuring compensation is awarded based on actual
> damages as a result of Syngenta's commercialization of unapproved traits. Unlike
> a class action suit, a mass action will not be settled without your decision to opt-in
> to the proposed settlement.

141.    The claim that class actions result in "outrageous" attorney fees is

untruthful. In class actions, attorney fee awards are approved by the presiding Judge as a

fiduciary for the class, after notice and a right by class members to object to the proposed

fee award.

142.    In a July 5, 2015 post on the website Watts purports to inform prospective

clients why most lawsuits against Syngenta are filed in Minnesota state courts, rather than

in federal courts. Watts asserts that cases proceed faster in Minnesota, and trial rules are

more favorable to plaintiffs. Whether or not this is true, Watts never acknowledges that his law firm had signed a secret Joint Prosecution Agreement with the federal MDL class counsel and Minnesota class counsel to exclude the 60,000 Watts Guerra clients as members of certified classes.

143.    In a July 5, 2015 post, Watts authored an article explaining why his "mass action" individual lawsuit method is superior to a class action. Says Watts (emphasis added):

> The basic difference between class action cases and mass action cases is that the rules are different. Class actions may be initiated by an out-of-state lawyer having only one client (or only just a few), who will file suit on behalf of every corn farmer in the state – even though that lawyer will never even ask you whether you want to be represented. Instead, a class action lawyer need only have his or her case certified as a class action.

> Once certified, the class counsel may negotiate a settlement with the Defendant, and may do so without your written permission. Instead, they need merely to give written public notice as ordered by the Court, usually on three occasions. As the joke goes, this class notice is often placed on page D-27 of the paper – in between the funeral pronouncements and the funny pages where no one is looking – with print so small that if class members don't have their magnifying glasses with them, they will never know that they need to object in order to stop the settlement.

> Some past class actions have been criticized when lawyers receive millions of dollars in fees, while the "clients" receive only coupons. Stories are legion of class members, who had no real idea previously that a lawsuit had been filed on their behalf, opening their mail to find a letter informing them that "their case had been settled," and that if they fill out a form, they are eligible to recover $3.38 cents, or mere pocket change. Fine print in the notice also points out that the lawyers will be paid millions of dollars. In the past, coupons have been offered for future purchases from the Defendant that both sides know will never be redeemed; nevertheless, these coupons have served as the basis for the "value" of the settlement, upon which huge attorneys' fees are calculated. Of course, the obvious critical critique of this situation is that the *financial interests of the attorney have*

*deviated from those of his class clients.* As such, some have argued that allowing the individual plaintiffs to pursue their claims with lawyers they have chosen themselves, and agreed to compensate based on a contingency fee – where the lawyer gets paid only a percentage of the actual dollars recovered by the plaintiff – is the superior way to go.

144.    The statement is dishonest and a fraud of omission. Watts does not tell the corn growers that his 40 percent contingent fee contracts greatly exceed the fees that may be assessed by the Judge in the MDL class action proceedings, as a fiduciary for the class. Watts does not tell his prospective clients that his firm has signed a secret Joint Prosecution Agreement to exclude clients who sign his 40 percent retainers from class treatment without their knowledge.

145.    In a July 5, 2015 post Watts states:

[A]t the very beginning, the client should ask, "What percentage of my recovery will I have to pay for legal fees and expenses?" The standard contingency fee is 40% of the recovery, but some lawyers require the farmer to repay the litigation expenses out of the client's share of the recovery. What seems like a 60-40 deal, becomes something much worse than that for the client, as the client's share is eaten away by the repayment of significant litigation expenses. In our contracts, we make clear that the client is guaranteed a sixty-percent (60%) of the total recovery, with expenses being repaid from our 40% of the total recovery.

146.    The statement is misleading and a fraud of omission. The expenses of a class action with 600,000 claimants, in the context of a huge common fund, are not significant, and must be approved by a Judge presiding over a class action, as a fiduciary for the class. Watts leads unsuspecting growers to believe they are getting a great deal, when he is luring them into an unconscionable 40 percent fee agreement, when they could have no risk and only pay perhaps 10-12 percent of their claim for fees in the MDL

57

class action. Watts is the massage therapist who stealthily lifts the client's wallet while giving the massage.

147. A July 5, 2015 post by Watts discusses when Syngenta cases will settle and how this relates to Statute of Limitation concerns:

> U.S. corn farmers must file their cases against Syngenta before their particular state's statute of limitations distinguishes unfiled claims. ... it will be in Syngenta's best interest to wait until the statute of limitations in       major corn producing states have expired (to settle). ... There are over 440,000 corn farmers in the United States, growing corn on more than 88       million acres of farmland. Every statute of limitation that expires means that Syngenta will not have to pay the farmers who have failed to timely file their claims. Consequently, defendants in major mass tort litigations typically wait until the statute of limitations in major states have expired so that they may put a fence around their total liability, ...

148. A July 5, 2015 post on 3DollarCorn.com by Watts states in bold: **"If the suit is not filed by the time the statute of limitations runs, the lawsuit may not be brought at all."** Watts then explains that twenty states produce almost 99% of the corn grown in the United States, and Watts discussed the various state statutes of limitation that may apply, including one, two and three-year limitations. Another July 5, 2015 post by Watts states in bold: **"It is anticipated that before the various corn producing states' statutes of limitations extinguish untimely claims, more than 100,000 farmers, landlords and grain elevators will have filed timely suit against Syngenta."**

149. The statements are intended by Watts to scare corn growers into quickly signing up, online, to be a Watts Guerra client. Watts does not inform prospective clients that a class action against Syngenta is underway in the MDL in Kansas, with claims in

58

the master complaint covering essentially all 600,000 growers in the United States. In *American Pipe and Construction Company v. Utah*, 414 U.S. 538 (1974), the Supreme Court held that the statute of limitations on a claim is generally tolled for members of the putative class from the filing of the class action complaint until the denial of class certification, so Watt's professed concern over state statutes of limitation as an exhortation to sign up with Watts Guerra and its joint venture partners, at a 40 percent contingent fee, is misleading and a fraud of omission.

150. An August 5, 2015 post proclaims that "The Watts Guerra Team of Attorneys Are LEAD COUNSEL." The post claims that the Minnesota state court oversees "90 percent of the claims in the nation" when in fact the opposite is true. Although 90 percent of the individual lawsuits against Syngenta were filed in Minnesota by Defendants, these 60,000 lawsuits are only 10 percent of the 600,000 corn growers in the United States, all covered under the federal MDL in Kansas and a Minnesota class action for Minnesota residents.

151. A September 4, 2015 website post, purports to explain why "mass action" suits are superior to "class action" suits:

- Class Actions May be initiated by an Out-of-State Lawyer Having Only One Client (or Only Just a Few), who will file Suit on Behalf of Every Corn Grower in the State – Even Though That Lawyer will Never Ask you Whether You Want to be Represented.
- Class Action Lawyers May Settle Your Case Without Your Written Permission; Instead, They Need Merely to Give Written Public Notice on Three Occasions.
- Some Past Class Actions Have Been Criticized When Lawyers Receive

59

Millions of Dollars in Fees, While the "Clients" Receive Only Coupons.

- Based on Precedent in the GMO Rice case, if the class action is not certified, thousands of individual farmers with their own lawyers will then be free to pursue their claims against Syngenta.

152.    The statement is misleading and a fraud by omission. It misinforms corn growers about the procedural operation of a class action, suggesting that growers who do not file claims have no choice as to whether or not they have the right to participate in the class, assuming it is certified, through opt-out procedures.

153.    The statement that class action lawyers may settle a case without permission is misleading. A settlement occurs only after class notice with a right to object, and approval by the presiding Judge, a fiduciary for the absent class member, who makes a determination about the reasonableness of the settlement.

154.    The criticism of class actions, suggesting they are a cash cow for lawyers with clients receiving only coupons, is misleading. The irony is that Defendants ran a massive fraud scheme against United States' corn growers, an attempt to exploit growers for a 40 percent attorney fee, while never informing growers that a reasonable fee in a class action settlement with a common fund exceeding $1 billion may be no more than 10-12 percent of the common fund.

155.    An August 31, 2015 post on 3DollarCorn.com discusses the need to keep corn growers informed: "How Will We Keep You Informed of What Is Going On With Your Syngenta GMO Corn Lawsuit? The post is untruthful and a fraud by omission. Defendants never informed growers that they were effectively represented by class

60

counsel in the consolidated federal MDL class action in Kansas. Nor were growers who had signed Defendants' 40 percent contingent fee retainers informed of Defendants' decision to exclude all 60,000 of their individual clients from the federal MDL and Minnesota class actions.

156. An August 31 post discusses Defendants' process for keeping corn growers informed, through status updates and documents loaded onto its solicitation websites like LostCornIncome.com and 3DollarCorn.com. And yet, Defendants never discussed nor loaded the secret Joint Prosecution Agreements onto its websites; the secret agreements with class counsel in the federal MDL filed under seal, automatically excluding Defendants' clients from the class proceedings and agreeing to pay 5.5 percent of an individual grower claim recovery as a contribution for a common fund fee and costs assessment to MDL class counsel and 5.5 percent to Minnesota class counsel.

157. An August 31, 2015 post by Watts purports to answer the question: "When Will the GMO Corn Lawsuits Against Syngenta Be Settled? The post exhorts prospective clients who have not yet signed retainer agreements with the Watts Guerra group, that statutes of limitation may run against growers, preventing their claims: "U.S. corn growers must file their cases against Syngenta before their particular state's statute of limitations distinguishes unfiled claims." This scare tactic is dishonest and a fraud by omission. The pending class actions in the federal MDL in Kansas covered all 600,000 U.S. corn growers and there was no reasonable basis for a concern that statutes of

61

limitation would prevent the filing of claims against Syngenta. The post also asserts that Syngenta is waiting for the statutes of limitation to run in corn growing states to limit the pool of prospective claimants. This is dishonest. The class actions already cover all 600,000 corn growers, and Syngenta, like Watts Guerra and its joint venture partners, know this. Of course, the growers don't know this, so Watts attempts, in August of 2015, nine months after class actions covering United States corn growers were consolidated in the federal MDL in Kansas, to play the statutes of limitation as a scare card to lure more growers into his attorney fee fraud scheme.

158.    An August 31, 2015 post by Watts boasts that 90 percent of the Syngenta lawsuits have been filed in Minnesota and the Watts Guerra firm is lead counsel for that group:

> Over 90% of the Syngenta claims in the nation were filed in state court in Minnesota, and 10% of the claims have been filed in federal court in Kansas City, Kansas.

159.    This boast is misleading and a fraud by omission. Although 90 percent of the individual lawsuits against Syngenta were filed in Minnesota by Defendants, these 60,000 lawsuits are only 10 percent of the 600,000 corn growers in the United States, all covered under the federal MDL in Kansas and a Minnesota class action for Minnesota residents.

160.    A September 4, 2015 post expounds on how Watts Guerra has kept corn growers informed, boasting that "we have given numerous press interviews and posted

many information articles on the internet in an effort to fully inform corn growers of their rights … ." Defendants do not inform the solicited growers that they are putative members of the MDL and Minnesota class actions. Defendants do not inform growers that class action counsel in the federal MDL in Kansas have the lead role in litigating growers' claims. Defendants do not inform growers that a common fund fee assessment, in the event of a recovery by settlement, may be perhaps 10-12 percent of the common fund, whereas Defendants exploit growers for a 40 percent contingent fee. Defendants do not inform growers that they excluded all 60,000 of their clients from the class actions in the federal MDL and Minnesota, so that Defendants could attempt to collect a 40 percent contingent fee from each individual claim, without the oversight of the courts.

161.    A September 4, 2015 post purports to answer the question as to why so many corn growers hired the Watts Guerra group: "How Did So Many Farmers Hire Your Law Firm to File Their GMO Corn Lawsuit Against Syngenta? The suggestion in the response is that Watts Guerra and its joint venture partners are knowledgeable and superior lawyers. What the post disingenuously does not explain, is that Watts Guerra and its joint venture partners blanketed the media and conducted hundreds of meetings across the corn belt, through the implementation of a massive attorney fee fraud scheme. The intent was to target corn growers, who were already members of a putative federal MDL class action in Kansas, by soliciting growers to a "mass tort … individual suit" fraud scheme, with growers dishonestly told that "only those who sign up (with

63

Defendants) are eligible to pursue claims."

162.    A September 11, 2015 post on 3DollarCorn.com by Jon Givens and Givens Law, LLC, an attorney associated with Watts Guerra, LLP and a joint venture partner, boasts that the Watts Guerra group has filed 90 percent of the Syngenta claims across the United States, with the balance of the claims, 10 percent, consolidated in the federal MDL in Kansas. Givens thereby suggests that the Watts Guerra group is leading the charge against Syngenta. The Givens post does not explain that there are 600,000 corn growers in the United States effectively covered by the federal MDL class action and Minnesota class action for Minnesota residents, and the 60,000 "mass tort … individual suits" filed by the Watts Guerra group in state courts in Minnesota are just 10 percent of the corn growers in the United States.

163.    Corn gowers were told, again and again, that a "mass tort … individual suit" is better than a class action, because class actions only recover coupons for plaintiffs. Said Bill Enyart, a member of the Watts Guerra law firm to a meeting of growers in Champaign, Ill. on September 23, 2015, reported in The News-Gazette (emphasis added):

> Additionally, the firm is filing suits in Minnesota, where Syngenta Seeds is located, as opposed to filing in a federal court. …. Enyart said the advantage to this was that *instead of getting a discount for seed corn* in the future, *as in a class-action case*, there would be a gross settlement fee and the firm would simply send the farmer a check.

164.    The statement is misleading and a fraud of omission. There is no basis in

law or fact for Watts Guerra to tell corn growers that a class action only recovers a

discount for future purchases of seed corn, whereas a "mass tort … individual suit"

handled by Watts Guerra puts a big check into the producer's hand.

165.    A September 30, 2015 post by Givens on 3DollarCorn.com purports to

explain how prospective clients should compare retainer agreements from different law

firms. Givens acknowledges that the federal MDL and the Minnesota courts have

approved, as a prospective fee, an award of 11 percent – 8 percent for fees and 3 percent

for costs. This sum is paid to lead counsel by any lawyer submitting a claim:

> Let's assume the facts for an example:  assume the fee agreement says the lawyer
> is charging his costs to your share and then charging you a 30% fee based on the
> net (with net defined as net of court ordered or MDL fees and expenses). In this
> example 11% would come out of your claim for MDL expenses leaving your net
> recovery of 89% of your claim. Next the lawyer takes his costs out of your claim
> (which will be your share of expenses the lawyer spends). Finally, the lawyer will
> take 30% of what remains for himself, leaving you an apple that has been bitten 3
> times already. Thus what looks like a bargain of a 30% legal fee might actually be
> a worse deal than a 40% legal fee where the lawyer assumes all those expenses
> and unknown costs and risks.

166.    Defendants' hypothetical is a misleading effort to scare the prospective

client into believing other firms will rip the client off, while Watts Guerra is protecting

the client. In fact, if there was a two-prong settlement, as attempted by Defendants

through the September 25, 2017 settlement term sheet, with a class action settlement and

a separate settlement for Defendants' 60,000 individual lawsuits, members of the class

may be charged 10 percent of their claim toward attorneys' fees, whereas Defendants

would attempt to charge Farmers – in a Texas county court with no previous connection

to the litigation – the 40 percent contingent fee set forth in the retainer contracts.

167. A September 30, 2015 post on 3DollarCorn.com purports to advise corn growers how to choose their attorney:

- Will MDL (Multi District Litigation) expenses or other hidden fees be charged to my claim?
- Will I have an individual claim or be part of some class were I have no choice?
- Will you file my claim in a State Court like ADM and Cargill, or stick me in federal court?
- Will your expenses come out of my share?

168. The statement is misleading and a fraud by omission. Defendants suggest that a federal MDL proceeding has hidden expenses charged to consumer claims. In fact, the presiding Judge in the MDL class action is a fiduciary for the class, and class counsel must submit fee and expense applications that are approved by the Judge, with published notice to class members. There are no "hidden" expenses. In any event, the expenses, spread over 600,000 corn growers across the United States, are minimal and vastly smaller than the unreasonable 40 percent attorney fee scheme by Defendants.

169. Farmers did not have an informed "choice" when Defendants signed secret Joint Prosecution Agreements with class counsel in the MDL and Minnesota to exclude Farmers from the class action lawsuits, so that Defendants could pursue their attempt to collect an unreasonable 40 percent contingent fee from each Farmer.

170. The suggestion that corn growers should file individual claims, because major world corporations, ADM and Cargill filed individual claims, is intended to

66

mislead growers. One cannot compare a claim by a grower with 200 acres of corn to a claim by Cargill, the largest private corporation in the world.

171.   The suggestion that it is improper for attorneys to take expenses out of the client's share is misleading. Defendants do not inform corn growers that their attempted 40 percent contingent fee will hugely exceed the fees and expenses paid by members of the class action proceedings.

172.   An October 1, 2015 post states (emphasis in original):

**Why Would You Not Sign Up?**  At the town hall meetings, the most commonly asked question by corn producers is some version of: "Why wouldn't you sign up?"; "This is a 'no brainer" isn't it?" "Why on earth would somebody not sign up?"; or "Is there any reason to not sign up?" On occasion the question is asked with colorful adjectives  Most growers who bother to educate themselves about filing a claim against Syngenta for wrecking the corn market price, whether by reading or attending a meeting, reach the conclusion that they should, in fact, file a claim to recover their corn price losses for 2013, 2014 and 2015 caused by Syngenta. ADM and Cargill filed claims against Syngenta for wrecking the corn market. Farmers, who look into how they can recover their losses, frequently decide to make the same decision as ADM and Cargill and file a claim. Additionally many elevators and co-ops have made the no-risk decision to file a claim. As of September 15, 2015, the Watts Guerra LLP firm represents over 30,000 corn growers and around 4,000 of those corn growers live in Nebraska. Tens of thousands of farmers have decided to hire our firm on a contingency fee basis. This means if there is no recovery, there is no fee owed to our firm, Watts Guerra LLP and their local Nebraska co-counsel are not owed anything by growers unless a recovery is made for the grower. If nothing is recovered for a particular farmer then that client owes the firm nothing, not one dime.  However, there is real upside potential. …

173.   The statement is misleading and a fraud by omission. The statement does not honestly advise corn growers that, with class actions pending in a federal MDL and Minnesota, they do not need to do anything, and thereby incur no risk. The statement

does not disclose that growers will be charged grotesquely higher fees than those growers who did not retain Defendants.

174. A July 1, 2016 **Update of Claim Status** by Watts on 3DollarCorn.com acknowledges, for the first time:

> There is a motion in the Federal case to certify a class. This motion was filed June 15, 2016. We are not doing a class action but filing individual claims, as we don't want another Starlink matter. We represent over 50,000 growers who have elected to not be in a class action, but instead to file individual claims.

175. The statement is misleading and a fraud of omission. Watts disparages class actions by comparing Syngenta to Starlink, a different case with different facts. Watts does not explain that the 60,000 individual clients of Watts Guerra were putative members of the class actions in federal court. Watts does not acknowledge that there was also a motion for class certification filed in the Hennepin County proceedings in Minnesota on June 15, 2016, covering Minnesota corn growers, and this also covers the Watts Guerra clients who are Minnesota residents. Watts does not explain that putative class members are and remain class members unless they affirmatively opt-out of the class proceedings. Watts did not inform his 60,000 clients and prospective clients that he entered into secret Joint Prosecution Agreements with the class counsel in the federal MDL and Minnesota to exclude his 60,000 clients as class members. Watts did not inform his 60,000 clients and prospective clients, that his attempted 40 percent contingent attorney fee would exceed the fees that may be assessed for claims in the class actions in federal and state court.

68

176. In a July 2, 2016 news update, Watts writes that a Special Master has been appointed in the federal MDL litigation in Kansas and the Minnesota proceedings: "Since settlement discussions are underway, it is important for any corn, soybean and milo growers who want to participate in the settlement, to sign up (with Watts Guerra, LLP) as soon as possible, so they don't get left out."

177. The statement is dishonest and a fraud of omission. Watts does not inform his 60,000 clients and prospective clients that the settlement discussions involve all corn growers as a global settlement. All growers are covered through the class actions underway in the federal MDL in Kansas and Minnesota. The idea that growers have to quickly rush to sign with Watts Guerra and joint venture partners, to have a seat at the settlement table, is dishonest, an effort by Watts Guerra and its joint venture partners to exploit corn growers to sign unreasonable 40 percent contingent fee agreements.

178. Despite pending motions for class certification in the federal MDL and the Minnesota state court, Defendants continued to solicit farmers on-line and in community meetings for their "mass tort … individual suit" attorney fee fraud scheme. From MidwestCornLawsuit.com on August 8, 2016, was this (emphasis added):

> MN Judge extends deadline til (sic) December 11, 2016. *It's not too late to sign up.*

> Join the more than 50,000 corn farmers who have stood up to Syngenta and their reckless business practices. If you grew corn in 2013, 2014 or 2015 you lost income due to Syngenta's careless actions

> It's Time To Hold Syngenta Accountable (with direction for the farmer to contact

69

Watts Guerra and sign a retainer agreement with Watts Guerra and joint venture partners).

179. The solicitation is misleading and a fraud of omission. The statement suggests the only claims claims against Syngenta are the 60,000 claims filed by the Watts Guerra group, and makes no mention that all 600,000 corn growers across the United States, including the targeted and still unsigned growers, are class members in the federal MDL and Minnesota class actions.

180. Despite certification of a nationwide class of corn growers and nine state bellwether classes by the federal MDL Court on September 26, 2016 and the Minnesota court for Minnesota growers on November 3, 2016. Defendants continued to solicit corn growers across the Corn Belt with illusory deadlines and other misleading solicitations through direct mailings and on coordinated websites. Defendants exhorted growers on December 8, 2016 on their 3DollarCorn.com website:

> Please Call Us or Explore our Website to Learn Why Thousands of Farmers have Filed Individual Claims Against Syngenta for Destabilizing the Corn Markets. We Are Here To Help You! To date over 54,000 farmers have filed claims with our team.

The website does not inform growers that they are putative members of a certified class of growers. Rather, the website exhorts growers who are "ready to make the no risk decision to file a claim" that they should fill out the on-line application and retainer agreement.

181. In a direct mailing to corn growers in early 2017, Defendants proclaimed:

70

OUR EXPERTS WILL TESTIFY TO $1.90 PER BUSHEL IN DAMAGES
DEADLINE TO SIGN UP IS JANUARY 25, 2017

Defendants sent this misleading solicitation after class certification, while litigating the

consolidated individual cases in Minnesota through a Joint Prosecution Agreement with

lead counsel in the federal MDL "because we believe [individual claims] will yield a

much better recovery for farmers." Defendants' letter does not inform the grower that the

damage experts were retained by the MDL class counsel. Defendants' letter does not

inform the grower that two experts attest to damages of 48.69 cents a bushel and 40.90

cents a bushel for corn growers across the United States, covering a five-year period from

2013-18. Defendants' dishonest communication was intended to excite corn growers to

the possibility of a significant damage claim, and thereby sign Defendants' individual 40

percent attorney fee contracts, despite the pending MDL class actions. And Defendants

continue to exhort growers that individual claims are superior to a class action.

Defendants do not explain the benefits of class proceedings, where attorney fees are

assessed after notice to the class and consideration of objections by absent class

members.

182.    On 3DollarCorn.com and other websites on February 22, 2017, Defendants

continued to exhort corn growers:

> Sometime in March 2017 will be the final opportunity to file an individual claim
> with our firm. Watts Guerra will stop taking any new grower clients by the end of
> March 2017. Your opportunity to have an individual claim with us is ending.
> While our firm represents over 50,000 growers with individual claims … there are
> also some lawyers representing a class action. *Our clients who were signed up by*

71

*June 15, 2016, are automatically excluded from being in the class. You can either have a class claim or an individual claim but not both.* Any grower who meets the class definition (grew corn but not a Syngenta seed) will automatically become a member of a class and prevented from having an individual negligence claim like the over 60,000 other corn growers who chose to file an individual claim. ....

183.    Defendants' misleading website again provides no analysis of the benefits of a corn grower remaining in the class, and simply filing a claim with the claim administration firm in the event of settlement or recovery. The communication misleads growers that Defendants' "mass tort ... individual suit" approach will get a better result. Nowhere do Defendants disclose or discuss their Joint Prosecution Agreements with federal MDL and Minnesota class counsel.

184.    In the Syngenta MDL settlement proceedings in Kansas, Watts submitted a Declaration of Mikal C. Watts In Support Of The Fee And Expense Application By Watts Guerra attesting that Watts Guerra lawyers attended 1068 "Town Halls" with corn growers in 25 states, with Watts personally attending 660 meetings, selling his "mass tort ... individual suit" scheme. The Kansas Common Fund Group, the class action lawyers for the Syngenta MDL, explained to the Syngenta MDL that while they were working on the Syngenta litigation, the Watts Guerra group was doing a tour of the Farm Belt to sign up clients to their "mass tort ... individual suit" scheme. The misinformation campaign was the same at every stop, and all of Defendants' 60,000 clients received the same spiel.

185.    Daniel M. Homolka, a Minnesota lawyer working with Watts Guerra LLP as a joint venture partner, submitted a Declaration attesting:

Daniel M. Homolka P.A. organized more than 1,250 [town hall] meetings and I personally conducted and/or participated in more than 400 meetings at locations in Alabama, Colorado, Indiana, Illinois, Iowa, Kansas, Kentucky, Minnesota, Missouri, Nebraska, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas, and Wisconsin. In addition, I attended and provided support to approximately 75 meetings led by Mr. Watts. During the course of this litigation, through the [town hall] programs or otherwise, I have met in person with at least 30,000 of the joint venture's farmer clients.

186.    For purposes of class certification, to be clear, this means that at least 30,000 of Defendants' 60,000 clients, personally received Defendants' "mass tort … individual suit" attorney fee fraud scheme solicitation from Homolka.

187.    Defendants always understood their "mass tort … individual suit" ploy was unlawful. Upon, Defendants exchanged emails, long before the *Kellogg* lawsuit was filed on April 24, 2018, acknowledging that Farmers were victimized by Defendants' fraudulent scheme.

188.    Defendants' "mass tort … individual suit' scheme is exemplified in videos posted by Defendants on-line. In a May 14, 2015 video posted for lostcornincome.com. https://www.youtube.com/watch?v=Fl6-QxikCtQ, a scroll across the screen warns corn growers:

> *Alert*: Statutes of limitation vary by state … sign up now to ensure your case is filed in time … only those who sign up will be eligible to participate in this mass tort action … sign up at lostcornincome.com.

The video never mentions the class action proceedings underway in the Syngenta MDL in Kansas, or that corn growers targeted by the videos are putative class members of those proceedings and already represented by class counsel in Kansas, and do not need to

73

retain a lawyer. Watts disparages class actions, misinforming viewers that "a lot of these class action lawyers run off with all the money and coupons are involved … settlement for a bag of seed." Watts does not tell the viewer that he has entered into agreements to automatically opt-out of the Syngenta MDL any corn grower who signs his 40 percent contingent fee retainer contract.

189.    Another video directs Iowa and South Dakota and Nebraska growers to NebraskaLostCorn.com and referral counsel Dewald Deaver, P.C., LLO, a named Defendant in this case: https://www.youtube.com/watch?v=lIUfXrLL2Ng  The presentation is conducted by Watts and never discusses the consolidated class action proceedings in the MDL in Kansas and the fact that every intended viewer is a putative class member represented by class counsel in the MDL. One of the attendee growers asks about the nature of a "mass tort." Watts uses the Starlink corn litigation, a different case with different facts, to misinform the grower that class actions only give plaintiffs a coupon or sack of seed corn. "I am not a class action lawyer" proclaims Watts, saying that he has "the juice" to put money into growers' pockets.

**E.    60,000 individual lawsuits filed in Minnesota state courts.**

190.    In early 2015 Defendants began aggressively filing hundreds of individual Farmer lawsuits against Syngenta in district courts in Minnesota. Syngenta removed each case to the federal MDL proceeding in Kansas. Syngenta claimed that the Minnesota state court lawsuits presented a federal question under the federal common law of foreign

74

relations because of China's right to regulate genetically modified crops within its borders.

191.    Defendants successfully opposed removal to the MDL, with Judge Lungstrom concluding that federal common law of foreign relations did not apply. In opposing removal, Defendants claimed to the media that the attempted removal by Syngenta was "a blatant attempt to shoehorn [Farmers] into litigating [their individual claims] in an MDL format that is more convenient for Syngenta." Although Syngenta surely wanted to litigate all claims in a single forum, Defendants' media claim was disingenuous. They did not disclose that they fought removal so they could proceed with their "mass tort … individual suit" 40 percent attorney fee gambit, rather than having Farmers participate in the class action proceedings in the federal MDL with much lower attorney fees and costs assessed against each Farmers' claim in the event of a recovery.

192.    Defendants asserted in each individual memorandum opposing removal that their client "does not have the time or resources to litigate" the case in Kansas federal court, and the decision to pursue only state claims was intentional. And yet, after remand, Defendants entered into secret Joint Prosecution Agreements with the class counsel in the MDL in Kansas and Minnesota, with an explicit agreement to exclude the 60,000 Farmers from class certification proceedings. Defendants sought automatic exclusion for Farmers from the class so that if the classes were certified, they would not have to disclose class membership to Farmers and affirmatively opt Farmers out of the class, and

thereby have to explain to each client the pros and cons of class membership as opposed to an individual action.

193. Although Defendants repetitively boast through their solicitations that their "mass tort … individual suit" model is superior to class actions, they used the secret Joint Prosecution Agreements with the federal MDL counsel, never disclosed to Farmers and never approved by the respective courts and filed under seal, to cooperatively litigate the cases. Defendants acknowledge this cooperative litigation effort in a December 1, 2015 update of the litigation status to Farmers, when Frank Guerra writes:

> "The Plaintiffs' Steering Committee in Minnesota, led by Frank Guerra, and three other co-lead counsel from Minneapolis – Lew Remele, Dan Gustafson and Bill Sieben is working together with co-leads from the federal court MDL to schedule discovery in an expeditious manner, and to share work product in order to prosecute the cases of our clients in the most efficient manner possible."

194. Defendants thereby acknowledge their "mass tort … individual suit" advertising solicitations were a scam. Defendants consolidated individual lawsuits in Minnesota were cooperatively litigated with counsel in the federal MDL, with the MDL counsel taking the lead role in exchange for a 5.5 percent common benefit fee payment by Defendants in the event of a recovery for corn growers. Syngenta likewise litigated the MDL and Minnesota class action and Defendants' consolidated individual claims as the same essential proceeding. With the class actions and consolidated cases litigated as the same proceeding, Defendants' claim to Farmers that their individual suits would achieve a better result than the MDL class action was always misleading.

76

195.    Defendants' litigation status updates, like all client communications, were a fraud of omission. Defendants did not inform Farmers that class certification proceedings were underway in the federal MDL and Minnesota. Defendants did not inform Farmers that they were putative class members in the MDL when their individual cases were filed in Minnesota state courts. Defendants did not inform Farmers they had entered into Joint Prosecution Agreements with MDL class counsel to exclude Defendants' 60,000 individual clients from class certification proceedings. Defendants sold away the Farmers' right to participate in a class action resolution, with no knowledge and informed consent and no consideration for Farmers.

**F.      Joint prosecution agreements to exclude 60,000 Farmers from class actions in federal MDL in Kansas and Minnesota without the Farmers' knowledge and informed consent.**

196.    Filing and litigating an individual case is not enough to opt out of a class action. A party who wants to opt-out needs to follow the specific procedures set by the court in an order certifying the class or approving a class settlement. Fed. R. Civ. P. 23; Minn. R. Civ. P. 23. Knowing this, Defendants contrived a scheme to exclude their 60,000 clients, with lawsuits filed in Minnesota, from class certification proceedings in the MDL and Minnesota.

197.    It would be awkward for Defendants to have to communicate with each of their individual clients, to get the corn growers' signatures to opt-out of a certified class, after spending months telling growers that their "mass tort ... individual suit" model was

77

superior to a class action. It would be awkward for Defendants to explain to their clients that the class action counsel in the MDL in Kansas had the lead role in litigating the Syngenta lawsuits, after months of telling growers that class action counsel are ineffective and inefficient. It would be awkward for Defendants to explain to their clients that in a class action, attorney fee awards for huge common fund cases like Syngenta are typically 10-12 percent of the common fund, as opposed to the 40 percent contingent fee attempted by Defendants through their "mass tort ... individual suit" advertising con.

### 1. Joint Prosecution Agreement

198. Defendants thus concocted a scheme to buy their 60,000 clients out of the class certification proceedings – a pay-for-exclusion scheme – through an agreement to not contest class certification in the MDL and pay the MDL counsel some portion of a common benefit fee, if the MDL counsel agreed to exclude the 60,000 Watts Guerra clients from class certification and notice requirements, with no need for each class member to affirmatively opt-out of the class to continue to proceed as an individual claim. Defendants accomplished this scheme through a secret Joint Prosecution Agreement with the MDL class counsel, filed under seal, with the opt-out provision never discussed or disclosed to Farmers, the Watts Guerra clients. This is an epic fraud of omission; a violation of Defendants' fiduciary duties of disclosure to Farmers; a violation of Rule 23 requirements to provide informed notice to putative class members with a right to opt-out through their own signatures, thus signifying informed consent to the

presiding court; and a breach of professional ethics rules requiring that clients be reasonably informed of all litigation options and consent to those options.

199.    Of the 600,000 corn growers in the United States, the overwhelming majority of all individually filed cases, about 90 percent of the individual cases, were the 60,000 cases filed by Defendants in Minnesota. *See* Coordination Order, *In Re: Syngenta AG MIR162 Corn Litigation*, No. 14-MD-2591 Doc. No. 1099 at 1. Defendants entered into a private side-deal with federal MDL class counsel to opt-out of the MDL class action upon certification. *See* Amended and Restated Joint Prosecution Agreements, dated June 18, 2015 ("JPA") (stating individual growers whose counsel executed the JPA are excluded from any MDL class):

200.    The JPA states:

None of the Federal MDL Co-Leads will propose to certify any litigation or settlement class that includes any [Watts Guerra group clients] whose Syngenta Case was filed in State Court and is pending as of the date of such motion for class certification and whose name is included on the Excluded Client List as of the date of such motion for class certification (the "Excluded Clients"); if any of the Federal MDL Co-Leads seek to certify any litigation or settlement class such co-leads will expressly exclude from his/their proposed class definition(s), and will advocate for the exclusion and oppose the inclusion of, all Excluded Clients. *Id.* at 14.

201.    This exchange, however, was not free. Specifically, the Defendants who executed the JPA for their 60,000 individual lawsuit clients expressly agreed not to oppose class certification. The JPA stated: "None of the members of the [Watts Guerra group] will oppose class certification in the Federal MDL as such certification excludes

79

from its class definition(s) the Excluded Clients."

202.    Additionally, Defendants agreed to pay for the agreement that they would not be required to opt-out their 60,000 individual clients from the class proceedings by consenting to pay MDL class counsel one-half (5.5 percent) of the 11 percent common benefit attorney fee and costs assessment by the federal MDL court for attorneys with clients in the MDL.

203.    Farmers were never informed by Defendants of this secret side agreement; an agreement that takes the huge step of automatically opting Farmers out of the federal MDL class certifications, without disclosure and informed consent by the clients.

204.    Defendants never disclosed the JPA to Farmers, because Defendants wanted to protect their right to collect their "mass tort …individual suit" 40 percent attorney fee from each client. Defendants did not want to lose Farmers to the class action proceedings, effectively underway in the federal MDL since the December 11, 2014 MDL panel consolidated all pending federal cases in the U.S. District Court of Kansas, and where Farmers may be assessed only 10-12 percent of their claim for attorney fees and costs.

### 2.    Minnesota Participation Agreement

205.    The side-deal was not limited to Defendants and the MDL class counsel – a nearly identical tag-along agreement exists between Defendants and the Minnesota class counsel. On April 11, 2016, the MDL and Minnesota Liaison Counsel sent an email to

80

the lawyers involved in the Minnesota litigation, attaching a copy of the Minnesota

Participation Agreement ("MPA"). *See* Email, dated April 11, 2016. The MPA includes

nearly identical language as the JPA which contractually excluded Defendants' 60,000

Farmers from *any* class *and* precluded the individual Farmers from contesting the class.

Specifically, the MPA states:

> None of the MN MDL Co-Leads will propose to certify any litigation or
> settlement class that includes any Minnesota Client whose Syngenta Case was
> filed in Minnesota state court and is pending as of the date of any order granting
> class certification and whose name is included on the Client List as of the date of
> such order granting class certification (the "Excluded Clients"); if the MN MDL
> Co-Leads seek to certify any litigation or settlement class, they will not include in
> their proposed class definition(s) any Excluded Clients, unless Participating
> Counsel consents to the same; and
>
> Participating Counsel will not oppose class certification in the MN MDL if the
> MN MDL Co-Leads exclude from their proposed class definition(s) all Excluded
> Clients …

*See* MPA, pp. 21-22 at ¶ d.i. & ii.

On June 13, 2016, Liaison Counsel sent an email confirming the arrangement:

> Under the Joint Prosecution Agreement, cases on file in the MN need to be
> certified to MDL Counsel in order to be opted out of the MDL class. Please
> provide the following to MDL Counsel:
>
> - List of all cases currently on file in MN
> - the attached declaration (sic)

*See* email, dated June 13, 2016. The attached declaration, in relevant part, required

signatories to the MPA to confirm:

> We possess records identifying the names of such producers so that they can be

81

excluded from any class in the above-captioned multidistrict litigation based on objective criteria.

In other words, like the JPA, the MPA excluded Defendants' 60,000 clients – 9000 Minnesota farmers – from class certification and notice and opt-out requirements, in exchange for a promise not to oppose class certification, and required participating counsel to pay an 11 percent assessment into a Minnesota common benefit fund, directing 50 percent of the total 11 percent common benefit fees (5.5 percent), assessed by the federal MDL court to Defendants for transfer to the MDL class counsel as required by the JPA, and 50 percent of the 11 percent (the second 5.5 percent) to Minnesota class counsel. The JPA and MPA were cash-for-exclusion deals. It was back-scratch fever; Defendants would not contest class certification in the federal MDL and Minnesota and would pay MDL and Minnesota class counsel to abandon their fiduciary role to *all putative members* of the class, and agree to exclude Defendants' 60,000 clients from class certification and notice and opt-out requirements, with the sleight-of-hand claim that Defendants' 60,000 clients, corn growers across the United States similarly situated to the corn growers in the MDL and Minnesota, were never part of the class.

### 3.  A breach of fiduciary obligations and a fraud of omission.

206.  Defendants sent Syngenta Litigation Newsletter(s) to Farmers on April 1, 2015, May 6, 2015, June 9, 2015, August 25, 2015, and December 1, 2015; April 12, 2016 and October 21, 2016; March, 2017 and September 26, 2017, and February 9, 2018.

207.  The 2015 letters and the April 12, 2016 letter do not acknowledge or

82

discuss the terms of the JPA or MPA.

208.   By October 21, 2016 letter, *sixteen months* after the June 18, 2015 amended JPA was entered into with the federal MDL counsel, and a month after the MDL class was certified as a national class on September 26, 2016, Watts Guerra finally notified Farmers of the existence of the JPA, but even then, not addressing the terms or explaining why they excluded Farmers from the class proceedings (emphasis in original):

> On September 26, 2016, United States District Judge John Lungstrum certified a nationwide class action in this case. Since then, we have received numerous client calls asking how this ruling affects their claim against Syngenta. Because of a joint prosecution agreement we negotiated with the class action lawyers, *it does not affect your claim.*  By agreement, any case filed by our law firm on or before June 15, 2016 is excluded from the class definition. While we continue to amicably work with the class action lawyers, *our clients are entitled to pursue their own lawsuits, and do not even need to opt out of the class.*

209.   The foregoing letter explanation is utterly silent on core requirements related to the class notice process under Fed. R. Civ. P. 23 and Minn. R. Civ. P. 23 and Minn. R. Prof. Conduct (MRPC) 1.7 (litigation options and benefits and informed consent). Worse, nothing in the letter gives any inkling to these 60,000 putative class members that they can, in fact, participate in the federal MDL or Minnesota classes or that class participation may be in their best interests. The communication calls into question any assertion that the 60,000 putative class members are choosing to exclude themselves from the class based on their own, knowing decision with advice and counsel. *See* MRPC 1.7. Ultimately, there is simply no indication that excluded class members

received unbiased information about the federal MDL and Minnesota class actions, including pros and cons. No previous case in the entire expanse of American jurisprudence endorses the proposition that class counsel – the fiduciary for the entire class – may agree to exclude certain putative class members from the notice process in exchange for an agreement by certain lawyers to not contest class certification and an exchange of money and favors.

210.    As a result of the JPA and MPA, the 60,000 Watts Guerra clients, Farmers in this case, were expressly excluded from class participation in the federal MDL. The MDL court defined the class, in relevant part, as all corn growers in the United States who priced at least one bushel of corn after November 18, 2013, "unless that farmer filed a Minnesota lawsuit on or before June 15, 2016, which causes the producer to be excluded from the class." *See* Notice of Class Action Lawsuit.

211.    The Minnesota trial court defined the Class, in relevant part, as follows:

> All Minnesota producers that priced corn after September 2013. Excluded from the Class are … any producers listed on the Minnesota Class Exclusion list filed with this Court (attached as Exhibit A to an affidavit of Minnesota class counsel).

Order, *In re: Syngenta Litigation*, No. 27-CV-15-3785, at 1 (Henn. Cty. Feb. 10 2017) ("Amended Class Definition Order"). The *actual effect* of the Amended Class Definition Order is to define the class as follows:

> All Minnesota producers that priced corn after September 2013, except those whose attorneys agreed to not contest class certification and pay to class counsel a portion of their fees under a private agreement, precluding their clients from receiving notice and exercising their right to choose to join the class.

212. As a result of the JPA and MPA, the 60,000 Watts Guerra clients were expressly excluded from class participation in the federal MDL and about 9000 of the 60,000, who are about 30 percent of the 32,000 Minnesota corn growers, were also excluded from the Minnesota class. In short, the due process and equal protection rights of 60,000 Farmers were not protected; they were not able to exercise their individual right to be part of the class or opt-out of it; they were not given court-approved notice that they were members of the class proceedings nor were they able to make their own choice in deciding whether or not to opt-out of the federal MDL and Minnesota classes.

213. This overt exclusion of the 60,000 Watts Guerra clients through secret side-agreements, never disclosed to the Farmers, and never explaining why Farmers were automatically excluded from the federal MDL and Minnesota classes, is a fraud of omission by Defendants and violates Defendants' fiduciary obligations to the Farmers and professional responsibility rules requiring that clients be reasonably informed of litigation options.

214. Also, Defendants' JPA and MPA agreements, a secret pay-for-exclusion from the class, violate the fundamental notice and informed consent requirements of Rule 23. *Either putative class members are within a class or they are not within a class.* Lawyers cannot use private agreements, for their own pecuniary interest, to exclude class members from the class in advance of class certification, and then say the class members were never members of the class. It is sleight-of-hand circular reasoning; a fraud upon the

85

excluded class members and the courts with supervision over the class. The JPA and MPA violate Rule 23 in at least four ways: (1) the failure to disseminate notice to the *entire* class is an unmistakable violation of Rule 23; (2) class counsel are contractually precluded from disseminating notice to the entire class, and therefore abdicate their fiduciary obligation to adequately represent the entire class; (3) the class should be defined by the defendant's conduct, in this case Syngenta's conduct, and the JPA and MPA arbitrarily removes class members who are subject to the exact same conduct by Syngenta from the class, merely because Defendants and class counsel contracted through a back-door agreement that Defendants would not contest class certification and would pay money to class counsel; and (4) decades of Rule 23 precedent confirm that mass opt-outs are unenforceable; the opt-out right is inherently individual in nature and, as such, a group of lawyers like Defendants cannot opt-out a group of putative class members.

215.    A Minnesota ethics expert, David Sasseville, who served on the Minnesota Lawyers Professional Responsibility Board from 2003-09, addressed the ethical failures of the JPA in a July 30 2015 letter. Commenting on the pay-for-exclusion deal, Sasseville unequivocally concluded the JPA's framework violated attorney fiduciary obligations to clients and Rule 1.7 of the Rules of Professional Responsibility, stating:

> Only in rare and exacting circumstances ... do the Rules permit lawyers to serve multiple masters, or to undertake client representation that results in the dilution of what would otherwise be an absolute duty of undivided loyalty to each client.

> It is my opinion, to a reasonable degree of professional certainty, that appointment of the [Watts Guerra group] to a leadership role in the Minnesota State Court Syngenta MDL could result in numerous, potential conflicts particularly in light of the terms and conditions of the [JPA]...

216.    In rendering his opinion that Defendants' use of the JPA violated fiduciary obligations and ethics norms, Sasseville noted that the JPA requires Defendants to seek an 11 percent attorney fee and costs assessment as a common benefit fund from each lawyer with a client participating in the Minnesota litigation, and then transfer 5.5 percent of this 11 percent (one-half) to the MDL class counsel without a court order or actual accounting of the work performed in exchange for the money.

217.    In addition, Sasseville noted that the JPA prohibited Defendants from objecting to class certification proceedings in the federal MDL as long as Defendants' clients were excluded from the class. And the JPA directed the MDL class counsel "[t]o specifically refrain from *interfering with or altering the terms and conditions of any fee agreement with any of [Defendants'] clients.*" JPA, pg. 14 ¶ iii (emphasis added); *see also* Minnesota MPA at 2(d)(Class Certification)(iii): "The MN MDL Co-Leads *will not seek to interfere with or alter the terms and conditions of any fee agreement with any Client (e.g., reduce or cap the fee of Participating Counsel or its Co-Counsel, if any)."* Defendants thus bought cover that MDL and Minnesota class counsel and all other lawyer signatories to the JPA and MPA would not challenge their 40 percent attorney fee scheme, thus reducing the possibility that a presiding court would cap Defendants'

87

contingent fees.

218.    As a tangent to this litigation, the MDL and Minnesota courts correctly declined to approve the JPA and MPA when asked by Defendants to approve the agreements. For example, on no less than two occasions the MDL court declined the opportunity to "endorse" the JPA. The MDL court said the agreements were private contractual agreements between lawyers that were not within the Court's purview. *See* Dkt. No. 403 at 16 ("no basis for the Court to interject itself at this time into private contractual relationships"); Dkt. No. 935 at 8-9 ("[no] requirement or proper reason for the Court to approve a side agreement [between Defendants and MDL class counsel").

219.    However, when the courts approved class notice that automatically excluded Defendants' 60,000 clients from the class definition and the obligatory Rule 23 notice and opt-out requirements, the courts erred in accepting Defendants' sleight-of-hand claim that Farmers were never part of the class because they were excluded from the class by the JPA and MPA. The courts accepted Defendants' claim because *they presumed*, in orders approving class notice, that Defendants had satisfied their fiduciary and ethical obligations to procure informed consent from individual Farmers to be automatically excluded from the class proceedings. *See* Memorandum And Order, *In re: Syngenta Litigation,* MDL No: 2591 (Nov 23, 2016), Dkt. No. 2703, at p. 2 (emphasis added):

> [E]conomic incentives exist for counsel who are not part of the leadership to procure opt outs in order to pursue a course in which those counsel might be better

situated to earn a fee. Much information has been disseminated to putative class members in an effort to influence their decisions, some of which is at least arguably inaccurate, which reflects those counsel's zeal. *To ensure that those who actually may possess a potential claim are in fact the decision makers*, it is more than reasonable to require that they take the very minimal effort required to sign and mail an opt out.

*See also* Memorandum, *In re: Syngenta Litigation*, No. 27-CV-15-3785, at p. 10 (Henn.

Cty. Feb. 10, 2017):

> Implicit ... is the assumption that the independent counsel for [Defendants' clients] will not inform [Defendants' clients] of their rights. Attorneys owe their clients certain duties to communicate and inform ... [t]hat duty is owed to the client and this Court has no reason or basis to question the satisfaction of that duty or usurp that responsibility ... [i]n addition, attorneys could have discussed the options available to their clients at the time of filing an individual claim, deciding which jurisdiction to file in, and whether to enter the JPA and/or MPA.

220. The MDL and Minnesota courts presumed that Defendants had satisfied

their fiduciary and ethical obligations as the result of Defendants' material

misrepresentations and omissions. As stated in the JPA at p. 12, ¶ 2(b)(v):

> By including a client on its Excluded Client List, the applicable member of the [Defendants'] Group represents and warrants that (1) it believes that it is in such client's best interest to be excluded from the proposed [MDL] class and (2) would recommend to such client that he/she/it opt out of the proposed class, if such client was included in the applicable class definition. ...

Likewise, the MPA states, at p. 21, ¶2 (b)(v):

> By including a client on its Client List, Participating Counsel represents and warrants that (1) it believes that it is in such client's best interest to be excluded from any and all proposed class actions in the Federal MDL or the MN MDL and (2) would recommend to such client that he/she/it opt out of the proposed class, if such client was included in the applicable class definition.

221. No conversations or other communications occurred between Defendants

89

and Farmers about the JPA and MPA. Defendants did not inform Farmers that despite their individual lawsuits filed by Defendants in the Minnesota state courts, they were members of the MDL and Minnesota class actions. Defendants did not inform Farmers of the terms of the JPA and MPA and the pros and cons of class participation. There was no discussion about whether it was in the best interest of an individual Farmer to be excluded from the class actions and no informed consent. Defendants' misrepresentations and omissions to the MDL and Minnesota courts violated their fiduciary and ethical obligations as officers of the court and were a fraud upon the courts and an obstruction of justice.

222.    As a consequence of the reliance by the MDL and Minnesota courts on Defendants' misrepresentations and omissions, the courts were led to violate Rule 23 by allowing Defendants' private pay-for-exclusion agreements, the JPA and MPA, to supersede Rule 23. Rule 23 does not allow a rhetorical *non sequitur* by lawyers with a pecuniary self-interest; that putative members of a class are not putative members of the class just because their lawyers say so. Rule 23 has no language allowing lawyers to privately contract away its protections for putative class members. Credulity aside, it is statistically implausible, if not impossible, that none of the 60,000 Farmers excluded from the federal MDL and Minnesota classes would refuse to participate in the class proceedings if they had received honest and ethical advice.

223.    But for the courts' presumption that Defendants were honestly and ethically

90

advising Farmers about the pros and cons of class participation, as opposed to Defendants' "mass tort … individual suit" advertising con, the courts would have adhered to Rule 23 requirements *for all class members*, and not just some class members, and Farmers' due process and equal protection rights would have been protected.

224.    Defendants' misrepresentations and omissions led the courts to impute notice of class certification to Defendants' clients through Defendants. However, any client who happened to see a court-authorized notice of class certification directed to class members, or received informed communications and consent from Defendants (which did not occur), would have no recourse if the client wished to participate in the class; the client had already been excluded by Defendants.

225.    The fundamental issue is whether private attorneys, representing individual corn growers, can agree to pay class counsel a portion of their attorneys' fees to have their clients excluded from the class definition, and in turn avoid the mandatory Rule 23 court-authorized class notice and opt-out process. The answer is no. More than a half century ago, the United States Supreme Court *mandated* that due process requires that every member of a Rule 23 class receive notice. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Twenty years later, the Supreme Court reaffirmed this position, unequivocally stating, "[n]otice to identifiable class members *is not* a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974)

91

(emphasis added). Notice exists to vindicate absentee class members' due process rights by ensuring they – *and they alone* – are the final arbiter of whether to participate in the class. *Id.* at 175.

### G.    Settlement Term Sheet

226.    Following the June 23, 2017 jury verdict for a class of corn growers in Kansas, the MDL court, in consultation with the courts in Illinois and Minnesota, appointed a Plaintiffs' Settlement Negotiation Committee ("PNC") of four attorneys to negotiate a possible global settlement with Syngenta. The committee included Christopher A. Seeger, a lawyer for corn growers in the MDL, Daniel Gustafson, a lawyer for the Minnesota class, and Clayton A. Clark and Mikal Watts, lawyers representing the individual suits (Defendant Watts Guerra LLP boasts that they filed 90 percent of the individual suits).

227.    On September 25, 2017, midway through the Minnesota class trial, the PNC a settlement term sheet with Syngenta for a $1.51 billion settlement. The settlement was announced to the media as a "global settlement" to cover corn growers' claims in all the pending class action and individual lawsuits in the United States.

228.    Although Defendants never disclosed the term sheet to Farmers, the term sheet was attached to MDL motion pleadings on March 26, 2018. The term sheet envisioned a two-prong settlement: a nationwide class action settlement and a separate parallel inventory settlement for Defendants' 60,000 cases filed in Minnesota. According

to Ellen Reisman, Eq., a Special Master for settlement discussions, as she discussed the term sheet during a December 19, 2017 settlement conference in the MDL court in Kansas:

> The structure of that term sheet was that there would be one class action settlement, perhaps a nationwide one and a *separate Minnesota one*, perhaps just a nationwide one along with a *parallel inventory settlement*.

229.    The term sheet established jurisdiction with the MDL court to administer the national class action settlement, and jurisdiction with the 23rd District Court of Brazoria County, Texas, to administer the settlement of Defendants' 60,000 individual lawsuits.

230.    It is no surprise that Defendants never disclosed the term sheet to Farmers. After three years of Defendants' misuse of the Minnesota judicial system to perpetrate their "mass tort … individual suit" attorney fee fraud scheme, Defendants unashamedly negotiated the transfer of Farmers' lawsuits to a Texas court in Watts Guerra's backyard, with no previous connection to the Syngenta litigation, to address Defendants' 40 percent contingent fee contracts.

231.    The transfer of jurisdiction for Defendants' 60,000 individual lawsuits, after three years of litigation in the Minnesota courts, apparently was not well-received by the Hennepin County District Court. A January 11, 2018 email by a disgruntled lawyer indicates that a "nuclear winter will follow with a (very) uncooperative Judge M." Judge M is presumably the Honorable Laurie J. Miller, the Hennepin County District

93

Court Judge handling the Minnesota class and Defendants' 60,000 consolidated individual lawsuits.

232.    The parties had difficulty papering the two-prong agreement into a formal settlement agreement. On December 8, 2017, the parties told the MDL court that they were continuing to negotiate terms of the agreement for approval by the court. On December 19, 2017, a settlement conference was held in the MDL court to discuss the status of the negotiations. The reason for the delay is found in a disclosure by Reisman during the December 19th settlement conference:

> [I]n mid-October or so I was approached by some of the plaintiffs' lawyers who suggested that if they amongst themselves could work out *an agreement on how a pot of fees could be divided up percentage-wise* among the different groups who are participating here then maybe we wouldn't have to go the separate class action route and the inventory route.

233.    On January 25, 2018, a settlement conference was held in Hennepin County District Court in Minnesota to discuss the status. Another settlement conference was scheduled for February 26, 2018 at the federal courthouse in Kansas.

## H.    National Class Action Settlement Agreement

234.    On February 26, 2018, various lawyers including the PNC and Syngenta and proposed Settlement Class Counsel of Gustafson, Seeger and Patrick J. Stueve, a lead lawyer for the corn growers in the MDL class action, finalized the term sheet settlement as a National Class Action Settlement Agreement ("Settlement Agreement") with a payment of $1.51 billion by Syngenta to resolve the class actions and individual claims of

94

more than 600,000 corn growers across the United States. The two-prong approach in the term sheet disappeared, with the parties filing a Fourth Amended Class Action Complaint in the MDL asserting, as the umbrella for the settlement, a Fed. R. Civ. P. 23 class covering all corn growers in the United States. The Fourth Amended Complaint utilized for class certification the Lanham Act, 15 U.S.C. §§ 1111 *et seq.*, a federal deception statute, Minnesota statutory claims under the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, and the Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-48, and various other state statutory and common law claims.

235.    On April 10, 2018, the district court preliminarily approved the settlement and requested applications for attorneys' fees. Under the terms of the settlement, Syngenta paid $1.51 billion into a Settlement Fund to pay (1) corn growers (and certain landlords), grain handling facilities, and ethanol production facilities who submit eligible claims, (2) court-approved attorneys' fees and expenses, (3) service awards to certain plaintiffs who helped prosecute the case, (4) fees of the Special Masters appointed by the courts, and (5) costs relating to notice and class administration. The amount eligible claimants would receive, was dependent on the amount of the claimants' interests in U.S. corn – a pro rata disbursement of the funds available for payment to claimants – for corn bushels priced for sale between September 15, 2013, and April 10, 2018, the date of preliminary approval of the settlement agreement by the MDL court.

236.    On November 15, 2018, the MDL court held a final settlement approval

95

hearing and granted final approval, ECF No. 3849, awarded aggregate attorneys' fees of

one-third of the $1.51 billion settlement fund, ECF No. 3882, and entered a final order

and judgment, ECF No. 3850. Certain objectors appealed, challenging the one-third

attorney fee award and noting that standard fee awards for huge common fund cases, as a

percentage of the common fund, are 10-15 percent of the fund. The objectors appealed

and oral argument was scheduled for January 22, 2020. The objectors settled with

Settlement Class Counsel, and the objector appeal was dismissed by the Tenth Circuit on

January 7, 2020. *See* Appeal Nos. 18-3253, 19-3009, 19-3005, and 19-3006.

## I.    Defendants in this lawsuit were awarded $394 million in fees and expenses by the Syngenta MDL court in settlement proceedings.

237.    The MDL court awarded $503.33 million in attorneys' fees and created

four pools: the Kansas pool ($246.6 million); Minnesota pool ($118.30 million); Illinois

pool ($78.0 million); and the pool for individually retained private attorneys with

contingent fee contracts ("IRPA pool") ($60.40 million). MDL No. 2591, ECF No. 3849

at 24-34; *Expert Report of Richard Painter*, ECF No. 279-2, at ¶ 9: "In December 7 and

December 31, 2018 opinions in the Syngenta class action case [the MDL court] set aside

$503 million for attorneys' fees and established fee allocation pools – a Kansas pool, a

Minnesota pool, an Illinois pool and a pool to compensate lawyers with contingent fee

contracts with individual clients. Nothing in those orders did anything to address the

claims made against the defendant lawyers in this [*Kellogg*] case."

238.    Of the $503.33 million sum, the fee and expense awards to the Defendants

96

in the *Niekamp* lawsuit total at least $393,604,569.90 from the Syngenta MDL Qualified Settlement Fund (MDL common fund), through the MDL common fund account maintained by Daniel E. Gustafson, Christopher A. Seeger and Patrick Stueve as National Settlement Counsel, and BrownGreer, PLC, as the Claims Administrator.

239.    Defendants' fee awards from the Minnesota pool will include $21,330,906.42 to Bassford Remele PA, a signatory on the deceptive and unlawful joint prosecution agreements, $25,891,297.87 to Gustafson Gluek PLLC and $2,859,641.09 to Schwebel, Goetz & Sieben P.A., as Minnesota class counsel, $39,739,038.96 to Watts Guerra LLP, and $6,777,801.91 to Lockridge Grindal Nauen PLLP, another signatory on the joint prosecution agreements. ECF No. 4202-1.

240.    In addition, the Defendants were awarded from the Minnesota pool, upon information and belief, $6,210,453.07 in expenses from the MDL common fund. ECF No. 4203-1.

241.    And Defendant Watts Guerra LLP was awarded $30,295,059.59 as its share of the $60.40 million (12% of $503.33 million) from the IRPA pool. Sixth Declaration of Douglas J. Nill, *Kellogg, et al.*, ECF No. 173-1; Watts Guerra, LLP IRPA pool application on January 18, 2019, MDL No. 2591, ECF No. 4035, at p. 2, ¶ 4 (emphasis added): "The Court should calculate and make a single award to Watts Guerra itself – with Watts Guerra responsible for dividing that award among itself and its associate counsel *consistent with fee-sharing provisions in the underlying fee agreements.*"

242.    On November 3, 2020, MDL Co-Lead Counsel, Minnesota Co-Lead Counsel, Heninger Garrison Davis LLP, and Watts Guerra LLP moved for modification of certain awards under a settlement agreement. ECF No. 4485. As a result of the settlement agreement, if approved by the MDL district court, the district court's fee allocation orders will "be modified to increase the award of attorneys' fees to Watts Guerra by a total of $7,048,667." *Id.* at p. 5.

243.    As a result, the fee and expense awards to the Defendants, primarily from the Minnesota pool and the IRPA pool, total $140,152.865.90. In addition, the Kansas MDL class action group, led by Stueve Siegel Hanson LLP, claims $246,600,000.00 from the Kansas pool. And the MDL class action group was awarded $6,851,704.00 in expenses. Thus, as stated, the total fee and expense award to the Defendants in this lawsuit, subject to forfeiture and a monetary damage to Farmers, is at least $393,604,569.90.

## VIOLATIONS OF MINNESOTA RULES OF PROFESSIONAL CONDUCT

244.    Defendants' violations of the Minnesota Rules of Professional Conduct show they violated their fiduciary obligations to Farmers.

### A.    False advertising.

245.    Minn. R. Prof. Conduct 7.1 states: "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a

fact necessary to make the statement considered as a whole not materially misleading."

246. Defendants engaged in materially false and misleading communications with Farmers who were deceptively solicited to sign 40 percent contingent fee retainer contracts with Defendants and secretly excluded by Defendants from pending class actions against Syngenta in the MDL in Kansas and Minnesota.

**B.**     **Failure to communicate honestly with clients about litigation options.**

247. Minn. R. Prof. Conduct 1.4 directs the lawyer to keep the client "reasonably informed" of the status of the case and explain the matter to the extent necessary for the client to make informed decisions. Rule 1.4(b) (lawyer shall explain matter to allow client to make reasonably informed decisions); *see also* MRPC 1.7, 2005-Comment (defining "informed consent" as the full disclosure of all material facts and an explanation of risks and alternatives that are available to each affected client); Rule 1.0(c) of the Model Code (defines a client's informed consent to litigation options as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."). This requires the lawyer to explain the progress of the litigation so the client will have sufficient information to be an intelligent participant.

248. Defendants failed to communicate honestly with Farmers about their litigation options by deceptively soliciting Farmers to sign 40 percent contingent fee

99

retainer contracts and secretly excluding Farmers from pending class actions against Syngenta in the MDL in Kansas and Minnesota.

### C. Breach of fiduciary duties.

249. Minn. R. Prof. Conduct 1.2(a) requires a lawyer to "abide by a client's decisions concerning the objectives of the representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Rule 1.4(a)(1) states that a lawyer "shall … promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these rules" and reasonably keep the client informed about "the means by which the client's objections are to be accomplished" and "the status of the matter." Rule 1.0(f) states that "[i]nformed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

250. Defendants violated the "informed consent" rules by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers, without their knowledge and consent, from pending class actions against Syngenta in the MDL in Kansas and Minnesota. Defendants breached their fiduciary duties by negotiating a two-prong settlement evidenced in the September 25, 2017 term sheet, with no disclosure to Farmers, with Defendants attempting to transfer jurisdiction

for Farmers' lawsuits to a Texas county court with no previous connection to the Syngenta litigation, to address Defendants' 40 percent contingent fee contracts. Defendants breached their fiduciary duties in the Settlement Agreement by failing to disclose or acknowledge the Joint Prosecution Agreements showing a trade of money and favors with MDL and Minnesota class counsel, and failing to disclose an agreement with Settlement Class Counsel to share fees. At all times since the inception of Defendants' "mass tort … individual suit" attorney fee fraud scheme in 2014 through this very day, Defendants have placed their self-serving financial interests above Farmers' interests.

251.    Minn. R. Prof. Conduct 1.7 prohibits lawyers from representing multiple clients when there is a conflict of interest. Upon information and belief, Defendants represented class members in the MDL and Minnesota class actions, along with the 60,000 Farmers for whom Defendants filed individual claims in the Minnesota state courts. Defendants violated conflict of interest rules in negotiating the JPA and MPA joint prosecution agreements and the September 25, 2017 term sheet settlement agreement secretly excluding Farmers from the class proceedings, and the Settlement Agreement, because the class members and Defendants' individual clients will be subject to different attorney fee payments under the terms of the Settlement Agreement.

252.    Minn. R. Prof. Conduct 1.8(g) addresses aggregate settlements of individual lawsuits and requires consent to negotiate, disclosure of terms and approval of client); *see generally* American Bar Association ("ABA") Comm. On Ethics & Prof'l

101

Responsibility Formal Op. 438 (2006) (aggregate settlement of individual lawsuits requires consent to negotiate, approval of client and disclosure of terms including proposed fees and method of payment). Defendants violated Rule 1.8(g) by failing to procure the consent of individual Farmers to negotiate the September 25, 2017 term sheet settlement and concealing terms of the two-prong settlement excluding Farmers from the national class action settlement and transferring jurisdiction of Farmers' lawsuits to a Texas court with no previous connection to the Syngenta litigation to address Defendants' 40 percent contingent fee contracts.

**D.     Unreasonable fees.**

253.    Minn. R. Prof. Conduct 1.5(a) states in pertinent part, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Defendants violated Rule 1.5(a) by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding the Farmers, without their knowledge and informed consent, from pending class actions against Syngenta in the MDL court in Kansas and Minnesota.

**E.     Undisclosed fee agreements.**

254.    Defendants violate Rule 1.5(a) through the use of the secret JPA to prohibit class counsel from "interfering with or altering the terms and conditions of any fee agreement with any of [Defendants'] clients, JPA, pg. 14, ¶ iii. Defendants violate Rule

102

1.5(e)(2) by entering into fee share agreements with MDL and Minnesota class counsel and Settlement Class Counsel without Farmers' knowledge and consent.

### F.     Misconduct.

255.     Minn. R. Prof. Conduct Rule 4.1 prohibits lawyers from knowingly making a false statement of fact or law. Rule 8.4(a) prohibits violations or attempts to violate the Rules of Professional Conduct. Rule 8.4(b) prohibits criminal acts such as mail and wire fraud and obstruction of justice. Rule 8.4(c) prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. Rule 8.4(d) prohibits conduct that is prejudicial to the administration of justice. Defendants violated Rule 8.4(a) – (d) by deceptively soliciting Farmers to sign 40 percent contingent fee retainer agreements, using the U.S. mail and internet and email to procure the signed retainer contracts, and secretly excluding Farmers, without their knowledge and consent, from class proceedings against Syngenta in the MDL court in Kansas and Minnesota. Defendants misled the MDL and Minnesota courts through misrepresentations and omissions to believe that Defendants were complying with their fiduciary and ethical obligations to educate Farmers about their litigation options and gain informed consent from individual Farmers for exclusion from the class proceedings.

### G.     Misappropriation of disputed funds.

256.     The *Kellogg* lawsuit was a legal malpractice lawsuit by 60,000 corn growers against their lawyers for racketeering and a breach of fiduciary obligations

through deceit. The lawsuit was a fee forfeiture case. The Syngenta MDL court awarded $140,152,865.90 in attorneys' fees and expenses to the named Defendants in the *Kellogg* lawsuit and this lawsuit. This $140,152,865.90 was disputed funds under Minnesota and Kansas professional conduct mandates. Minn. R. Prof. Conduct 1.15; Kan. R. Prof. Conduct 1.15.

257. Farmers asked the district court in the *Kellogg, et al.* lawsuit, and then the Tenth Circuit, to apply the Minnesota and Kansas professional conduct mandates as substantive law under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), and direct that those disputed funds be held in escrow until the *Kellogg* lawsuit is "finally resolved." Minn. R. Prof. Conduct 1.15(b); Kan. R. Prof. Conduct 1.15(c) (same). The district court, and the Tenth Circuit, did not grant Farmers' motions but did not address the Minnesota and Kansas professional conduct mandates which attach to the Defendants' licenses to practice law. The district court and the Tenth Circuit did not authorize the Defendants to violate those mandates. The district court and the Tenth Circuit did not grant Defendants a license to engage in professional misconduct. State courts across the United States disbar lawyers who do not hold disputed funds in escrow as required by the state ethics mandates. Misappropriation of disputed funds is the most serious possible offense for lawyers under state ethics rules.

258. Those ethics mandates attached to the *Kellogg* lawsuit as long as the lawsuit was a live controversy and through U.S. Supreme Court review.

104

259.    Defendants could not help themselves, in their misguided efforts to misappropriate Farmers' property interest in the Syngenta MDL common fund , and violated the Minnesota and Kansas ethics mandates. Indeed, Farmers have presented substantial evidence that some of those disputed funds were paid to third-party litigation funders. *See* Farmers' June 7, 2021 motion for judicial notice, Tenth Circuit Nos. 20-3172 and 20-3257, at pp. 13-18 and Ex. 5-8 (Daniel M. Homolka lawsuit with litigation funder in federal court in Texas).

260.    Defendants such as MDL Class Counsel and Settlement Class Counsel have aided and abetted those violations of Minnesota and Kansas professional conduct mandates and misappropriation of Farmers' property.

**H.    Conflicts of interest with current and former clients.**

261.    The 60,000 Farmers who are the named and putative class members in the *Kellogg* lawsuit and in this lawsuit were the Defendants' clients during the six years of the Syngenta litigation, and are the Defendants' clients in the MDL settlement proceedings and the Tenth Circuit fee allocation appeals that continue today. *See* Minn. R. Prof. Conduct 1.7 (lawyer "shall not" proceed with representation "directly adverse" to current and former clients); Rule 1.8 (lawyer "shall not … acquire an ownership, possessory, security, or other pecuniary interest adverse to a client"); Rule 1.9 (lawyer "shall not" proceed with representation directly adverse to former client unless former client gives consent in writing).

262. As with the "shall" in Minn. R. Prof. Conduct 1.15(b) and Kan. R. Prof. Conduct 1.15(c) mandates, the "shall not" in Minn. R. Prof. Conduct 1.7, 1.8, and 1.9 and the equivalent Kan. R. Prof. Conduct 1.7, 1.8, and 1.9, is a mandate which elevates those ethics rules into a clear expression of public policy by the Minnesota Supreme Court and the Kansas Supreme Court. Thus, the Court has no discretion to disregard the conflicts of interest by Settlement Class Counsel and Watts Guerra LLP. By disregarding their conflicts of interest, the Defendants violate Farmers' due process rights to a fair judicial proceeding and manifest an independent breach of their fiduciary and ethical obligations to Farmers, as a matter of law.

## MAIL AND WIRE FRAUD
### 18 U.S.C. §§ 1341, 1343

263. Defendants conspired and associated with each other to pursue a "mass tort … individual suit" attorney fee fraud scheme against Farmers, through systemic fraudulent communications and conduct, to persuade Farmers to sign 40 percent contingent fee retainer contracts with Defendants to pursue individual lawsuits against Syngenta. In pursuit of the scheme, Farmers were secretly excluded, without their knowledge and consent, from participating in class actions against Syngenta in the MDL in Kansas and Minnesota, where attorney fees are determined by the presiding courts as fiduciaries for the members of the class. Defendants violated Minnesota and Kansas professional conduct mandates to hold Syngenta MDL fee and expense awards in escrow as disputed funds and concealed and misappropriated Farmers' property. Defendants

106

knowingly devised and participated in a scheme or artifice to defraud Farmers or to

obtain the money or property of farmers by means of false or fraudulent pretenses,

representations, or promises in violation of 18 U.S.C. §§. 1341, 1343

264.    As set forth with particularity in ¶¶ 91-243 above, Defendants' "mass tort

… individual suit" attorney fee fraud scheme against Farmers was pursued through a

barrage of television and internet advertising, direct-mail campaigns, and hundreds of in-

person "town hall" community meetings, with affirmative misrepresentations and

omissions of material facts and illusory claims intended to persuade Farmers to sign

Defendants' 40 percent contingent fee contracts to pursue individual claims. The scheme

included the secret Joint Prosecution Agreements with MDL and Minnesota class

counsel, trading money and favors, in exchange for Farmers' automatic exclusion from

the class proceedings during the litigation, without their knowledge and consent.

265.    Defendants' scheme to defraud and to misappropriate disputed funds is

contrary to public policy and fails to meet or reflect the standards of moral uprightness,

fundamental honesty, fair play and righteous dealings in the general and business life of

the decent members of society in violation of 18 U.S.C. §§ 1341, 1343.

266.    Defendants could foresee that the interstate wires would be used "for the

purpose of" advancing, furthering, executing, concealing, conducting, participating in or

carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341, 1343.

267.    In particular, Defendants knew or could foresee that the U.S. mail and

interstate wires would be used to further or facilitate their scheme to defraud by (among other things):

    a.    secretly excluding each individual Farmer, without his/her knowledge and consent, through the Joint Prosecution Agreements, from pending class actions against Syngenta in the MDL court in Kansas and Minnesota;

    b.    misleading the MDL and Minnesota courts, through material misrepresentations and omissions, that Defendants had satisfied their ethical and fiduciary obligations by procuring informed consent from individual Farmers to be automatically excluded from the MDL and Minnesota class proceedings;

    c.    providing deceptive and misleading litigation updates to Farmers while never informing Farmers that they were members of putative class actions in the Kansas MDL and Minnesota and secretly excluded by Defendants from the class action proceedings to accomplish Defendants' "mass tort … individual suit" attorney fee fraud scheme; and

268. Defendants, acting singly and in concert, personally or through their agents, used the U.S. mail and interstate wires or caused the U.S. mail or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud Farmers within the meaning of 18 U.S.C. §§ 1341, 1343.

269. It is not possible for Farmers to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed Defendants' scheme because the particulars of many such communications are within the exclusive control and knowledge of the Defendants and other presently unknown individuals.

270. By way of example, however, Defendants specifically used the U.S. mail or interstate wires or caused the U.S. mail or interstate wires to deliver each and every false, deceptive and misleading statement through the internet and advertisements and mailings described in ¶¶ 91-243 above.

271. All of the wire communications described above crossed interstate and international borders by reason of the technology used to transmit the communications. Some or all of the communications described above have appeared and continue to appear on Defendants' website(s) since the date of their original posting.

272. Each and every use of the U.S. mail and interstate wires described above was committed by the Defendants with the specific intent to defraud Farmers or to obtain the property of Farmers by means of false or fraudulent pretenses, representations, or promises. Defendants' acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

273. Farmers justifiably relied on Defendants' fraudulent representations and omissions made under the above-described scheme in that, among other things, Farmers retained Defendants to represent them in the individual actions against Syngenta, and were deprived of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim. Farmers are subject to Defendants' fraudulent scheme to extract unreasonable attorneys' fees from the deceived and unknowing Farmers.

274. Defendants' pattern of mail and wire fraud activity was intended to extract

unreasonable attorneys' fees from Farmers, as opposed to merely providing the traditional functions of giving legal advice to Farmers.

## OBSTRUCTION OF JUSTICE
### 18 U.S.C. §§ 1503, 1512(c)(2)

275.   Defendants conspired and associated with each other for the purpose of corruptly endeavoring to influence an officer of a United States court in violation 18 U.S.C. § 1503.

276.   Defendants also conspired and associated with each other for the purpose of corruptly obstructing, influencing, and impeding the MDL class action proceedings in violation of 18 U.S.C. § 1512(c)(2).

277.   Defendants' actions were corrupt because they acted knowingly and dishonestly with the specific intent to subvert or undermine the integrity of a proceeding in a United States court. In particular, Defendants used the Joint Prosecution Agreement to mislead the MDL court, through material misrepresentations and omissions, that Defendants had satisfied their fiduciary and ethical obligations by procuring informed consent from individual Farmers to be automatically excluded from the MDL and Minnesota class proceedings during the litigation as set forth in ¶¶ 196-225.

278.   Said conduct constitutes a knowing and dishonest intent to subvert or undermine the integrity of the United States courts, and thereby is an obstruction of justice in violation of 18 U.S.C. §§ 1512(c)(2), 1503.

## CLASS ALLEGATIONS

279.    The named Plaintiffs bring this class action under Rule 23 of the Federal Rules of Civil Procedure in their representative capacity on behalf of themselves and a class (the "Class" or "Farmers") of all persons similarly situated, defined as follows:

> All persons or entities who signed attorney retainer contracts with Watts Guerra, LLP, for representation in claims, suits or other matters arising out of and resulting from economic damages sustained from the use of Syngenta GMO products or those products' adverse effect on the U.S. corn market.

The class definition may be amended as this litigation proceeds, to include, as defendants, other law firms and lawyers who are not listed on attorney retainer contracts with Watts Guerra, LLP, but conspired with Defendants to pursue their "mass tort … individual suit" attorney fee fraud scheme, and violated fiduciary obligations to Farmers, for financial benefit.

280.    Plaintiffs meet the requirements of Rule 23(a) to bring this action on behalf of the Class because:

**A.      Numerosity.**

281.    The Class consists of thousands of individuals or entities, about 60,000 corn growers, according to public information, and is so numerous that joinder of all members as individual plaintiffs is impracticable.

**B.      Common Questions Of Law And Fact.**

282.    There are questions of law and fact common to the Class. Such common questions include, but are not limited to: (1) whether lawyers, as a matter of law, can

111

privately contract clients and absent class members out of a Fed. R. Civ. P. 23 class action, and thereby deprive the clients and absent class members of the individual notice and opt-out procedures and due process safeguards enshrined in Rule 23; (2) whether the joint prosecution agreements between the Defendants that excluded 60,000 Farmers from the Syngenta MDL class proceedings in the District of Kansas, MDL No. 2591, without Farmers' knowledge and informed consent, the private contracts between the lawyers referenced herein, were a breach of the Defendants' fiduciary obligations to Farmers and a fraud of omission as a matter of law; (3) whether Farmers were reasonably informed and agreed to the Joint Prosecution Agreements which excluded Farmers from the federal MDL and Minnesota litigation class certification and notice and opt-out proceedings; (4) whether Farmers were deceived through a fraud of omission and whether Defendants violated their fiduciary and ethical duties to gain informed consent from individual Farmers for automatic exclusion from the class proceedings; (5) whether Defendants obstructed justice by misleading the presiding class action courts that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the class proceedings; (6) whether Farmers were deceived so that Watts Guerra and its joint venture partners could claim or attempt to claim a 40 percent contingent attorney fee from each individual Farmer for claims against Syngenta; and (7) whether Farmers injured by Defendants' deceptive and fraudulent practices can procure monetary, equitable and injunctive relief including a forfeiture of

112

Defendants' compensation for Farmers' Syngenta litigation claims, whether assessed by Defendants against Farmers through the unlawful and void retainer contracts or court settlement documents and proceedings.

**C.     Typicality.**

283.    Plaintiffs' claims are typical of the claims of the Class.

**D.     Adequacy Of Representation.**

284.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs have engaged competent counsel experienced in class actions and complex litigation.

**E.     Predominance And Superiority.**

285.    This action is properly maintainable as a class action for the following independent reasons and under the following portions of Rule 23:

286.    The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

287.    The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other

113

appropriate equitable relief with respect to the Class as a whole. Fed. R. Civ. P. 23(b)(2).

288.    Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## EXPERT OPINIONS

289.    In the *Kellogg* lawsuit litigation, D. Kan. No. 2:18-CV-02048-JWL-JPO, Farmers submitted an *Expert Report of Richard Painter*, ECF No. 279-2, *Supplemental Report of Richard W. Painter*, ECF No. 331-1, and an Affidavit Identifying Expert (Richard W. Painter) under Minn. Stat. § 544.42, ECF No. 322. Those opinions and affidavit address the facts in this Class Action Complaint and are incorporated in this Class Action Complaint by reference. *See* Affidavit of Expert Review – Minn. Stat. § 544.42 ("Affidavit of Expert Review), Exs. 2-4. In addition, for the purpose of this lawsuit, Richard W. Painter has prepared a letter opinion attached as Ex. 1 to the Affidavit of Expert Review and referencing and incorporating his expert opinions in the *Kellogg* lawsuit.

290.    Prof. Painter, the chief ethics counsel for President George W. Bush and the White House staff from 2005-2007, and the co-author of two books on legal ethics with Judge John T. Noonan, Jr., of the U.S. Court of Appeals for the Ninth Circuit, ECF 322, Exhibit A (Painter, Richard W. *Curriculum vitae*. 2020), addresses Defendants'

114

racketeering and breach of fiduciary obligations and deceit through his reports and expert

opinion affidavit:

### A.    Watts Guerra LLP, et al. liability.

291.    Prof. Painter will testify at trial, consistent with his affidavit in the *Kellogg*

lawsuit litigation analyzing the same facts presented in this lawsuit, that:

> 12.    "[T]here is substantial evidence that Defendants engaged in dishonest, improper and unethical conduct and breached fiduciary obligations through deceit with materially false and misleading communications with [Farmers] through (a) deceptive solicitation of the [Farmers] to sign 40 percent contingent fee contracts to pursue individual claims in Minnesota, (b) joint prosecution agreements automatically opting [Farmers] out of class litigation proceedings in the Syngenta MDL and Minnesota without their knowledge and informed consent, and (c) a fraud upon the Syngenta MDL and Minnesota class action courts to persuade the courts to allow the automatic opt-outs."

*See* Affidavit Identifying Expert, Ex. 3, at ¶¶ 12-29.

### B.    Syngenta MDL and Minnesota class counsel liability.

292.    Prof. Painter will testify at trial that:

> 30.    [T]he Syngenta MDL and Minnesota class counsel owed ethical and fiduciary obligations to Plaintiffs as absent and putative class members through the act of filing class action lawsuits and requesting appointment as class counsel. As with Defendants' ethical and fiduciary obligations to individual Plaintiffs, the act of filing class action lawsuits and requesting appointment as class counsel thus imposed on the Syngenta MDL and Minnesota class counsel the highest obligations of good faith, loyalty, candor, fidelity, fair dealing and a full disclosure of material facts to absent and putative class members. This includes a duty by the Syngenta MDL and Minnesota class counsel to act at all times in the best interests of the Plaintiffs. And this includes a duty by the Syngenta MDL and Minnesota class counsel to act with candor and a full disclosure of material facts to the courts sufficient to enable the courts to make informed decisions. Class

counsel must not mislead a court through misrepresentations or omissions of material fact. Class counsel cannot turn a blind eye toward misconduct by lawyers affecting absent and putative class members. "Hear no evil, see no evil" as it relates to the treatment of absent and putative class members, is a breach of fiduciary obligations for those lawyers who file class action complaints and request appointment as class counsel.

31. [T]here is substantial evidence that the Syngenta MDL and Minnesota class counsel knew or should have known that Defendants were deceptively soliciting Plaintiffs as clients and pursuing a scheme to exploit the Plaintiffs.

32. [T]here is substantial evidence that Syngenta MDL and Minnesota class counsel breached fiduciary obligations by signing the joint prosecution agreements – private contracts between Defendants and class counsel – and thereby agreeing to automatically exclude Plaintiffs from participating in the Syngenta MDL and Minnesota class actions in exchange for money and favors.

33. [T]here is substantial evidence that the Syngenta MDL and Minnesota class counsel knew or should have known that the joint prosecution agreements were not in the best interests of the individual Plaintiffs but, rather, in the self-interest of Defendants who sought to remove the Plaintiffs from the class proceedings without notice and informed consent so that Defendants could exploit Plaintiffs through the application of Defendants' 40 percent individual contingent fee contracts.

34. [T]here is substantial evidence that the Syngenta MDL and Minnesota class counsel had affirmative obligations to inform the respective MDL and Minnesota courts, when the joint prosecution agreements were presented to the courts, that the agreements were an exchange of money and favors – an agreement of collusion – without any proof that Defendants were acting in the "best interest" of the Plaintiffs and had procured informed consent from the individual Plaintiffs to be automatically removed from the class actions.

35. [T]here is substantial evidence that the Syngenta MDL and Minnesota class counsel violated their obligations to avoid misleading the courts through pleadings and statements asking the courts to approve the joint prosecution agreements and rely upon the agreements when the agreements were presented to the courts. He will testify, for example, that Syngenta MDL

116

and Minnesota class counsel violated their obligations of candor with the courts through affirmative misrepresentations and/or silence when the agreements were presented to the courts. Lawyers have an ethical obligation as an officer of the court to inform the court when they have any reason to believe that other lawyers are not being candid with the court and this is particularly true when those lawyers, the Syngenta MDL and Minnesota class counsel, owed fiduciary obligations to the individual Plaintiffs as absent class members in the Syngenta litigation.

*See* Affidavit Identifying Expert, Ex. 3, at ¶¶ 30-35.

### C. Defendants breached fiduciary obligations through deceit.

293.     Prof. Painter addresses Defendants' breach of fiduciary obligations and

deceit through the joint prosecution agreements in his Expert Report, Ex. 1, at ¶¶ 23-33:

23.     The Joint Prosecution Agreement, which the defendants presented to Judge Lungstrum and included in the record, but filed under seal, specifically stated:

"By including a client on the Excluded Client List, the applicable member of the [Group of defendant lawyers in this case] represents and warrants that (1) it believes that it is in such client's best interest to be excluded from the proposed class and (2) would recommend to such client that he/she/it opt out of the proposed class, if such client was included in the applicable class definition."

24.     This JPA, submitted to Judge Lungstrum, was signed by the defendants in this case including Watts Guerra LLP.

25.     I am not aware of evidence in the record that the defendant lawyers who entered into this JPA and submitted it to Judge Lungstrum believed that it was in their clients' best interest to be excluded from the class, or that they ever consulted with their clients about the advantages and disadvantages of being included or excluded from the class. According to the plaintiffs, this statement in the JPA was flatly false. If this statement was false, when the JPA containing this false representation was submitted by the defendants and by class counsel to Judge Lungstrum, lawyers who knew that this language was false lied to the Judge. Whether Judge Lungstrum should have asked more questions of the lawyers about the JPA is beside the point if the lawyers

117

outright lied to the Judge. If, on the other hand, the lawyers are able to show based on the evidence in this case that their failure was at most an omission to disclose certain facts to Judge Lungstrum, then the question of where the fault lies (with them, Judge Lungstrum or both) is more nuanced. This is not an issue that should be decided by Judge Lungstrum.

26.     The JPA also stated that "The Parties agree that it is in the best interests of the Producers and Non-Producers [together the individual clients including the corn growers] for the Federal MDL, Co-Leads and the MN MDL Leadership to coordinate in the prosecution of the Syngenta Claims and focus their energies on such prosecution rather than strategies to compete with one another."

27.     However, I am aware of no evidence in the record that the defendants formed a professional judgment that it was in the best interests of their clients to be opted out of the class action under the JPA. I am aware of no evidence that they discussed the JPA, the coordination contemplated by the JPA or opting out of the class action with their clients – there is simply no way they could "agree" with class counsel that something was in the best interests of their clients that they never discussed with the clients. Once again, a critically important fact in this case is whether the untruth of this statement in the JPA was something that was hidden from Judge Lungstrum intentionally by the lawyers, or whether the lawyers disclosed to Judge Lungstrum enough information that he could have asked about it if he wished. This factual question should not be decided by Judge Lungstrum.

28.     In sum, based on my review of the record, there is strong evidence that by, among other things submitting the JPA to the court, defendants lied to Judge Lungstrum in order to get him to approve of opting out 60,000 plaintiffs from the class action. There is evidence that the defendants showed blatant disregard for their obligations to the court under the Federal Rules of Civil Procedure, including Rule 11, and their ethical obligations as lawyers. See ABA Model Rule 3.3 (candor to the tribunal). I do not opine here on the truth of these allegations, but they are supported by evidence in the record and are extremely serious.

29.     Whether or not defendants themselves formally presented the JPAs to Judge Lungstrum or left this task to class counsel (the other party to the JPA), defendants knew that the JPAs were being presented to Judge Lungstrum for the purpose of persuading him to allow 60,000 individual corn growers to opt out the class. In fact, defendant Watts Guerra LLP had

118

a lawyer (Lewis Remele) present in the courtroom and appearing on the record for the April 27, 2015 hearing on the Sealed Motion by Plaintiffs' for Approval of Joint Prosecution Agreement.  At this hearing Don Downing, class counsel asked for an order that "the Court finds that treating Watts and Phipps separately is in the best interests of all plaintiffs." Transcript of Hearing April 27, 2015, page 9, lines 9-16.

30.  Judge Lungstrum at this same hearing specifically asked about the conflict of interest problem.

> The Court:  But I'm just trying to work through, in my own mind, the economic likelihood that a corn farmer in Arkansas or Alabama is really going to want to go file suit in Minnesota just to avoid having to be part of the MDL, if it's really just how much money their lawyer might get. Because I assume their lawyer is going to give them some advice about what's in their best interest not in the lawyers' best interest."
>
> Transcript page 23-24

31.  It is clear from this transcript in the Syngenta case that the Court was assuming that the lawyers – both class counsel and the counsel for individual plaintiffs – were complying with their ethical and fiduciary obligations to their clients and not just putting the lawyers' financial interests first.  There is substantial evidence in this case that Judge Lungstrum was working on the basis of a false assumption and that some of the lawyers in the courtroom that day were well aware of that.

32.  According to the Complaint and Amended Complaint in this action the lawyers who are defendants in this action were well aware that the individual plaintiffs had never been told that they were putative members of the MDL class, that the marketing materials used to sign up these individual clients were highly misleading and that the JPA was an exchange of money and favors with class counsel whereby class counsel would allow the automatic opt outs of the plaintiffs from the MDL class and not object to the 40% contingent fee contracts.  Any lawyers who were aware of these facts who sat silent in Judge Lungstrum's courtroom while he assumed the exact opposite perpetrated a fraud upon the Court.

33.  Nobody in the courtroom – neither class counsel nor the Watts Guerra firm – advised Judge Lungstrum that his assumptions were incorrect, that the

119

plaintiffs in this case were not given any such advice by any of the lawyers purporting to represent them.

294. The record is clear. Defendants did not even acknowledge the joint prosecution agreements to Farmers until *16 months* had passed and then only an ambiguous reference in a newsletter with no discussion of terms and litigation options. Class Action Complaint at ¶¶ 196-225. And Defendants did more than just opt-out their already signed clients. Defendants advertised and solicited and signed Farmers to contingent fee contracts – Farmers who were putative members of the Syngenta MDL and Minnesota class actions – long *after* Defendants had already opted those very Farmers out of the class action proceedings without their knowledge and informed consent. Class Action Complaint at ¶¶ 1-243.

295. There is no legal authority allowing lawyers to privately contract clients and putative class members out of class litigation proceedings and Rule 23 protections. *Bennett*, Civ. No. 14-0330, slip op. at p. 6 (the lawyers who seek to intentionally exclude absent class members from class certification notice "*identify no authority empowering the Court to exclude particular class members from the class simply by saying they are excluded … .*" (Emphasis added).

296. Thus, the Syngenta MDL and Minnesota class counsel conspired with the Watts Guerra group of Defendants who solicited corn growers through deceit and secretly traded their legal rights to participate in the Syngenta MDL and Minnesota class proceedings for money and favors. The Syngenta MDL and Minnesota class counsel

120

placed their self-dealing financial interests above the due process rights and interests of 60,000 corn growers across the United States.

297.    The language in the joint prosecution agreements that class counsel would not contest Defendants' 40 percent contingent fee contracts with individual farmers in exchange for a share of Farmers' recovery from Syngenta is the height of collusion at the expense of absent class members. *See*, e.g., Class Action Complaint at ¶ 217 (directing MDL class counsel to "refrain from interfering with or altering the terms and conditions of any fee agreement with any of [Defendants'] clients.") (JPA at p. 14 ¶ iii).

298.    Prof. Painter's comprehensive opinion that the Syngenta MDL and Minnesota class counsel are liable to Farmers for a breach of fiduciary obligations and deceit is entirely consistent with federal jurisprudence that absent class members have property rights in the cause of action that commence upon the filing of the complaint, *Shutts*, 472 U.S. at 807 ("[A] chose in action is a constitutionally recognized property interest ... ."), and class counsel owe fiduciary obligations to absent class members that commence upon filing of the class complaint and requests to be appointed class counsel.

**D.    The Supreme Court and Fed. R. Civ. P. 23 do not allow lawyers to privately contract clients and absent class members out of a Fed. R. Civ. P. 23 class action.**

299.    Prof. Painter submits a supplemental letter opinion for this lawsuit dated October 24, 2023, attached as Exhibit 1 to the Affidavit of Expert Review, wherein he states:

I attach hereto the affidavit you submitted identifying my expert opinions and report and supplemental report submitted in the above reference[d] matter in 2020. In those expert opinions I expressed my serious concern, indeed shock, about the conduct of class counsel who knew or should have known that the joint prosecution agreements in this matter were not in the best interests of the individual Plaintiffs but, rather, in the self-interest of class counsel who sought to remove the Plaintiffs from the class proceedings without notice and informed consent. That is still my opinion. I believe that was a clear violation of the rules of professional conduct.

I have reviewed the findings of the District Court and the Tenth Circuit and nowhere are my substantive concerns with the professional conduct of class counsel addressed in any of those rulings. The district court appears to have recognized that there could be a breach of fiduciary issue, but that issue was never adjudicated. I am aware that you had adverse decisions in the district court and the Tenth Circuit, but none of those decisions addressed the merits of the professional ethics issues that were central to my expert opinion. Insofar as the substantive breach of fiduciary and professional ethics issues are concerned, the orders in this case are not *res judicata* because those issues were never adjudicated.

In my opinion these issues are critically important to the fair treatment of class members and the integrity of the legal profession. They should be addressed either by the disciplinary authorities where class counsel are licensed, including Minnesota and/or by the federal courts. If another court is willing to hear these claims on the merits that would of course be the most effective way of compensating the class members who appear to have been betrayed by the lawyers who purported to represent them.

## CAUSES OF ACTION

### Count I
### Declaratory Judgment
### 28 U.S.C. §§ 2201, 2202

300. Farmers incorporate by reference and reallege all prior paragraphs of this

Class Action Complaint.

301. Farmers request a declaratory judgment under 28 U.S.C. § 2201 which

authorizes a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Farmers proceed under Fed. R. Civ. P. 57 which governs the procedure for obtaining a declaratory judgment.

302.    There is an actual controversy between the parties regarding Farmers' rights in respect to Defendants' actions in negotiating and signing joint prosecution agreements that automatically removed 60,000 Farmers from the Syngenta MDL and Minnesota class litigation without the Farmers' knowledge and informed consent. The U.S. Supreme Court and Fed. R. Civ. P. 23 do not allow lawyers to privately contract absent class members out of a class action, an exchange of money and favors between the lawyers, and the joint prosecution agreements and terms were concealed from Farmers. This was an epic breach of fiduciary obligations through deceit. The defendant lawyers signed an unlawful agreement, prohibited by law and a product of collusion, and then concealed this unlawful agreement from their 60,000 clients. Either event requires judgment for the corn growers as a matter of law.

303.    Farmers ask the Court to declare that the "shall" mandates in Minn. R. Prof. Conduct 1.4(a) and the equivalent Kan. R. Prof. Conduct 1.4(a) ("shall … promptly inform the client of any decision or circumstances with respect to which the client's informed consent … is required by these rules"); Rule 1.4(b) ("shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding

123

the representation"); Rule 3.3(a)(1) ("A lawyer shall not knowingly … make a false

statement of fact or law to a tribunal"); Rule 1.7 ("a lawyer shall not represent a client if

the representation involves a concurrent conflict of interest"); and Rule 1.8 (a "lawyer

shall not … knowingly acquire an ownership, possessory … or other pecuniary interest

adverse to a client … "), reflect the public policy of Minnesota and Kansas as reflected

through the Minnesota Supreme Court and the Kansas Supreme Court and are substantive

law, and that Defendants' unlawful and concealed joint prosecution agreements were a

breach of fiduciary obligations and deceit as a matter of law. *See, e.g., Massachusetts

Candy & Tobacco v. Golden Distrib.*, 852 F. Supp. 63, 68 (D. Mass. 1994) (recognizing

that plaintiffs may maintain a suit for declaratory judgment under 28 U.S.C. §§ 2201 and

2202 to declare and enforce substantive rights and duties established in regulatory and

consumer protection statutes as a pure question of law).

### Count II
### Uniform Declaratory Judgments
### Minn. Stat. §§ 555.01 *et seq.*

304.    Farmers incorporate by reference and reallege all prior paragraphs of this

Class Action Complaint.

305.    Farmers request a declaratory judgment under the Uniform Declaratory

Judgments Act, Minn. Stat. §§ 555.01 *et seq.*, the Minnesota statute authorizing a court

"to declare rights, status, and other legal relations whether or not further relief is or could

be claimed." Farmers proceed under Minn. R. Civ. P. 57 which governs the procedure for

obtaining a declaratory judgment.

306.    There is an actual case and controversy regarding Farmers' rights in respect

to Defendants' actions in negotiating and signing joint prosecution agreements that

automatically removed 60,000 Farmers from the Syngenta MDL and Minnesota class

litigation without the Farmers' knowledge and informed consent.

307.    Farmers ask the Court to declare and enter a judgment that Defendants have

forfeited their claim to any compensation from individual Farmers, and that Defendants

have waived any quantum meruit claim against Farmers through their dishonest and

unlawful representations and omissions and conduct.

**Count III**
**Civil RICO**
**18 U.S. C. § 1962(c)**
**(Against Mikal C. Watts, Francisco Guerra, Watts Guerra, LLP, and/or Bassford**
**Remele PA, Gustafson Gluek PLLC, Schwebel Goetz & Sieben PA, Stueve Siegel**
**Hanson LLP, Hare Wynn Newell & Newton LLP, Gray, Ritter & Graham PC, Gray**
**Reed & McGraw PC, Lockridge Grindal Nauen PLLP, and Paul McInnes LLP)**

308.    Farmers incorporate by reference and reallege all prior paragraphs of this

Class Action Complaint.

309.    The elements of an 18 U.S. C. § 1962(c) claim are (1) a defendant person;

(2) operating and managing; (3) an enterprise; (4) through a pattern; (5) of racketeering

activity. A civil RICO plaintiff must also prove (6) the plaintiff is injured in its business

or property; (7) by reason of the acts of racketeering. 18 U.S.C. § 1964(c).

125

### A. Defendants/Enterprises.

#### 1. Watts Guerra LLP Enterprise.

310. Watts Guerra LLP, as a legal entity, constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). Watts and Guerra are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of Watts Guerra LLP through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts of mail and wire fraud and obstruction of justice, described in ¶¶ 263-278.

#### 2. Individual Enterprise.

311. In the alternative to ¶ 310 above, Watts and Guerra constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (the "Individual Enterprise").

    a.    Watts and Guerra share the common purpose of (among other things) fraudulently and deceptively pursuing a "mass tort … individual suit" attorney fee fraud scheme against corn growers across the United States as addressed in ¶¶ 1-309.

    b.    Watts and Guerra are related in that they are partners in Watts Guerra, LLP and they jointly own or control Watts Guerra, LLP.

    c.    The Individual Enterprise possesses sufficient longevity for Watts and Guerra to carry out their purpose(s) in that the Individual Enterprise has operated since 2014, continues to operate, and pursues an attorney fee fraud scheme intended to (1) deceptively solicited 60,000 corn growers to sign 40 percent contingent fee contracts to pursue individual claims in Minnesota state courts while

concealing that the corn growers were members of class proceedings in the Syngenta MDL and Minnesota, (2) concealed joint prosecution agreements automatically opting the corn growers out of class litigation without their knowledge and informed consent, (3) pursued a fraud upon the MDL and Minnesota class action courts to persuade the courts to allow the automatic opt-outs, and (4) perpetrated a misappropriation and conversion of disputed funds by taking the corn growers' property interests in the litigation proceeds without their approval in disregard of Minnesota and Kansas professional conduct mandates that "disputed ... funds ... shall" remain in escrow until the disputed is "finally resolved." Minn. R. Prof. Conduct 1.15(b); Kan. R. Prof. Conduct 1.15(c) (same).

Watts and Guerra are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Individual Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, numerous acts of mail and wire fraud and the obstruction of justice, specifically described in ¶¶ 263-278.

### 3. Signatories Enterprise.

312.  In the alternative to ¶ 311 above, Bassford Remele PA, Gustafson Gluek PLLC, Schwebel Goetz & Sieben PA, Stueve Siegel Hanson LLP, Hare Wynn Newell & Newton LLP, Gray, Ritter & Graham PC, Gray Reed & McGraw PC, Lockridge Grindal Nauen PLLP, Paul McInnes LLP, Mikal C. Watts, and Francisco Guerra (or any subset thereof) constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (the "Signatories on the Joint Prosecution Agreements Enterprise") ("Signatories Enterprise").

127

a. The members of the Signatories Enterprise share the common purpose of (among other things) fraudulently and deceptively pursuing a "mass tort … individual suit" attorney fee fraud scheme against corn growers across the United States as addressed in ¶¶ 1-309.

b. The members of the Signatories Enterprise are related in that they are lawyers and law firms that signed the unlawful and concealed joint prosecution agreements that automatically opted Farmers out of the Syngenta MDL and Minnesota class action lawsuits without their knowledge and informed consent.

c. The Signatories Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that the Signatories-On-JPA Enterprise has operated since 2014, continues to operate, and pursues an attorney fee fraud scheme that concealed joint prosecution agreements automatically opting the corn growers out of class litigation without their knowledge and informed consent, and pursued a fraud upon the MDL and Minnesota class action courts to persuade the courts to allow the automatic opt-outs.

Watts, Guerra and/or Watts Guerra LLP are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who individually conducted participated in, engaged in, and operated and managed the affairs of the Signatories Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, numerous acts of mail and wire fraud, conspiracy to commit mail and wire fraud and the obstruction of justice, specifically described in ¶¶ 263-278.

### 4. Class Counsel Enterprise.

313. In the alternative to ¶ 312 above, Gustafson Gluek PLLC, Schwebel Goetz & Sieben PA, Stueve Siegel Hanson LLP, Hare Wynn Newell & Newton LLP, Gray, Ritter & Graham PC, and Gray Reed & McGraw PC (or any subset thereof) constitute an

128

"enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a

group of individuals associated in fact" (the "Class Counsel Enterprise").

    a.    The members of the Class Counsel Enterprise share the common purpose of (among other things) fraudulently and deceptively pursuing a "mass tort … individual suit" attorney fee fraud scheme against corn growers across the United States as addressed in ¶¶ 1-309.

    b.    The members of the Class Counsel Enterprise are related in that they are lawyers and law firms that signed the unlawful and concealed joint prosecution agreements that automatically opted Farmers out of the Syngenta MDL and Minnesota class action lawsuits without their knowledge and consent.

    c.    The Class Counsel Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that the Class Counsel Enterprise has operated since 2014, continues to operate, and pursues an attorney fee fraud scheme that (1) deceptively solicited 60,000 corn growers to sign 40 percent contingent fee contracts to pursue individual claims in Minnesota state courts while concealing that the corn growers were members of class proceedings in the Syngenta MDL and Minnesota, (2) concealed joint prosecution agreements automatically opting the corn growers out of class litigation without their knowledge and informed consent, (3) pursued a fraud upon the MDL and Minnesota class action courts to persuade the courts to allow the automatic opt-outs, and (4) perpetrated a misappropriation and conversion of disputed funds by taking their property interests in the litigation proceeds without their approval in disregard of Minnesota and Kansas professional conduct mandates that "disputed … funds … shall" remain in escrow until the disputed is "finally resolved." Minn. R. Prof. Conduct 1.15(b); Kan. R. Prof. Conduct 1.15(c) (same).

Watts, Guerra, and/or Watts Guerra LLP are each a "person" within the meaning of 18

U.S.C. §§ 1961(3) and 1962(c), who individually conducted participated in, engaged in,

and operated and managed the affairs of the Class Counsel Enterprise through a pattern of

racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

Said pattern of racketeering activity consisted of, but was not limited to, numerous acts of mail and wire fraud, conspiracy to commit mail and wire fraud and the obstruction of justice, specifically described in ¶¶ 263-278.

### B.   Pattern of racketeering activity.

314.   All of the acts of racketeering described in ¶¶ 1-313 were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose is to defraud Farmers of their money; their common and intended result is to defraud Farmers of money; Watts, Guerra, Watts Guerra, LLP, and all the Defendants and their agents participated in all acts of racketeering; Farmers are the victims or intended victims of the acts of racketeering; and the acts are otherwise related by distinguishing characteristics and were not isolated events.

315.   All of the acts of racketeering described in ¶¶ 1-313 are continuous so as to form a pattern of racketeering activity in that Watts, Guerra, and/or Watts Guerra LLP and all of the Defendants identified in this cause of action under 18 U.S.C. § 1962(c) ("Defendants"), directly or indirectly, have engaged in the predicate acts since 2014, and the acts of racketeering are ongoing and will continue until Watts, Guerra, and/or Watts Guerra, LLP and all of the Defendants have taken attorney fees and expenses from Farmers through unlawful and void contingent fee contracts and unlawful and concealed joint prosecution agreements and through the misappropriation and conversion of disputed funds; the acts of racketeering are also the regular way in which the Defendants

do business.

**C.      Causation and injury.**

316.     As a direct and proximate result of, and by reason of, the activities of the

Defendants and their conduct in violation of 18 U.S.C. § 1962(c), Farmers are injured in

their business and property, within the meaning of 18 U.S.C. § 1964(c).

317.     Farmers are injured by the Defendants' deceptive and fraudulent practices

as set forth in ¶¶ 1-313 and unlawful and concealed joint prosecution agreements. The

risk that Farmers may have to pay any fee to the Defendants for their deceptive and

fraudulent practices and breach of fiduciary duties and unconscionable conduct and

obstruction of justice is sufficient to justify equitable and injunctive relief, under 18

U.S.C. § 1964(a), including a disgorgement of the profits and forfeiture of the

compensation that the Defendants seek to obtain from Farmers in the Syngenta litigation

claims, whether claimed by the Defendants against Farmers through the unlawful and

void retainer contracts or court settlement and fee allocation documents addressing the

fee and expense awards to the Defendants.

318.     Under 18 U.S.C. § 1964(a), Defendants should also be restrained from

further violating 18 U.S.C. § 1962(c). Farmers request equitable and injunctive relief

including a divestiture of Defendants' interests in the enterprise and forfeiture of

compensation for Farmers' Syngenta litigation claims. *Josephs v. Marzan*, 21-CV-00749-

JRT-DTS (D. Minn. Jan. 5, 2022) (equitable relief is available under 28 U.S.C. §

1964(a)); *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 342-44 (S.D. Iowa 2013) (injunctive relief is available for a RICO violation even if a present monetary injury has not occurred). Farmers request monetary damages to the extent that Defendants claim and capture any compensation, and treble the forfeited compensation and monetary damage, under 18 U.S.C. § 1964(c), and costs and legal fees in the prosecution of their claims against the Defendants.

### Count IV
### Civil RICO Conspiracy
### 18 U.S. C. § 1962(d)
### (Against All Defendants)

319.    Farmers incorporate by reference and reallege all prior paragraphs of this Class Action Complaint.

320.    A conspiracy claim under 18 U.S. C. § 1962(d) requires proof: (1) that someone violated § 1962(c); (2) that the conspirators agreed to the overall objective of the § 1962(c) violation; and (3) that the plaintiff was injured "by reason of" acts of racketeering. 18 U.S.C. § 1964(c). A § 1962(d) claim extends liability to persons who do not operate and manage the enterprise or who do not engage in a pattern of racketeering.

321.    As alleged in Count II, one or more of the following individuals violated 18 U.S.C. § 1962(c): Mikal C. Watts, Francisco Guerra, and/or Watts Guerra, LLP, Bassford Remele PA, Gustafson Gluek PLLC, Schwebel Goetz & Sieben PA, Stueve Siegel Hanson LLP, Hare Wynn Newell & Newton LLP, Gray, Ritter & Graham PC, Gray Reed & McGraw PC, Lockridge Grindal Nauen PLLP, and Paul McInnnes LLP. Any person

who is found to have violated 18 U.S.C. § 1962(c) is hereinafter referred to as an "Operator/Manager" for the remainder of this Count.

322.   In this Count, Watts Guerra LLP, Bassford Remele PA, Gustafson Gluek PLLC, Schwebel Goetz & Sieben PA, Stueve Siegel Hanson LLP, Hare Wynn Newell & Newton LLP, Gray, Ritter & Graham PC, Gray Reed & McGraw PC, Lockridge Grindal Nauen PLLP, Paul McInnes LLP, Mikal C. Watts, and Francisco Guerra, are each referred to as "Conspirator."

323.   Each Conspirator intended to or agreed to further an endeavor of the Operator/Manager(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense, 18 U.S.C. § 1962(c), and adopted the goal of furthering or facilitating the criminal endeavor.

324.   Under the conspiracy in violation of section 1962(d), Farmers are injured by overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which include (among other acts) acts of mail and wire fraud and obstruction of justice, as described in ¶¶ 263-278, committed through the enterprises alleged in Count III.

325.   Farmers are injured by each Conspirator's deceptive and fraudulent practices as set forth in ¶¶ 1-299.

326.   Under 18 U.S.C. § 1964(a), each Conspirator should also be restrained from further violating 18 U.S.C. § 1962(c). Farmers request equitable and injunctive relief including a divestiture of each Conspirator's interests in the Syngenta litigation

claims and forfeiture of compensation for Farmers' claims. Farmers request monetary damages to the extent that each Conspirator claims and captures any compensation, and treble the forfeited compensation and monetary damage, under 18 U.S.C. § 1964(c), and costs and legal fees in the prosecution of their claims against each Conspirator.

## Count V
## Prevention Of Consumer Fraud
## Minn. Stat. §§ 325F.68-70

327. Farmers incorporate by reference and reallege all prior paragraphs of this Class Action Complaint.

328. Minn. Stat. § 325F.69, subdivision 1 provides:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

329. The term "merchandise" within the meaning of Minn. Stat. § 325F.69 includes legal services as it relates to false, misleading and deceptive marketing conduct. *See* Minn. Stat. § 325F.68, subd. 2 (2008).

330. Defendants' conduct described above constitutes multiple, separate violations of Minn. Stat. § 325F.69, subd. 1. 65. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by deceptively soliciting Farmers to sign 40 percent contingent fee retainer agreements and secretly excluding Farmers, without their knowledge and informed consent, from

134

participating in pending class actions against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 48-299. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See* ¶¶ 48-299. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by failing to disclose fee share agreements with class counsel and pursuing efforts to extract an unreasonable fee. *See* ¶¶ 49-299. Defendants violated candor and misrepresented material facts by refusing to hold Syngenta MDL fee and expense awards in escrow as disputed funds and concealing and misappropriating Farmers' property.

331.    Special circumstances exist such that Defendants' omission of material facts was fraudulent. Minnesota courts recognize that an attorney-client relationship is a fiduciary relationship. Defendants had obligations to honestly market their services and inform Farmers that they were putative members of the federal MDL class action and procure informed consent before Farmers were excluded from class participation. At all times since the inception of Defendants' "mass tort … individual suit" attorney fee fraud scheme in 2014 through the present, Defendants have deceptively placed their self-serving financial interests above Farmers' interests. *See* ¶¶ 48-299.

135

332. Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive solicitations and misrepresentations and omissions. The class action courts relied on Defendants' misrepresentations and omissions to believe that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the class certification proceedings and notice and opt-out procedures. Farmers were deprived of the opportunity to exercise their individual right to be part of the class or opt-out; they were not given court-approved notice that they were members of the class proceedings nor were they able to make their own choice in deciding whether or not to opt out of the MDL and Minnesota classes. Farmers have been deprived of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Defendants.

333. Farmers are injured by Defendants' deceptive and fraudulent practices. This lawsuit provides a public benefit to the 60,000 Farmers and all consumers in Minnesota and across the United States who rely upon an honest and ethical market for legal services. Through the Minnesota private attorney general statute, Minn. Stat. § 8.31, Farmers seek all available remedies and equitable relief including a forfeiture of Defendants' compensation for Farmers' claims, whether assessed by Defendants against Farmers through the unlawful and void retainer agreements or court settlement documents.

## Count VI
## Breach Of Fiduciary Duty

334.    Farmers incorporate by reference and reallege all prior paragraphs of this Class Action Complaint.

335.    To prevail on a claim for breach of fiduciary duty, the plaintiff must prove: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately caused by the breach.

336.    Minnesota courts recognize that an attorney-client relationship is a fiduciary relationship.

337.    A fiduciary duty is the highest standard of duty implied by law. Minnesota law imposes on a fiduciary the highest obligations of good faith, loyalty, fidelity, fair dealing and full disclosure of material facts affecting the client's interests. This duty includes, among other things, a duty to act in the best interests of another. A fiduciary owes to another the duties of good faith, trust, confidence, and candor.

338.    Defendants violate their fiduciary obligations and injure Farmers by secretly excluding Farmers, without their knowledge and informed consent, from participating in class certification proceedings against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 48-299. Defendants violate their fiduciary obligations to Farmers by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to

137

be part of the class or opt-out of it. *See* ¶¶ 48-299. Defendants violate their fiduciary obligations through undisclosed fee share agreements with class counsel and efforts to extract an unreasonable fee. *See* ¶¶ 48-299.

339.    A lawyer who breaches his or her fiduciary duty to a client forfeits his or her compensation. The client is deemed injured even if no actual loss results.

340.    Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. The class action courts relied on Defendants' misrepresentations and omissions to believe that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the class certification proceedings and notice and opt-out procedures. Farmers were deprived of the opportunity to exercise their individual right to be part of the class or opt-out; they were not given court-approved notice that they were members of the class proceedings nor were they able to make their own choice in deciding whether or not to opt out of the MDL and Minnesota classes. Farmers have been deprived of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Defendants.

341.    Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and

that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.[7]

### Count VII
### Fraudulent Misrepresentation

342.     Farmers incorporate by reference and reallege all prior paragraphs of this Class Action Complaint.

343.     The elements of a fraudulent misrepresentation claim are: (1) a false representation by a party of a past or existing material fact that is susceptible of knowledge; (2) the person making the misrepresentation made it either with knowledge of its falsity or as if he or she had knowledge, but without actually knowing whether it was true or false; (3) the representation was made with the intention to induce another party to act in reliance on the representation; (4) the representation caused the other party to act in reliance; and (5) the other party suffered pecuniary damage as a result of that reliance.

344.     Silence may also constitute fraud. A failure to speak is actionable if there is a suppression of facts which one party is under a legal or equitable obligation to

---

[7] Farmers do not dispute the quality of Defendants' work, thereby removing a requirement for an affidavit of expert review under Minn. Stat. § 544.42, subd. 2(1). Any lay person and jury member can readily conclude that Defendants' unlawful and concealed joint prosecution agreements and conduct related thereto, and misrepresentations to the presiding class action courts, violate the obligations of an attorney to a client. Nevertheless, attached and served with this Class Action Complaint is an Affidavit of Expert Review – Minn. Stat. § 544.42, with attached Exhibits 1-6.

139

communicate to the other, and which the other party is entitled to have communicated to him. The Minnesota Supreme Court has identified three "special circumstances" in which silence may be fraudulent: (1) half-truths which mislead; (2) special knowledge of material facts to which the other party does not have knowledge; and (3) confidential or fiduciary relationship.

345.   Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by secretly excluding Farmers, without their knowledge and informed consent, from participating in pending class actions against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 48-299. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See* ¶¶ 48-299. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by failing to disclose fee share agreements with class counsel and pursuing efforts to procure an unreasonable fee. *See* ¶¶ 48-299.

346.   Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. *See* ¶¶ 48-299.

347.   Farmers are injured by Defendants' deceptive and fraudulent practices and

breach of fiduciary duties and seek all available remedies and equitable relief, including a

declaration that Defendants have forfeited their claim to any compensation from

individual Farmers, and that Defendants have waived any quantum meruit claim against

Farmers through their dishonest representations and omissions and conduct.

**Count VIII**
**Negligent Misrepresentation**

348.     Farmers incorporate by reference and reallege all prior paragraphs of this

Class Action Complaint.

349.     The Minnesota Supreme Court and the Restatement (Second) of Torts

describe a negligent misrepresentation as follows:

> One who, in the course of his business, profession, or employment, or in a
> transaction in which he has a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject to liability for
> pecuniary loss caused to them by their justifiable reliance upon the information, if
> he fails to exercise reasonable care or competence in obtaining or communicating
> the information.

350.     Defendants violated candor and misrepresented material facts through

affirmative misstatements and omissions by secretly excluding Farmers, without their

knowledge and informed consent, from participating in pending class actions against

Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 48-299. Defendants

violated candor and misrepresented material facts through affirmative misstatements and

omissions by misleading the class action courts to allow Defendants to automatically

exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers

141

of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See* ¶¶ 48-299. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by failing to disclose fee share agreements with class counsel and pursuing efforts to procure an unreasonable fee. *See* ¶¶ 48-299.

351.    Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. *See* ¶¶ 48-299.

352.    Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.

### Count IX: Unjust Enrichment.

353.    Farmers incorporate by reference and reallege all prior paragraphs of this Class Action Complaint.

354.    To establish a claim for unjust enrichment, a claimant must show that another party knowingly received something of value to which he or she is not entitled and that the circumstances are such that it would be unjust for that person to retain the benefit.

355.    Defendants engaged in racketeering and a breach of fiduciary obligations

through deceit and claimed and received attorney fee and expense awards in the Syngenta MDL settlement proceedings to which they are not entitled. Those attorney fee and expense awards are subject to forfeiture and it would be unjust for the Defendants to retain those fee and expense awards.

356.   Farmers are entitled to recover those fee and expense awards to the Defendants.

## Count X
## Civil Conspiracy

357.   Farmers incorporate by reference and reallege all prior paragraphs of this Class Action Complaint.

358.   According to Minnesota courts, the elements of civil conspiracy include (1) an agreement between two or more people to commit an unlawful act or a lawful act by unlawful means, (2) a tort or criminal act must have occurred, and (3) the plaintiff must have been hurt or damaged. The essential elements for establishing a case of civil conspiracy in Minnesota are that the plaintiff must have been injured by a tortuous or criminal act. The Supreme Court of the United States echoed these elements, holding a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious.

359.   Watts and Guerra and Watts Guerra, LLP and all the signatories on the joint prosecution agreements participated in a civil conspiracy by secretly excluding Farmers, without their knowledge and consent, a fraud of omission, from participating in pending

143

class actions against Syngenta in the MDL court in Kansas and Minnesota. *See supra*
¶¶ 48-299.

360.    Watts and Guerra and Watts Guerra, LLP and all the signatories on the joint
prosecution agreements participated in a civil conspiracy. *See* ¶¶ 48-299.

361.    Farmers and the courts relied on Defendants' fiduciary and ethical
obligations and deceptive misrepresentations and omissions. *See* ¶¶ 48-299.

362.    Farmers are injured by Defendants' deceptive and fraudulent practices and
breach of fiduciary duties and seek all available remedies and equitable relief, including a
declaration that Defendants have forfeited their claim to any compensation from
individual Farmers, and that Defendants have waived any quantum meruit claim against
Farmers through their dishonest representations and omissions and conduct.

## REMEDIES

### A.    Declaratory and injunctive relief.

363.    Farmers incorporate by reference and reallege all prior paragraphs of this
Class Action Complaint.

364.    Farmers are entitled to declaratory and injunctive relief under the statutory
claims and equitable relief under the common law claims, under the maxim that every
injury has a remedy. A request for declaratory and injunctive relief can always be made
under Fed. R. Civ. P. 23 and Fed. R. Civ. P. 57 in any case in which the plaintiffs and the
class have an ongoing relationship with the defendant that is affected or could be affected

144

by a policy or practice on the part of the defendant. Farmers also request declaratory relief under 28 U.S.C. § 2201 which authorizes declaratory relief to construe a contract and § 2202 which authorizes the Court to provide declaratory and injunctive relief and assess applicable statutory damages and penalties for each invalid contract under authorities such as RICO, 18 U.S.C. § 1961, *et seq.*, the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, Misconduct by Attorneys/Penalties for Deceit or Collusion, Minn. Stat. §§ 481.071 and 481.07, the Minnesota private attorney general statute, Minn. Stat. § 8.31, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and civil conspiracy.

365.    Farmers request the same declaratory and injunctive relief under the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01, et al.

366.    Farmers ask the Court to declare that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest and unlawful representations and omissions and conduct.

**B.    Monetary damages.**

367.    Farmers incorporate by reference and reallege all prior paragraphs of this Class Action Complaint.

368.    Farmers request a forfeiture of Defendants' compensation or claimed

145

compensation for Farmers' claims against Syngenta, and costs and legal fees in the prosecution of their claims against Defendants.

369.    Farmers request monetary damages to the extent that Defendants claim and capture any compensation, and treble the forfeited compensation and monetary damage, under 18 U.S.C. § 1964(c) and Minn. Stat. §§ 481.071 and 481.07.

## JURY TRIAL DEMAND

370.    Farmers hereby demand a trial by jury with respect to all issues so triable.

## REQUESTS FOR RELIEF

1.    An order certifying that this action may be maintained as a class action for the Class, designating Plaintiffs as the named representatives of the Class, and appointing Farmers' counsel to represent the Class.

2.    Declaring under 28 U.S.C. § 2201 and 2202 and Minn. Stat. §§ 555.01, et al. that Defendants' acts and omissions described in this Class Action Complaint constitute multiple, separate violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*., Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, Misconduct by Attorneys/Penalties for Deceit or Collusion, Minn. Stat. §§ 481.071 and 481.07, the Minnesota private attorney general statute, Minn. Stat. § 8.31, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and civil conspiracy.

3.    Declaring that Defendants have forfeited their claim to any compensation

from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest and unlawful representations and omissions and conduct.

4. Trebling the forfeited compensation and monetary damage, under RICO's civil remedies provision, 18 U.S.C. § 1964(c), and awarding attorney fees under the same section.

5. Trebling the forfeited compensation and monetary damage, under Minn. Stat. §§ 481.071 and 481.07.

6. Awarding civil penalties to Farmers under the applicable laws.

7. Awarding Farmers the costs of suit, including costs of investigation and attorneys' fees as authorized by 18 U.S.C. § 1964(c) and Minn. Stat. § 8.31, subd. 3a.

8. Entering Judgment in favor of Farmers and against Defendants, jointly and severally, for all forfeited compensation and damages and attorneys' fees and costs.

9. Granting such other and further relief as the Court deems just and equitable.

Dated: November 27, 2023

Respectfully submitted,

By: /s/ Douglas J. Nill
Douglas J. Nill (MN # 0194876)
DOUGLAS J. NILL, PLLC
d/b/a FARMLAW
1850 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402
(612) 573-3669
dnill@farmlaw.com

147

*Counsel for Plaintiffs and the proposed Class*